COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona  85016
Telephone 602•252•8400

Daniel G. Dowd (012115)
Email:  ddowd@CDQLaw.com
Rebecca van Doren (019379)
Email:  rvandoren@CDQLaw.com
Lisa O'Connor (029111)
Email:  loconnor@CDQLaw.com
   Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| John Doe, | Case No:  2:18-cv-01623-DLR |
| Plaintiff, | **MOTION TO DISMISS** |
| vs. | |
| The Arizona Board of Regents; James Rund; Craig Allen; Tara Davis; Kendra Hunter; Kathleen Lamp; and Andrew Waldron, | (Assigned to the Honorable Dominic W. Lanza) |
| Defendants. | **(Oral Argument Requested)** |

In April 2016, Plaintiff and a third person had sexual intercourse with a fellow Arizona State University ("ASU") student, Jane Roe, at a party after Roe (who was under 21) had been drinking heavily. The next day Roe reported to police that Plaintiff had assaulted her. Several months later, Roe reported the incident to ASU. The ASU Dean of Students office conducted an investigation and concluded Plaintiff should be expelled for violating multiple provisions of the Arizona Board of Regents ("ABOR") Student Code of Conduct. Plaintiff appealed the decision. Pursuant to ASU procedures, Plaintiff received a hearing before the University Hearing Board ("UHB"). He was represented by counsel and was permitted to present argument and evidence and to cross-examine witnesses, including Roe. The UHB recommended that the discipline be upheld. The final administrative decision-maker, Defendant James Rund, ASU's Senior Vice President for Educational Outreach and Student Services, upheld Plaintiff's expulsion. Pursuant to A.R.S. § 12-901 *et seq.,* Plaintiff sought judicial review of the administrative decision from the Maricopa County Superior Court, which affirmed it as supported by substantial evidence, not arbitrary or capricious, not an abuse of discretion, and not contrary to law. [*See* Record Appeal Ruling/Remand dated October 29, 2018, attached as Exhibit A, p. 6.] Plaintiff's appeal to the Arizona Court of Appeals remains pending. [First Amended Complaint (Doc. 37) ("FAC") ¶ 24.]

Plaintiff filed this lawsuit in May 2018 against ABOR, Dr. Rund, UHB hearing board members Craig Allen, Kathleen Lamp and Andrew Waldron, and Kendra Hunter and Tara Davis of the ASU Dean of Students office (collectively, the "Individual Defendants"). Plaintiff asserts multiple claims, <u>each</u> of which presumes the administrative decision, and its affirmance on appeal, were wrongly decided. Accordingly, under the well-settled *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction over this action. Plaintiff's claims must also be dismissed on multiple other grounds, including sovereign and qualified immunity, failure to serve a timely or compliant Notice of Claim, and failure to state a claim upon which relief could be granted.

### I.     Plaintiff's Attacks On The Administrative Decision And State Court Judgment Are Barred By The *Rooker-Feldman* Doctrine.

The Ninth Circuit has made clear: "*Rooker-Feldman* is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "A federal action constitutes such a *de facto* appeal where 'claims raised in the federal court action are inextricably intertwined with the state court's decision such that the adjudication of the federal claims would undercut the state ruling ….'" *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 859 (9th Cir. 2008) (*quoting Bianchi* at 898). Accordingly, application of the *Rooker-Feldman* doctrine depends on the relief sought by the plaintiff in federal court. If plaintiff seeks "an undoing of the prior state-court judgment," the action is "clearly barred under Rooker-Feldman." *Plummer v. State Bar*, No. cv-08-1630-PHX-ROS, 2009 WL 2222713, *2 (D. Ariz. 2009) (*quoting Bianchi*, 334 F.3d at 900). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012) (*quoting Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 25 (1987) (Marshall, J., concurring)). A complaint barred by *Rooker-Feldman* should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), because "federal district courts lack jurisdiction to exercise appellate review over final state court judgments." *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007).

Here, Plaintiff seeks to hold Defendants liable for actions taken in connection with administrative disciplinary proceedings that have been reviewed and affirmed by the Maricopa County Superior Court. In addition to seeking damages for these alleged "wrongs," Plaintiff asks this Court to reverse the discipline imposed, expunge his disciplinary record, and require ABOR to allow him to complete his education at ASU. [FAC ¶ 330.] This Court could not find in Plaintiff's favor or grant the relief he seeks without finding the administrative and state court decisions erroneous and effectively reversing them.

For example, on his intentional infliction of emotional distress claim, Plaintiff alleges: Knowingly finding a young male guilty of forcible sexual assault despite


COHEN DOWD QUIGLEY

> undisputed evidence to the contrary and no sufficient notice of such charges, particularly in the current sociocultural climate, exceeds all possible bounds of decency.

[FAC ¶ 314.] Similarly, Plaintiff supports his gross negligence claim by alleging:

> By finding that Doe forcibly engaged in sexual misconduct with [Roe] even though Doe was never charged with using force, the use of force was never investigated, no credible evidence of force was presented, and Roe explicitly denied that force was sued [sic], Defendants' actions and inactions were made with a reckless indifference to the results and Doe's fundamental rights.

[FAC ¶ 304.] Plaintiff relies on similar allegations to support his § 1983, Title IX, breach of contract, and false light claims. [*See* FAC ¶¶ 231, 267, 289-91, 321-22.] However, the Superior Court already addressed and rejected these very allegations, finding substantial evidence in the record to support ASU's determination that Plaintiff had used force in his sexual contact with Roe, and that Plaintiff was given sufficient notice of the force allegation to be able to meet and attempt to refute it. [*See* Exhibit A, pp. 4, 5.][1] A finding in Plaintiff's favor on these contentions would necessarily reverse the state court ruling.[2]

Indeed, the central focus of Plaintiff's Complaint is that the decision to expel him was wrong. [*See, e.g.,* FAC ¶¶ 253 ("An erroneous outcome occurred in this case because Plaintiff was wrongfully found to have committed the alleged offenses related to sexually engaging an incapacitated person, forcible sexual contact, and alcohol violations."); 270 ("RUND's disciplinary decisions reflect a failure to apply a burden of proof, … and actually revealed the absence of a preponderance of evidence supporting the finding of a violation by Plaintiff.").] This is a textbook example of a "state-court loser[] complaining of injuries caused by state-court judgments … and inviting district court review and rejection of those judgments." *Mothershed v. Justices of Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005).

---

[1] On a motion to dismiss for lack of subject matter jurisdiction, the Court may consider materials outside of the pleadings without converting the motion into a motion for summary judgment. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1141 (9th Cir. 2003) ("[I]n ruling on a 12(b)(1) jurisdictional challenge, a court may look beyond the complaint and consider extrinsic evidence.").

[2] The fact that Plaintiff's appeal of the state court decision is still pending is not relevant. "The controlling question in the *Rooker-Feldman* analysis is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision, not whether the state court judgment is presently subject to reversal or modification." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997) (*quoting Ernst v. Child & Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)).

3

Multiple courts have applied *Rooker-Feldman* to dismiss actions in similar circumstances. For example, in *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 824 (7th Cir. 1999), plaintiff asserted that a false and defamatory statement by the defendant resulted in the revocation of plaintiff's liquor license and "caused a loss of property and economic interest without due process of law and a host of other injuries…." The district court dismissed the claims, and the Seventh Circuit affirmed, ruling that having been unsuccessful in a state court appeal of the revocation, plaintiff "now seeks the monetary value of this license as damages in its defamation suit." *Id.* at 825. The federal lawsuit was prohibited:

> If a federal court were to award the relief Maple Lanes seeks in the form of monetary damages equal to the value of the liquor license, this result would effectively reverse the state court judgment upholding the revocation of the liquor license. There is little difference between awarding Maple Lanes the monetary value of the license and the license itself.

*Id.* at 826.

Similarly, in *Arvanitis v. Mass. Dep't of Corr.*, No. CIV.A. 10-10213, 2011 WL 4436761 (D. Mass. Sept. 21, 2011), plaintiffs sought to have their employment classifications changed by their public agency employer. Their requests were denied at the administrative level, and the denial was affirmed by the state court. *Id.* at *1. The district court dismissed a subsequent lawsuit on the same issue: "[A]lthough their claims now against the decision-makers at every level of that review are framed as constitutional claims, '[t]o find for Plaintiffs now would require us to declare that the state court wrongly decided Plaintiffs' claim,' which *Rooker–Feldman* bars this Court from doing." *Id.* at *3 (*quoting Davison v. Gov't of P.R.-P.R. Firefighters Corps.*, 471 F.3d 220, 223 (1st Cir. 2006)).

The same result is compelled here. On each claim, Plaintiff seeks relief from the state administrative and judicial review decisions through both an award of damages and the specific reversal of the disciplinary action. [*See* FAC ¶¶ 241, 277, 297, 310, 330.] This Court cannot grant this relief without "eviscerat[ing] the state court's judgment." *Bianchi*, 334 F.3d at 902. "The integrity of the judicial process depends on federal courts respecting final state court judgments and rebuffing de facto appeals of those judgments to federal court." *Id.* The FAC should be dismissed.

4

**II.     Plaintiff's Claim Under 42 U.S.C. § 1983 Must Be Dismissed.**

Plaintiff's claim against ABOR and the Individual Defendants under 42 U.S.C. § 1983 fails for the following reasons: 1) ABOR is not a "person" for the purposes of a § 1983 claim; 2) a claim under § 1983 cannot be used to redress rights under Title IX; 3) the Individual Defendants have qualified immunity because the property, liberty and fundamental rights Plaintiff cites did not exist at the time of the alleged conduct; and 4) Plaintiff fails to state a claim because the rights he asserts are not recognized in Arizona.

**A.     ABOR Cannot Be Sued Under § 1983.**

A § 1983 claim may only be asserted against a "person" acting under color of state law. 42 U.S.C. § 1983. It is well-settled that an arm of the state is not a "person" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989). ABOR is an arm of the State of Arizona and is thus immune from liability for claims brought under § 1983, regardless of whether the claims seek damages or injunctive relief. *See Kay v. Likins*, 160 F. App'x 605, 607 (9th Cir. 2005) (holding that ABOR is not a person within the meaning of § 1983); *Dickman v. Ariz. Bd. of Regents*, No. CV 08-1684-PHX-MHM, 2008 WL 4693404, at *2 (D. Ariz. 2008) ("ABOR is an arm of the State of Arizona; and is not considered a 'person' under § 1983 …."). The § 1983 claim against ABOR must be dismissed.

**B.     Plaintiff Cannot Use § 1983 To Redress An Alleged Title IX Violation.**

Plaintiff alleges that a "deprivation of rights under Title IX gives rise to a claim against officials … for violations of 42 U.S.C. § 1983." [FAC ¶ 198.] However, federal courts have specifically held to the contrary. *See, e.g., Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1299-1300 (11th Cir. 2007) ("[A] plaintiff cannot assert a § 1983 action based on a violation of Title IX."); *Doe v. Napa Valley Unified Sch. Dist.*, No. 17-CV-03753-SK, 2018 WL 4859978, at *4 (N.D. Cal. 2018) (dismissing § 1983 claim based on alleged violation of Title IX for failure to state a claim). "Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations." *Williams*, 477 F.3d at 1300. Accordingly, Plaintiff's § 1983 claim against the Individual Defendants based on alleged violations of Title IX fails.

5

**C.     The Individual Defendants Are Protected By Qualified Immunity.**[3]

The federal doctrine of qualified immunity protects public employees in their individual capacities from suit unless the facts alleged demonstrate that the employee's conduct violated a clearly established constitutional right. *See, e.g.*, *Todd v. United States*, 849 F.2d 365, 371 (9th Cir. 1988) (holding that because defendants did not violate plaintiff's "*clearly established* First or Fifth Amendment right," defendants were immune from suit). The U.S. Supreme Court has explained, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (*quoting Anderson v. Creighton,* 483 U.S. 635, 640 (1987)) (alterations in original). The "statutory or constitutional question" must be "beyond debate." *Id.*

Plaintiff's § 1983 claim is based on his allegations that he had a "substantial liberty and property interest in avoiding an unfair or erroneous disciplinary decision, in maintaining his excellent academic, professional and personal reputation, and in avoiding social stigma," and a "protected property interest in pursuing his education, as well as in future educational and employment opportunities and occupational liberty…." [FAC ¶¶ 206-07.] However, Plaintiff did not at the time of the disciplinary decision have a constitutionally protected property interest in attending ASU, and the circumstances of the discipline did not give rise to a liberty interest in his reputation or in future employment or educational opportunities.

Protected interests in property "are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law … that support claims of entitlement to those benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The Supreme Court has explained that public university students have a legitimate claim of entitlement to their education only if state law confers this interest. *See Bd. of Curators of Univ. of Mo. v. Horowitz,*

---

[3] Courts are required to resolve qualified immunity questions "at the earliest possible stage in litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

6

435 U.S. 78, 82 (1978) ("Because property interests are creatures of state law, respondent would have been required to show at trial that her seat at the Medical School was a 'property' interest recognized by Missouri state law.") (citation omitted). However, no court has recognized a property or liberty interest in public postsecondary education under Arizona law. *See Schwake v. Ariz. Bd. of Regents*, No. CV-15-00696-PHX-SPL, 2018 WL 1536388, at *5, n.2 (D. Ariz. 2018) (noting that due to the absence of a constitutionally protected liberty or property interest in postsecondary education, "the Court need not turn to what procedural protections were due" under the United States Constitution); *Austin v. Univ. of Or.*, 205 F. Supp. 3d 1214, 1221-22 (D. Or. 2016) (finding no Supreme Court or Ninth Circuit case establishing a property right in a college education).

Defendants also did not violate a clearly established "liberty interest" under the circumstances here. Liberty interests are reserved for the most fundamental of our rights, and "attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law." *Paul v. Davis*, 424 U.S. 693, 710-11 (1976). After notice and a hearing, Defendants issued their recommendation and rulings on Plaintiff's appeal from the discipline imposed by ASU. The recommendation and rulings were not circulated publicly, and Plaintiff does not allege that they are likely to become public, a necessary element to the creation of a liberty interest. *See Bishop v. Wood*, 426 U.S. 341, 348 (1976) (holding that communication not made public "cannot properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired"). Moreover, no clearly established law holds that administrative disciplinary decisions, even if erroneous, constitute a violation of the student's liberty interests where, as here, the rulings were the result of due process. *See C.R. v. Eugene Sch. Dist. 4J*, 835 F.3d 1142, 1154 (9th Cir. 2016) ("There is no reason why a school should not be permitted to record the reason for a student's suspension, however unsavory, so long as it applied the appropriate procedural safeguards while pursuing its investigation.").[4]

---

[4] For the same reasons, Plaintiff does not have a constitutionally protected property or liberty interest in <u>future</u> employment or educational opportunities.

7

Finally, Plaintiff's attempt to rely on a "fundamental right" to public postsecondary education fails because no such right has ever been recognized in Arizona or by the United States Supreme Court. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37 (1973) ("We have carefully considered each of the arguments supportive of the District Court's finding that education is a fundamental right or liberty and have found those arguments unpersuasive."). The Individual Defendants are entitled to qualified immunity.

### D. Plaintiff Fails To Plausibly Allege A Due Process Violation.

Even assuming Plaintiff had a protectable constitutional interest at stake here, the allegations in the FAC do not plausibly state a procedural or substantive due process violation. For procedural due process to be satisfied, "one must be given notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Vanelli v. Reynolds Sch. Dist. No. 7*, 667 F.2d 773, 779-80 (9th Cir. 1982) (*quoting Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). The FAC alleges that 1) Plaintiff was given notice of the charges against him; 2) Plaintiff requested and received a hearing before an independent body; 3) Plaintiff was represented by counsel and had the opportunity to present argument and evidence on his own behalf; and 4) Plaintiff had the opportunity to appeal the administrative decision to the state court. [FAC ¶¶ 24, 144-181, 197.] These are adequate procedural due process protections as a matter of law. *See, e.g., Hess v. Bd. of Trustees of S. Illinois Univ.*, 839 F.3d 668, 677 (7th Cir. 2016) (holding that student facing expulsion received adequate due process where student "had a hearing, at which he was permitted to call witnesses, question those witnesses, and testify on his own behalf; and he had counsel, present with him and advising him, throughout that proceeding.").

Moreover, there is no due process guarantee of a particular quality of pre-hearing investigation. *See Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 655 (S.D. Ohio 2016). There, a student expelled under similar circumstances asserted a due process claim based on an investigation that was allegedly "inadequate and biased." The court rejected the claim: "Due process provides, not a guarantee of a perfect investigation, but notice and an opportunity to be heard by a neutral decisionmaker. Here, any claims of bias in the investigation don't

8

implicate these due process concerns." *Id.* at 657-58 (internal citations omitted). *See also Arrellano v. City of San Luis*, No. CV-16-03423-PHX-DGC, 2017 WL 1833603, *7 (D. Ariz. 2017) ("Plaintiff does not provide, and the Court is not aware of, any case law suggesting that an adequate prehearing investigation is a required component of procedural due process."); *Diaz v. McGuire*, 154 F. App'x 81, 85 (10th Cir. 2005) ("An adequate prehearing investigation is not among the minimum due process protections ….").

Plaintiff's claim based on an alleged substantive due process violation also fails. "Substantive due process refers to certain actions that the government may not engage in, no matter how many procedural safeguards it employs." *See C.R.*, 835 F.3d at 1154 (*citing Wedges/Ledges of Cal. v. City of Phoenix, Ariz.*, 24 F.3d 56, 66 (9th Cir. 1994). It is generally confined to protecting "an individual's fundamental rights to liberty and bodily autonomy." *Id.* No such interests are at stake here, as Plaintiff did not have a fundamental right to continue his education at ASU.

The facts of the *C.R.* case are analogous. There, the plaintiff was suspended for two days after he participated in harassing younger students with sexually-charged language and challenged the discipline, *inter alia*, as a violation of his substantive due process rights. *C.R.*, 835 F.3d at 1147. The Ninth Circuit rejected the claim, holding that "no fundamental rights are at stake." *Id.* at 1154. *See also Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1262 (9th Cir. 1994) (holding that for claims not affecting a fundamental right, the court "merely look[s] to see whether the government could have had a legitimate reason for acting as it did.") (quotations and citations omitted). The FAC does not allege facts to support a plausible procedural or substantive due process violation. Plaintiff's claim under 42 U.S.C. § 1983 against the Individual Defendants should be dismissed.

### III. The First Amended Complaint Does Not State A Cognizable Title IX Claim.

Plaintiff alleges a violation of Title IX based on two related theories: "erroneous outcome" and "severity of penalty/selective initiation." [FAC ¶ 252.] To state an erroneous outcome claim, Plaintiff must plead: "(1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a particularized causal

9

connection between the flawed outcome and gender bias." *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (quotations and alterations omitted).  To state a claim based on the severity of the penalty or selective enforcement, "a male plaintiff must demonstrate that a female was in circumstances sufficiently similar to his own and was treated more favorably by the University." *Doe v. Columbia Coll. Chi.*, 299 F. Supp. 3d 939, 957 (N.D. Ill. 2017).

Under either theory, Plaintiff must allege facts showing that gender bias was "a source of the deprivation." *Schwake*, 2018 WL 1536388 at \*6.  *See also Johnson v. W. State Colo. Univ.*, 71 F. Supp. 3d 1217, 1226 (D. Colo. 2014) ("[G]ender bias is a required element of a Title IX claim.").  Plaintiff, however, does not make a single factual allegation regarding gender bias that is specific to the disciplinary proceedings that led to his expulsion.  Rather, Plaintiff makes broad conclusory allegations about systemic gender bias that is supposedly inherent in an aggressive approach to addressing sexual assault allegations, relying primarily on statements made by the federal Office of Civil Rights ("OCR"), its administrators and various commentators.  [*See* FAC ¶¶ 84-107.]  This conclusory approach to trying to state a plausible Title IX claim has been repeatedly rejected.

In *Schwake*, for example, the District Court dismissed a Title IX claim that was based on "conclusory" allegations "insufficient to raise a plausible inference that gender bias motivated or impacted Defendants ABOR and ASU's actions." 2018 WL 1536388 at \*6.  The plaintiff alleged that, during an investigation and related disciplinary proceeding of plaintiff's alleged sexual misconduct, ASU employees "displayed pro-female, anti-male bias" and that "male respondents in student disciplinary proceedings involving alleged sexual harassment and misconduct cases at Defendant ASU are discriminated against solely on the basis of sex.  They are invariably found guilty, regardless of the evidence or lack thereof." *Id.*  This Court found those allegations insufficient:  "[T]here remains no plausible inference that a university's aggressive response to allegations of sexual misconduct is evidence of gender discrimination." *Id.* (citation omitted).

In addition, the plaintiff's failed allegations in *Columbia College* were remarkably similar to Plaintiff's here.  The *Columbia College* plaintiff alleged that "the anti-male bias at CCC, and

10

at other colleges, began in 2011 when OCR sent a "Dear Colleague" letter instructing colleges on how to comply with Title IX when investigating and resolving complaints of sexual misconduct." 299 F. Supp. 3d at 948.  The plaintiff contended: 1) the Dear Colleague letter was not the subject of public comment and had questionable validity; 2) Columbia revised its policies to be consistent with the Dear Colleague letter under pressure from the OCR "to treat women as victims and to give them preferential treatment in sexual misconduct cases"; and 3) Columbia feared "that OCR would investigate and withdraw federal funds if it found CCC to not be in compliance with its interpretation of Title IX." *Id.* Plaintiff makes nearly identical allegations here. [*See* FAC ¶¶ 84-98.]

The *Columbia College* court began its analysis by noting that "to survive a motion to dismiss, Doe must provide some allegations to allow the Court to infer a causal connection between his treatment and gender bias and raise the possibility of relief under Title IX above the speculative level."  299 F. Supp. 3d at 950.  The court cited multiple cases in which claims "based upon allegations of general anti-male bias resulting from public and government pressure" were rejected.  *Id.* at 954 (*citing Doe v. Cummins*, 662 Fed.Appx. 437, 452 (6th Cir. 2016), *Xiaolu Peter Yu v. Vassar Coll.,* 97 F. Supp. 3d 448, 474–75 (S.D.N.Y. 2015), and *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1077 (D. Colo. 2017)). Consistent with those cases, the court dismissed the Title IX claim because the plaintiff did not "identify specific facts or comments by university officials that are indicative of gender bias" or "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding." *Id.* at 955.

Here, as in *Columbia College*, Plaintiff has not alleged a single fact that indicates gender bias by any ASU official involved in his discipline.  Plaintiff identifies only one statement attributable to ASU: "In response to the Department's actions in September 2017, ASU clarified that it had "not changed its policies regarding the adjudication of sexual assault cases" and "[a]t no time" would "waiver in its commitment to maintaining a safe educational

environment free of discrimination for **all students**." [FAC ¶ 106 (emphasis added).][5] This statement <u>defeats</u> Plaintiff's Title IX claim because it demonstrates that ASU intends to rigorously pursue sexual assault claims, <u>regardless</u> of the victim's gender.

Accordingly, taking as true Plaintiff's allegation that he was treated less favorably than Roe in the investigation and hearing process, his Title IX claim still fails because Plaintiff does not allege facts to show that the unfavorable treatment was because of his gender. *See, e.g., Columbia College*, 299 F. Supp. 3d at 955 ("[E]ven viewing these allegations in the light most favorable to Plaintiff, they all are indicative, at best, of a bias in favor of sexual assault complainants and against those accused of sexual assault, regardless of gender."); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 778 (S.D. Ohio 2015) ("Demonstrating that a university official is biased in favor of the alleged victims of sexual assault claims, and against the alleged perpetrators, is not the equivalent of demonstrating bias against male students."); *Univ. of Colo.*, 255 F. Supp. 3d at 1074 (holding that "pro-victim bias … does not equate to anti-male bias."). Moreover, Plaintiff's allegation that more male students are accused of sexual assault [FAC ¶ 100] does not compel a finding of gender bias, as ASU "is not responsible for the gender makeup of those who are accused by other students of sexual misconduct." *Univ. of Colo.*, 255 F. Supp. 3d at 1078. *See also Columbia College*, 299 F. Supp. 3d at 957 ("Again, CCC is not responsible for the gender makeup of those who are accused by other students of sexual misconduct.") (quotations omitted). Plaintiff has not stated a cognizable Title IX claim, and it should be dismissed.

## IV. Plaintiff's State Law Claims Against ABOR And The Individual Defendants In Their Official Capacities Are Barred By The Eleventh Amendment.

Plaintiff asserts multiple claims arising out of state law against ABOR and the Individual Defendants in their official capacities. The Eleventh Amendment precludes the assertion of such claims in federal court. *See Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir.

---

[5] Plaintiff also alleges that "UHB panelists receive annual training on the issues related to dating violence, domestic violence, sexual assault and stalking and how to conduct an investigation and hearing process that **protects the safety of victims and promotes accountability**." [FAC ¶ 61 (emphasis in original).] An emphasis on victim safety does not demonstrate an anti-male bias.

1992) ("The eleventh amendment bars both a federal court action for damages (or other retroactive relief) brought by a citizen against a state and such a federal court action brought by a citizen against a state official acting in his official capacity."). Accordingly, Plaintiff's breach of contract claim against ABOR and his tort claims against the Individual Defendants in their official capacities must be dismissed.[6]

## V.     **Plaintiff Failed To Serve A Timely And Compliant Notice Of Claim**.

Claims against public agencies and employees must be preceded by a written notice of claim, filed within 180 days after the cause of action accrues, containing "facts sufficient to permit the public entity or public employee to understand the basis upon which liability is claimed." A.R.S. § 12-821.01(A). The long-respected purpose of this claims presentment process is to allow the defendants to "investigate and assess liability, to permit the possibility of settlement prior to litigation and to assist the public entity in financial planning and budgeting." *Haab v. County of Maricopa*, 219 Ariz. 9, 12, ¶ 15 (App. 2008) (*citing Deer Valley Unified Sch. Dist. No. 978 v. House*, 214 Ariz. 293, 295, ¶ 6 (2007)). A valid notice of claim must contain "enough information to allow the state to intelligently ascertain these purposes so it can conscientiously allow or disallow the claim." *Howland v. State*, 169 Ariz. 293, 299 (App. 1991). The Notice of Claim Plaintiff delivered to ABOR and certain of the Individual Defendants on February 23, 2018 is both untimely and deficient.[7]   [*See* Notice of Claim dated February 23, 2018, attached as Exhibit B.][8]

---

[6] During the parties' pre-motion meet and confer, Plaintiff agreed to voluntarily dismiss claims clearly barred by the 11th Amendment. To date, however, he has not done so.
[7] Plaintiff did not properly file the Notice of Claim with Defendants Rund or Davis. However, proving this fact will require review of documents outside of the pleadings, including the affidavits of service. Defendants will move for summary judgment on this issue if any of Plaintiff's state law claims against these defendants survive.
[8] On a motion to dismiss, this court may consider evidence on which the complaint relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). Plaintiff referenced his Notice of Claim in the FAC. [FAC ¶ 38.] It is central to Plaintiff's state law claims because those claims are barred unless a notice of claim was properly filed. *See Mitchell v. City of Flagstaff*, No. CV 11-8140-PCT-FJM, 2011 WL 5826014, at *1 (D. Ariz. Nov. 18, 2011) (considering plaintiffs' notice of claim on defendants' motion to dismiss). It is also a matter of public record of which this Court can take judicial notice. *See Pataky v. City of Phoenix*, No. 2:09-CV-0534-HRH, 2009 WL 10673403, at *4, n.9 (D. Ariz. 2009) (taking judicial notice of plaintiff's notice of claim attached to motion to dismiss).

13

### A. Plaintiff Did Not Serve A Notice Of His IIED Claim.

Plaintiff's Notice of Claim does not mention a claim for intentional infliction of emotional distress ("IIED"), and is devoid of information that would allow Defendants to understand IIED as "the basis upon which liability is claimed." A.R.S. § 12-821.01(A). It does not allege that any Defendant engaged in conduct that was "extreme" or "outrageous" and does not allege that Plaintiff sustained severe emotional distress, as is required to state an IIED claim under Arizona law. *See Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1003 (D. Ariz. 2004) (identifying elements of an IIED claim). Therefore, Plaintiff's claim for IIED must be dismissed.

### B. Plaintiff's Notice Of Claim Is Untimely As To IIED And False Light.

Plaintiff's false light and IIED claims against the Individual Defendants are based on the UHB's finding that Plaintiff used force in his sexual conduct with Roe and are barred by A.R.S. § 12-821.01 as untimely. A false light invasion of privacy claim accrues as of the date of publication. *See Watkins v. Arpaio*, 239 Ariz. 168, 172-73 (App. 2016) (dismissing false light claim where defendant made no actionable statement within one-year limitations period). An IIED claim accrues when the plaintiff knows "both the 'who' and the 'what' underlying his claim." *Franklin v. City of Phoenix*, No. CV-06-02316-PHX-NVW, 2007 WL 1463753, at *2 (D. Ariz. 2007).

The UHB (Defendants Allen, Lamp and Waldron) made the force finding in its recommendation to Dr. Rund (copied to counsel for Plaintiff) on May 30, 2017. [FAC ¶ 184.] The UHB had no involvement after that date. Thus, Plaintiff's 180-day deadline to file a Notice of Claim as to Defendants Allen, Lamp, and Waldron expired no later than November 26, 2017. Dr. Rund adopted the UHB's recommendation in his first decision dated June 27, 2017. The deadline to file a Notice based on that decision ended on December 24, 2017. The involvement of Defendants Hunter and Davis in the discipline ended with Ms. Hunter's testimony at the hearing held on May 23, 2017. To the extent these Defendants took any actions that could have resulted in "emotional distress" to Plaintiff, he was required to serve a Notice of Claim by November 19, 2017 at the latest. As to all of

14

these Defendants, Plaintiff's February 23, 2018 Notice of Claim was untimely and the false light and (unstated) IIED claims are barred.

## VI. Plaintiff Fails To Adequately Plead His State Law Claims.

Each of Plaintiff's claims arising under state law should be dismissed for the further reason that they fail to state a claim on which relief can be granted.

### A. The Economic Loss Rule Bars Plaintiff's Gross Negligence Claim.

The economic loss rule "limit[s] a contracting party to contractual remedies for the recovery of economic losses unaccompanied by physical injury to persons or property." *Flagstaff Affordable Housing Ltd. P'ship v. Design Alliance, Inc.*, 223 Ariz. 320, 323 (2010). Plaintiff alleges he had a "contractual relationship" with ABOR and that "[t]he University's Policy and Code were a part of that contract." [FAC ¶¶ 279-80.] He further alleges ABOR breached its contract by: (1) "finding Doe responsible for sexual misconduct, … fail[ing] to apply the Code requirement that required evidence of physical acts or violence be used to gain access to sex"; (2) "RUND [finding] Doe responsible for sexual misconduct based on less than a preponderance of the evidence"; and (3) not conducting "the 'fair and impartial' investigation required by the Procedures and promised to Plaintiff." [FAC ¶¶ 291, 293, 294]. To support his gross negligence claim, Plaintiff alleges: (1) "Defendants owed Plaintiff a duty to treat him fairly and in accordance with their responsibilities under the Code and Procedures"; (2) Defendants did not conduct a fair or adequate investigation; and (3) "Defendants misapplied their own disciplinary standards." [FAC ¶¶ 299-305.] He seeks damages as a remedy on both claims. [FAC ¶¶ 297, 310.] However, Plaintiff is barred from seeking tort damages for gross negligence for the very same conduct as he alleges constitutes breach of contract. *See, e.g.*, *Cook v. Orkin Exterminating Co.*, 227 Ariz. 331, 335 (App. 2011) (affirming dismissal of tort claims on summary judgment based on the economic loss rule where appellants were "seeking remedies for purely economic loss from Orkin's alleged failure to adequately perform it promises under the Agreement"). The gross negligence claim should be dismissed.

### B. Plaintiff Has Not Sufficiently Alleged An IIED Claim.

15

To state an IIED claim, Plaintiff must allege facts demonstrating that Defendants' conduct was "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Loos v. Lowe's HIW, Inc.*, 796 F. Supp. 2d 1013, 1023–24 (D. Ariz. 2011) (quotations omitted). The allegations must describe actions that "fall[] at the very extreme edge of the spectrum of possible conduct." *Watts v. Golden Age Nursing Home*, 127 Ariz. 255, 257 (1980). The Court determines whether the acts alleged fall within "that quite narrow range of 'extreme and outrageous' conduct necessary" to state an IIED claim. *Id.*

Plaintiff's allegations that the administrative proceedings were flawed and the outcome was erroneous, even if true, do not render Defendants' actions "extreme" or "outrageous." *See, e.g.*, *North v. Catholic Univ. of Am.*, 310 F. Supp. 3d 89, 96 (D.D.C. 2018) (dismissing IIED claim based on discipline imposed on student); *Hixon v. State Comp. Fund*, 115 Ariz. 392, 393 (App. 1977) (dismissing IIED claim based on alleged wrongful termination of workmen's compensation benefits). In *North*, as here, the plaintiff alleged he was "unfairly treated during the University's investigation and disciplinary hearing, including permitting and presenting evidence that favored Ms. Doe's side of the story without affording him the same opportunity." 310 F. Supp. 3d at 95. He further contended that the administrators were biased against him, openly hostile, and acted with "actual malice" in determining which witnesses could testify at the hearing. *Id.* The court held the allegations, even if true, did not rise to the level of extreme and outrageous conduct required to sustain an IIED claim. *See id.* at 96. The same analysis applies here, and Plaintiff's IIED claim fails.

### C.   Plaintiff Has Not Sufficiently Alleged A False Light Claim.

To state a *prima facie* claim for false light, Plaintiff must allege facts sufficient to show that "the defendant, with knowledge of falsity or reckless disregard for the truth, gave publicity to information placing the plaintiff in a false light." *Desert Palm Surgical Group, P.L.C. v. Petta*, 236 Ariz. 568, 580, ¶ 29 (App. 2015). To support this claim, Plaintiff only cites statements allegedly made to certain individuals within ASU.[9] [FAC ¶¶ 182, 324.] Such

---

[9]   Plaintiff's further contention that Defendants' statements were later "disseminated to

internal dissemination does not satisfy the publicity element of a false light claim. *See Hart v. Seven Resorts Inc.*, 190 Ariz. 272, 280 (App. 1997) (holding that publicity means "the matter is made public, *by communicating it to the public at large, or to so many persons that the matter must be regarded substantially certain to become one of public knowledge*") (*quoting* Restatement (Second) of Torts § 652D, cmt. a) (emphasis in original). The false light claim therefore fails.

### D. Plaintiff Does Not Seek Declaratory Or Available Injunctive Relief.

Plaintiff seeks "a declaration or injunction so that: (a) the findings and sanction against John Doe made by ASU be reversed; (b) John Doe's disciplinary record be expunged and removed from his education record at ASU; (c) ASU shall provide John Doe with a notarized letter confirming that the findings and sanction have been reversed and expunged from John Doe's records; (d) ASU shall make all reasonable efforts to restore John Doe's reputation; (e) ASU shall allow John Doe to continue and finish his education at ASU." This is not a request for declaratory relief, which "is a procedural vehicle used to declare the legal rights and relationships of parties." *Jajo v. Auto-Owners Ins. Co.*, No. CV-13-00069-PHX-SRB, 2013 WL 12195628, at *2 (D. Ariz. 2013). Plaintiff does not ask this Court to declare "legal rights and relationships." He instead demands that the Court order ASU to take action to reverse the discipline ASU imposed. Plaintiff's "declaratory relief" claim fails.

Finally, ending where this Motion began, this Court cannot grant Plaintiff injunctive relief in the form of reversing the discipline imposed by ASU. The discipline has been affirmed by the Superior Court, and under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to hold otherwise.

### VII. Conclusion.

For all of the above reasons, Defendants respectfully requests that the First Amended Complaint be dismissed with prejudice and that Defendants be awarded their fees and costs incurred pursuant to A.R.S. § 12-341 and 42 U.S.C. § 1988(b).

---

Roe's friends and unknown other persons" [FAC ¶ 324] does not show "publicity" because he does not allege that any Defendant participated in that alleged further dissemination.

RESPECTFULLY SUBMITTED this 4th day of April, 2019.

                                            COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
   Attorneys for Defendants

By:         */s/ Rebecca van Doren*
      Daniel G. Dowd
      Rebecca van Doren
      Lisa O'Connor

18