Robert B. Carey (011186)
Leonard W. Aragon (020977)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
leonard@hbsslaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe, a single man, | Case No.: 2:18-cv-01623-DWL |
| Plaintiff, | |
| v. | **PLAINTIFF'S OPPOSITION TO INDIVIDUAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| The Arizona Board of Regents, et al., | |
| Defendants. | (Assigned to the Honorable Dominic W. Lanza) |

1    Plaintiff John Doe ("Doe") opposes the Individual Defendants'[1] Motion for

2  Summary Judgment. The Motion presents the following issues.

3       • Defendants argue Doe's notices of claim are untimely but ignore that the
         deadline for filing a notice of claim is statutorily tolled under A.R.S. § 12-
4         821.01(C). Tolling did not end until September 4, 2020, when the review process
          ended, and all notices were served long before that date. Even if the claim
5         accrued when Rund issued his final decision on August 30, 2017, the notices of
          claim, except for Defendant Allen, were all served within 180 days of August 30,
6         2017.

7
        • Defendants argue Doe failed to serve his notice of claim on Defendants Rund,
8         Hunter, Davis, and Waldron. Doe, using a licensed process server, served the
          notices as required by law. Defendants refute the affidavits of service. If the
9         affidavits are insufficient to create a fact issue, Doe has contemporaneously filed
          a 56(d) motion seeking discovery on whether Rund, Hunter, and Davis
10        appointed the employees who accepted service as authorized agents. Defendant
          Waldron contests he was served at his home or usual place of abode, but the
11        affidavit of service refutes his claim and create a fact issue for the jury.

12
        • Defendants argue Doe is not permitted to pursue a tort claim for a duty that
13        arises in contract. Defendants misconstrue Doe's claim and Arizona law. Doe
          may pursue a tort claim arising from Defendants' grossly negligent conduct.
14
        • Defendants argue Allen, Waldron, Lamp, and Rund are absolutely immune from
15        tort liability on the basis of quasi-judicial immunity. The Arizona Supreme Court
          rejected this argument long ago.
16

17  **I.    Relevant Factual Background[2]**

18    In September 2016, Jane Roe reported to ASU Police that she had been sexually

19  assaulted by Plaintiff and another male on April 2, 2016. [Dkt. 37, ¶ 144; Dkt. 70, ¶ 144].

20  Shortly thereafter, ASU's Office of Student Rights and Responsibilities initiated an

21  investigation under ASU's Student Disciplinary Procedures ("Procedures"). [Dkt. 37, ¶¶ 39,

22  144; Dkt. 70, ¶ 39, 144; Ex. 1, ¶ A(1).] Defendant Tara Davis conducted the investigation

23

24    [1] The individual Defendants are James Rund, Craig Allen, Tara Davis, Kendra Hunter,
25  Kathleen Lamp, and Andrew Waldron (collectively "Defendants").

26    [2] Defendants failed to submit a separate statement of facts as required by the local rules.
    Defendants' "Relevant Factual Background" (Mot. 1) is generally uncontroverted. Plaintiff
27  adopts the language used by Defendants when possible—with non-substantive and stylistic
    edits. If facts are controverted or new, Plaintiff cites to appropriate evidence. Plaintiff John
28  Doe only addresses facts relevant to the motion for summary judgment.

1

1    and Defendant Kendra Hunter supervised. [Dkt. 37, ¶¶ 33, 34; Dkt. 70, ¶¶ 33, 34.] Both

2    Hunter and Davis admit to receiving special training to serve in their respective roles. [Exs.

3    L, M.] During this investigation, at an interview with Doe on September 22, 2017, Davis,

4    under the supervision of Hunter, promised Doe she would act "as a neutral third-party

5    investigator" and "collect information, anything that [she] can get, by speaking to people, by

6    collecting documentation that may be available[.]" [Ex. K.] Had Doe known Davis would

7    not in fact collect exculpatory evidence, he or his attorneys would have found and provided

8    that information. [Ex. 12 at 24-25.]

9            Following the investigation, the Dean of Students determined that Doe provided

10   alcohol to Roe, who was under 21, in violation of Section (F-15) of the Student Code of

11   Conduct ("Code"), and "engaged in non-consensual sexual activity with a woman whom

12   you were aware was incapacitated, making her unable to provide consent" in violation of

13   (F-23) of the Code. [Ex. 3; Dkt. 37, ¶ 160; Doe 70, ¶ 160; *see also* Ex. 2.] There was no

14   mention of sex by force in the letter, a separate violation under section F-23 of the Code.

15   [Ex. 3]. On December 22, 2016, the Dean of Students expelled Doe, effective January 3,

16   2017, giving him five business days to appeal. [Ex. 3.] The Dean of Students' decision is not

17   final if a party requests a hearing to review the Dean's decision. [Ex. 1 at D-3 ("[The Dean

18   of Students' decision] is final, unless a party requests a hearing to review a decision to

19   suspend, expel, or revoke a degree.") and D-5 ("The filing of a timely written request for a

20   hearing will suspend the imposition of the disciplinary sanctions (except for the interim

21   suspension) pending the outcome of the hearing.").]

22           Doe exercised his right to appeal, which automatically stayed the Dean's decision to

23   expel, and a hearing was held before the University Hearing Board ("UHB") on May 23,

24   2017. [Dkt. 37, ¶¶ 165; 172, Dkt. 70, ¶¶ 165; 172; Ex. 1, 4.] The UHB was chaired by

25   Defendant Craig Allen, and Defendants Kathleen Lamp and Andrew Waldron served as

26   panel members. [Dkt. 37, ¶¶ 30-32; Dkt. 70, ¶ 172.] Each of the UHB members received

27   specialized training for their roles on the UHB. [Exs. J, N, O.] The UHB is only an advisory

28   entity to the Senior Vice President of Educational Outreach and Student Services,

2

Defendant Rund, who makes the final decision. [Ex. 1.] Rund also received specialized training for his role in the disciplinary proceedings. [Ex. P.] After a hearing where Doe could not directly cross-examine Roe, subpoena evidence, or compel testimony, the UHB issued its Findings and Recommendation on May 30, 2017. [Ex. 1, E-4, Ex. 9.] When considering the case, the UHB considered the allegations of gross negligence [Ex. D; Ex. 9, at 5]. The UHB rejected the allegations, but could not find based on a preponderance of the evidence that Roe was unable to consent due to incapacitation—the only charge levied against Doe under F-23—because the evidence demonstrated she was lucid and able to communicate. [Ex. 9.] The UHB, however, found that Doe engaged in sex by force [Ex. 9], despite Doe never being charged with sex by force [Ex. 3], Davis never investigating a sex by force charge [Ex. A], the University never seeking to prove sex by force [Ex. B], Roe disclaiming that force was used [Ex. C], and uncontroverted expert testimony there was no force used during the encounter [Ex. D].

Rund, after reviewing the UHB's recommendation,[3] issued a decision affirming that Doe engaged in sex by force and rejecting the UHB's finding there was insufficient evidence that Doe engaged in sex with Roe without her consent due to incapacitation. [Ex. 11]. Rund's decision was not final, because Doe filed a timely written request for review or rehearing as permitted by the Procedures. [Ex. 1, G-4 ("The decision of the Senior Vice President for Educational Outreach and Student Services is a final decision from the date it is issues, unless a timely written request for review or rehearing…is received by the Senior Vice President."); Ex. 12.] The request for review detailed the allegations that the student disciplinary process was grossly negligent. [Ex. 12.] On August 30, 2017, Rund denied Plaintiff's request and reaffirmed his decision to affirm the expulsion decision. [Ex. 13.] The August 30, 2017 decision was the first and only non-interim decision, and the first day Doe was expelled from ASU. [Ex. 1, H-4.]

---

[3] Plaintiff does not contest or otherwise address facts that are irrelevant to the Motion to Dismiss, such as Rund's specious declaration that he reviewed the entire audio transcript. Doe reserves all rights to challenge false factual claims at trial.

1    Under the Procedures, Doe had the right to seek judicial review under A.R.S. § 12-

2    904, to the Arizona superior court. [Ex. 1, G-5.] Indeed, Doe could only appeal the

3    administrative decision to the superior court under the Arizona Administrative Review Act.

4    A.R.S. §12-904 ("jurisdiction to review final administrative decisions is vested in the

5    superior court."); A.R.S. § 12-902 ("This article applies to and governs…Every action to

6    judicially review a final decision of an administrative agency…."). Doe filed a timely notice

7    of appeal under A.R.S. § 12-904. [Ex. E.] The superior court rejected the appeal. [Ex. F.]

8    Doe timely appealed to the Arizona Court of Appeals. [Ex. G.]. The Court of Appeals

9    granted relief and held "Rund's findings concerning force and incapacitation are not

10   supported by substantial evidence, he abused his discretion by concluding [Doe] violated

11   the Student Code of Conduct § F(23)…." [Ex. H, ¶ 46.] The court vacated the superior

12   court's judgment upholding Doe's expulsion and remanded the case to ASU to determine

13   the appropriate sanction for Respondent's sole remaining Code violation, a minor alcohol

14   violation. *Id.* The Dean of Students issued a decision on September 4, 2020. [Ex. I.]

15       All Notices of Claim were served within 180 days of Rund's final decision and well

16   before the Dean of Students decision on remand. [Exs. 14-20.] Doe personally served Lamp

17   with a notice of claim on February 26, 2018, and Allen on April 5, 2018. [Exs. 14-16.] Doe

18   served Waldron's notice of claim by leaving a copy of the summons and complaint at

19   Waldron's "dwelling or usual place of abode with someone of suitable age and discretion

20   who resides there" on February 28, 2018. [Ex. 20.] Specifically, the notice was left with Zac

21   Talbot, Waldron's "Co-resident." [*Id.*; *see also* Exhibit 7, ¶ 6.][4] Mr. Waldron claims he had

22   moved to Indiana when he was served, but he still possessed an Arizona driver's license and

23   had not submitted a change of address to the U.S. Post Office at the time of service. [Ex. J.]

24   Mr. Talbot also confirmed to the licensed process server he was Waldron's "co-resident."

25   [Ex. 20.]

26

27

28       [4] The process server misspelled Mr. Talbot's name as Zach Talbit.

4

1      Doe served Rund on February 28, 2018, at ASU's Fulton Center. [Ex. 17.] Linda

2   Hill, the "Office Manager for James Rund," was told about the summons and complaint

3   and confirmed she was "authorized to accept service of process." *Id.* That same day Doe

4   served Kendra Hunter and Tara Davis at ASU's Fulton Center. [Exs. 17-18.] Susan

5   Heydorn, as "Specialist" for Hunter and Davis told the Licensed Process Server she was

6   authorized to accept service of process for Hunter and Davis. [*Id.*]

7      After Defendants were served, they all appeared via counsel and actively litigated the

8   case. [Dkt. 22 (notice of appearance); Dkts. 15-20 (waiver of service); Dkt. 40 (motion to

9   dismiss); Dkt. 55 (joint motion for protective order); Dkt. 70 (Answer); Dkt. 71 (Notice of

10   Service of Responses to Mandatory Initial Discovery (MIDP) by Defendants); Dkt. 103

11   Notice of Service of Discovery by Defendants.] On December 17, 2018, Defendants asked

12   to discontinue a stay this Court ordered pending the resolution of the appeal under the

13   Arizona Administrative Review Act, A.R.S. §§ 12-901, *et seq.* [Dkt. 33.] Defendants claimed

14   they were "entitled to move forward to address the claims." The court lifted the stay

15   pursuant to Defendants' request on February 1, 2019. [Dkt. 35.]

16   **II.      Argument**

17         **A.      Plaintiff's notice of claim is timely.**

18      Defendants argue Doe's notices of claim are untimely. Mot. 4. This is incorrect.

19   Although a claim generally accrues when the damaged party realizes he or she has been

20   damaged and knows or should know the facts underlying the alleged bad acts that caused

21   the damage (A.R.S. § 12-821.01(B)), that is not the full test for claims arising from certain

22   administrative actions. Claims that must be submitted to an administrative claim or review

23   process pursuant to statute, rule or contractual duty do not accrue until all such

24   "procedures, processes or remedies have been exhausted." A.R.S. § 12-821.01(C). Here,

25   Doe must appeal the disciplinary decision to the superior court and court of appeals under

26   A.R.S. §§ 12-901, *et seq.*, Arizona's Administrative Review Act. The disciplinary process

27   therefore ended when there was a final, non-appealable decision, on September 4, 2020,

28   following remand by the Court of Appeals. Because a notice of claim must be filed within

1   180 days following the exhaustion of the review process and that deadline was long after

2   Defendants were served, appeared in this case, and substantively litigated the case, the

3   motion for summary judgment must be denied.

4         **1.   Because Doe's gross negligence claim must be reviewed under the Administrative Review Act, it did not accrue until the review process was complete.**

5

6       A party with a claim against a public employee shall file a notice of claim within "one

7   hundred eighty days after the cause of action accrues." A.R.S. § 12-821.01. The notice of

8   claim statute is tolled, however, if the claim must be submitted to a review process under a

9   statute, administrative or governmental rule or regulation, or contractual term until the

10   review process is complete. A.R.S. § 12-821.01(C). The statute states:

11       …any claim that must be submitted to…an administrative claims

12   process or review process pursuant to a statute, ordinance, resolution, administrative or governmental rule or regulation, or

13   contractual term shall not accrue for the purposes of this section until all such procedures, processes or remedies have been

14   exhausted. The time in which to give notice of a potential claim and to sue on the claim shall run from the date on which a final decision

15   or notice of disposition is issued in an alternative dispute resolution

16   procedure, administrative claim process or review process.

17   *Id.* Doe claims that Defendants acted in a grossly negligent manner when handling the

18   allegations against Doe. The UHB and Rund considered and rejected Doe's claims. *See, e.g.*,

19   Ex. 12-13; Ex. D. Because the findings in the administrative proceedings are res judicata in

20   a subsequent action, Doe must initiate and complete the review process set in the Arizona

21   Administrative Review Act before suing or his claim is extinguished. *See Quade v. Arizona Bd.*

22   *of Regents*, 700 Fed. Appx. 623, 625 (9th Cir. 2017) (holding "a party's failure to appeal a final

23   administrative decision makes that decision final and res judicata....") (citing *Olson v. Morris*,

24   188 F.3d 1083, 1086 (9th Cir. 1999); A.R.S. §§ 12-901, *et seq.*; §12-904 ("jurisdiction to review

25   final administrative decisions is vested in the superior court."); Ex. 1, G-5 (requiring Senior

26   Vice President to explain right to seek judicial review under A.R.S. § 12-904).

27

28

Doe, "must" submit his "claim" to a "review process pursuant to statute." *See* A.R.S. § 12-821.01(C) (tolling notice of claim statute for "claims" that must be submitted to "review process" under statute); A.R.S. § 12-902 ("This article applies to and governs…Every action to judicially review a final decision of an administrative agency….); *Quade*, 700 Fed. Appx. at 625 (recognizing "Arizona Board of Regents is an agency subject to [A.R.S. §§ 12-901, *et seq*.]"). It does not matter that Doe was not required to appeal, only that Doe must appeal using the Arizona Administrative Review Act. *Gorney*, 2013 WL 5348304 at 6 (recognizing that plaintiff's option to seek review does not make the use of the statute itself optional); *see also Mullenaux v. Graham County*, 2017 Ariz. 1, 5, 82 P.3d 362, 366 (App. 2004) (collecting cases holding use of "may" in administrative procedure does not necessarily render procedure permissive).

If Doe did not seek judicial review under the Administrative Review Act, his claim would be extinguished. *Quade*, 700 Fed. Appx. at 625 (rejecting plaintiff's claim the Arizona Board of Regents violated federal law because the University's Hearing Board found to the contrary and its decision is preclusive unless the determination is overturned on appeal under Arizona's Administrative Review Act). Doe, as required by statute, appealed Rund's decision to the superior court and then to the Court of Appeals, where he won. On September 4, 2020, he received a final administrative decision from the Dean of Students. His notices of claim were filed in 2018,[5] long before he received a final decision. Under these undisputed facts, Doe's claim is timely, and the Motion must be denied.

### 2. Even if statutory tolling ended when Rund issued his final decision, the Notices of Claim are timely.

Even if the statutory appeals process is not mandatory—it is for the reasons already stated—the student disciplinary process is mandatory [Ex. 1-2], and therefore the earliest the claim accrued was when Rund issued his final decision. Again, Doe claims Defendants' actions during the disciplinary proceedings were grossly negligent. That claim was

---

[5] Even if the notices of claim were not properly served, Defendants waived their right to contest service of the notice of claim by actively litigating this case for years. *See Ponce v. Parker Fire Dist.*, 234 Ariz. 380, 322 P.3d 197 (App. 2014).

considered by the UHB and Rund under the Procedures, and rejected. *Quade*, 700 Fed. Appx. at 625; *see also* Ex. 12; Ex. D; Ex. 13, Ex. 10, ¶ 3. The Code and Procedures are an "administrative or governmental rule," or contractual term that Doe must follow to the end before filing suit. [*See* Ex. 1; Ex. 2.] Rund issued his final decision on August 30, 2017. Because all notices of claim were served by February 26, 2018, except for Allen, they are timely for all Defendants (except Allen) if August 30, 2017, is the accrual date.[6]

### 3. The case law supports statutory tolling here.

In previous briefing in state court, Defendants cited three cases where a court found that tolling under A.R.S. § 12-821.01(C) does not apply; each is easily distinguished. In *Kosman v. State*, the Arizona Court of Appeals found an inmate's notice of claim was untimely because he did not have to submit the claim to the inmate grievance process before proceeding in superior court. *Kosman*, 16 P.3d 211, 213 (App. 2000). The inmate, appearing in propria persona, argued his claim was tolled under A.R.S. § 12-821.01(C) until he exhausted the inmate grievance system. *Id.* ¶ 6. The court rejected this argument because the grievance process is optional and there is no indication the legislature ever granted the Arizona Department of Corrections the "authority to review, resolve, or compensate tort or injury claims, or to make recommendations to that effect, or that [the inmate grievance process] was ever designed for such purposes."). *Id.* ¶ 9.

In contrast, Defendants have the authority to "review," "resolve," or "make recommendations to that effect" regarding Doe's gross negligence claim, and the ASU Student Disciplinary Process resolved factual disputes. *Quade*, 700 Fed. Appx. at 625; *see also* Ex. 1. The same is true for the administrative review process to the superior court and Arizona Court of Appeals; Doe had to seek judicial review of Rund's final decision, and by

---

[6] Even if statutory tolling did not exist and Rund's final decision on August 30, 2017, is considered the end of the review process, the Notices of Claim filed in February 2018 are timely. Before that day, Doe was on an interim suspension only and any bad acts by Defendants could have been remedied by Rund ruling in Doe's favor. *Noriega v. Town of Miami*, 243 Ariz. 320, 326 (App. 2017) (holding "actual damages caused by the breach" is necessary element of gross negligence claim).

extension the UHB's factual findings, under the Administrative Review Act. *Id*.; A.R.S. § 12-902 ("Unless review is sought of an administrative decision within the time and in the manner provided in this article, the parties to the proceeding before the administrative agency shall be barred from obtaining judicial review of the decision."). In short, a decision under the inmate grievance process is irrelevant to the lawsuit whereas Doe *must* pursue an administrative appeal or he loses his claim. *Id.*

In *Gorney v. Arizona Board of Regents*, the district court found that a public employee's notice of claim was untimely because he did not have to submit his claims to the administrative process. *Gorney v. Arizona Board of Regents, et al.,* No. CV-13-00023-TUC-CKJ, 2013 WL 5348304, (D. Ariz. Sept. 24, 2013). In *Biggs v. Town of Gilbert* the district court held that the Town of Gilbert's Personnel Rules does not regulate the process for tort claims. No. CV-11-330-PHX-JAT, 2011 WL 1793252 (D. Ariz. May 11, 2011). In contrast to the two unreported district court cases, the Ninth Circuit, in 2017, specifically held that the Senior Vice President's final decision results in issue and claim preclusion, and that the only remedy is to appeal the decision under Arizona's Administrative Review Act. *Quade*, 700 Fed. Appx. at 625. The statutory review process here is not optional; Doe *must* utilize the Administrative Review Act to review his claims.

**4.   The gross negligence claim is not barred by the statute of limitations.**

"All actions against…a public employee shall be brought within one-year after the cause of action accrues…." A.R.S. § 12-821. Defendants argue the gross negligence claims against Hunter, Davis, Allen, Waldron, and Lamp are untimely because their conduct was complete more than a year before doe sued. [Mot. 5-6.] Defendants are incorrect because the cause of action does not accrue until the review process is complete. *See* A.R.S. § 12-821.01(C) (The time in which to give notice of a potential claim *and to sue on the claim* shall run from the date on which a final decision or notice of disposition is issues….") (emphasis added). The final decision was issued on September 3, 2020. Doe filed his initial complaint on May 29, 2018. Dkt. 1. The claims are timely. Even if Rund's decision is considered the final decision, Doe's suit was timely.

1    Defendants' reliance on *Little v. State* to argue accrual occurs before an administrative

2    panel issues a final decision is misplaced. Mot. at 9 (citing *Little v. State*, 225 Ariz. 466, 469 ¶

3    11 (App. 2010))]. In *Little*, the plaintiff filed a wrongful death medical malpractice action

4    against a University of Arizona physician for failing to diagnose a student athlete's

5    pulmonary embolism. *Id.* ¶¶ 1-2. The court held the notice of claim was untimely because

6    the plaintiff was damaged, knew she was damaged, and knew of the actors and events that

7    caused or contributed to her extant damage when her agent filed a complaint with the

8    Arizona Medical Board triggering accrual under A.R.S. § 12-821.01(B). *Little* never

9    addressed or discussed statutory tolling under A.R.S. § 12-821.01(C) and there is nothing in

10   the case suggesting the statute does not apply here. *Id.* There is also no indication the

11   board's letter of reprimand rendered her claim res judicata or that she had to pursue a

12   statutory review process before suing, as Doe had to do. *Little* is factually irrelevant.

13   **B.    Plaintiff served Defendants Davis, Hunter, and Rund properly.**

14   Service of a notice of claim is governed by Ariz. R. Civ. P. 4.1. *See Simon v. Maricopa*

15   *Med. Ctr.,* 225 Ariz. 55, 61 ¶ 20 (App. 2010). Under the statute, an individual may be served

16   (1) personally, (2) at the person's "dwelling or usual place of abode with someone of

17   suitable age and discretion who resides there," or (3) "by delivery [a copy of the summons

18   and complaint] to an agent authorized by appointment or by law to receive service of

19   process." *Id.* at 4.1(d). Here, Davis and Hunter were served by delivering a copy of the

20   summons and complaint to an agent "authorized" to receive service of process. [Exs. 18-

21   19.] Rund was served at his office by delivering a copy of the summons and complaint to an

22   agent, Linda Hill, "authorized" to receive service of process. Ex. 17. Defendants argue

23   service on Rund, Davis, and Hunter was improper because the agents were not authorized

24   by appointment to receive service of process, relying on self-serving declarations to support

25   their argument. [*See* Exs. 10, 21-22, 25-26.]

26   The conflicting statements create disputed fact issue that precludes summary

27   judgment. Doe produced declarations from disinterested, licensed process server Nathan

28   Longoria, who regularly serves summons and complaints under Rule 4.1. [Exs. 17-19.] The

10

declarations were created on the same day he served Rund, Hunter, and Davis, and were made under penalty of perjury. Longoria "informed" Hill and Heydorn of the "contents" of the summons and complaint "in compliance with state statutes" and was told that Hill and Heydorn were authorized to accept service of process for Defendants. [Exs. 17-19.] In response, Defendants produced declarations from Defendants Rund, Davis, and Hunter, and declarations from ASU employees made years after they accepted service. Viewed in a light most favorable to Doe, the Longoria affidavits are sufficient evidence to show that Hill and Heydorn were agents authorized by appointment to accept service, precluding summary judgment [Exs. 17, 18, 19.] Again, Doe is not seeking to rely on apparent authority, but on evidence from which an inference can be drawn that actual authority in fact existed.

If the affidavits of service are insufficient to create a fact issue, Doe served a timely deposition subpoena on Hill, Heydorn, and sought to depose a 30(b)(6) witness capable of discussing the policies and procedures regarding service at the SRR, and incorporates his concurrently filed Rule 56(d) motion seeking the right to complete the depositions and conduct additional document discovery. The discovery will show whether Hill and Heydorn were given actual authority, as suggested by the affidavit from the licensed process server, to accept service for Davis, Rund, or Hunter. The depositions were not conducted before filing this Response because the parties were engaged in good faith discussions regarding the necessity of the depositions and document discovery. Doe acknowledges if Defendants properly identify and produce responsive documents and there is nothing showing actual authority, the depositions may be unnecessary and dismissal may be appropriate. *Udd*, 2018 WL 6727267, at *6-7 (collecting cases where a showing of actual authority is necessary for proper service).

### C.       Defendants Waldron and Allen were properly served.

Defendants' own authorities acknowledge that service is appropriate at an "…individual's dwelling house or usual place of abode through a person of suitable age and discretion then residing therein…." *Peck v. Hinchey*, CV-12-01371-PHX-JAT, 2014 WL

11

10987731, at *14 (D. Ariz. Mar. 14, 2014) (cleaned up); *see also* Ariz. R. Civ. P. 4.1(d)(2). Here, Waldron was served at his home. Ex. 20. During his deposition Waldron claims he moved from the home in Phoenix to Utah, but Waldron's own roommate, Zac Talbot, accepted service as the "co-resident" after Longoria described the contents "in compliance with state statutes." *Id.* Waldron did not change his address with the school, his driver's license, or otherwise indicate he lived elsewhere as of February 23, 2018—the date of service. [Ex. J.] A reasonable jury could find that Waldron lived in Phoenix on February 23, 2016, precluding summary judgment.

### D.    Defendants owed Plaintiff a duty of reasonable care.

Defendants argue that Doe's negligence claim arises out of "a supposed tort duty arising out of the same Code and Procedures." [Mot. at 12.] But Defendants' tort duties arise from Arizona law, not the contract. In Arizona, a college or university owes its students a "duty of reasonable care for on-campus activities." *Boisson v. Arizona Bd. of Regents*, 343 P.3d 931, 935 (App. 2015) (citing *Jesik v. Maricopa Cnty. Cmty. Coll. Dist.*, 125 Ariz. 543, 611 P.2d 547 (1980); *Delbridge v. Maricopa Cnty. Cmty. Coll. Dist.*, 182 Ariz. 55, 58–59, 893 P.2d 55, 58–59 (App. 1994) (holding college owed duty to student for injury incurred during college class, even though college did "not have a permanent campus")). And although the standard of care for Defendants is informed by the Procedures and Code, Defendants also must satisfy the standard imposed by law (reasonableness). *Id.*

Notably, Defendants have not conceded there is a contract between Doe and Defendants or even Doe and ABOR. [Dkt. 70, ¶ 42 (denying that the Code and Procedures create a binding contract between Doe and the University).] Nor have Defendants identified what bargained-for contractual obligations replace the obligation to act reasonably and consistent with their training during the student disciplinary process. If ASU does not concede or recognize a contract obligation that imposes duties on Defendants and ABOR, such a refusal informs the scope of the duty imposed by law that Defendants must act reasonably during the disciplinary proceedings. *Randolph v. Ariz. Bd. of Regents,* 19 Ariz. App. 121, 123, 505 P.2d 559, 561 (App. 1973) ("No better general statement can be made, than

1    that the courts will find a duty where, in general, reasonable men would recognize it and

2    agree that it exists.").

3          Defendants' understanding of Doe's negligence claim, for example, is that it is

4    "predicated on 1) Ms. Davis' alleged failure to gather exculpatory information during her

5    investigation; 2) the UHB's conclusion that force had been used against Complainant; 3) Dr.

6    Rund's supposed misapplication of the incapacity standard; and 4) the determination that

7    Plaintiff violated ASU's alcohol policy." [Mot. at 5.] Even if this were the extent of Doe's

8    tort claim—it is not—none of these examples constitute a contractual obligation. The

9    Procedures sets forth basic, minimal obligations for the Dean of Students, UHB members,

10   and the Senior Vice-President; it does not require them to fulfill their duties in the same

11   manner as a reasonable, trained administrator [Ex. 1]—that duty is imposed by law. The

12   minimal commitments in the Procedures are not the product of bargaining or allocating the

13   risks and burdens arising in an investigation or adjudication. [*See generally* Ex. 1.] Because the

14   manner in which ASU's obligations are carried out are not addressed by the parties, the

15   contract does not displace the duties otherwise imposed by law.

16         Further, as noted in *Gipson v. Kasey*, public policy considerations can lead to the

17   imposition of a duty. 214 Ariz. 141, 145, 150 P.3d 228, 232 (2007) (cleaned up). "The more

18   power bureaucrats exercise over our lives, the more we need some sort of ultimate responsibility

19   to lie." *Grimm v. Arizona Bd. of Pardons & Paroles,* 115 Ariz. 260, 266, 564 P.2d 1227, 1233

20   (1977). Where state actors elect to investigate and prosecute claims based on sexual assault

21   and violence, expel students, and inflict harm (including irreparable damage to one's

22   reputation and emotional distress) without evidence and outside their discretion, public

23   policy requires those agents to use reasonable care to avoid or prevent injury to Plaintiff. *Id.;*

24   *Rudolph v. Arizona B.A.S.S. Fed'n*, 182 Ariz. 622, 625, 898 P.2d 1000, 1003 (App. 1995)

25   (recognizing a general duty imposed on all persons not to harm others); *see also Doe v. Univ.*

26   *of St. Thomas*, 368 F. Supp. 3d 1309, 1318 (D. Minn. 2019), aff'd but criticized, 972 F.3d 1014

27   (8th Cir. 2020) (university disciplinary procedures "have consequences that extend far beyond

28   that environment and can affect students in significant and permanent ways."). To hold

1    otherwise would mean that Defendants "may not be held accountable for damages they

2    carelessly cause, no matter how unreasonable their conduct." *Boisson*, 343 P.3d at 934 (citing

3    *Gipson*, 214 Ariz. at 143-144, ¶¶ 10-11, 150 P.3d at 230-31).

4          Last, even if there were not a duty imposed by law or public policy, Defendant Davis

5    owed Doe a duty because she voluntarily assumed a duty when she promised Doe she would

6    act "as a neutral third-party investigator" and "collect information, anything that [she] can

7    get, by speaking to people, by collecting documentation that may be available[.]" [Ex. K.]

8    When Davis made this promise, she assumed a duty to use reasonable care in conducting her

9    investigation. *See Knauss v. DND Neffson Co.*, 192 Ariz. 192, 198, 963 P.2d 271, 277 (App.

10   1997). Davis created a duty when she, in the course and scope of her employment,

11   volunteered to investigate and collect all evidence and statements, including exculpatory

12   material, that otherwise would have been found and produced by Doe and his attorneys.

13   [Ex. 12 at 24-25.] Defendant Hunter, moreover, supervised Davis and attended the meeting

14   where Davis voluntarily assumed a duty to Doe. [Ex. K.] In addition to the other duties

15   owed to Doe, Davis, and Hunter, by voluntarily assuming a duty, were obligated to collect all

16   reasonably accessible evidence during the investigation and failed to do so. *See* Restatement

17   (Second) of Torts § 323; *Lloyd v. State Farm Mut. Auto. Ins. Co.,* 176 Ariz. 247, 250, 860 P.2d

18   1300, 1303 (App. 1992).

19         The out-of-jurisdiction cases Defendants rely upon are irrelevant because they do not

20   reflect Arizona law and are factually inapposite. *See Doe v. Trustees of Bos. Coll.*, 892 F.3d 67, 80

21   (1st Cir. 2018) (holding no duty because (1) the parties agree, unlike here, there is a contract

22   between the parties governing the relationship, (2) state law only permits recovery under

23   contract, in contrast to Arizona economic lost rule (*see* analysis *infra*), and (3) state law that

24   looks to foreseeability of act, a standard rejected in *Gipson v. Kasey*, 214 Ariz. 141, 144, ¶ 15,

25   151 P.3d 228, 231 (2007)); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 764 (M.D. Tenn. 2019)

26   (same); *Doe v. Univ. of Dayton*, 766 F. App'x 275, 289 (6th Cir. 2019) (holding no duty (1)

27   because there was "no dispute" there was an enforceable contact with "promises made and

28   duties," and (2) plaintiff's negligence claims, "pled in the alternative," were covered by the

14

1  contractual obligations); *Doe v. Syracuse Univ.*, 440 F. Supp. 3d 158, 181 (N.D.N.Y. 2020)

2  (holding no duty because (1) the uncontested contract between the university and plaintiff

3  governed the relationship, but not analyzing tort duties between plaintiff and individual

4  defendants (2) plaintiff's factual basis for breach of contract and negligence claims, unlike

5  here, were substantively the same; and (3) state law does not recognize duty for negligent

6  investigation or prosecution); *Faiaz v. Colgate Univ.*, 64 F. Supp. 3d 336, 362 (N.D.N.Y. 2014)

7  (holding no duty because the contractual duties and alleged tort duties were substantively the

8  same, and plaintiff failed to set forth facts showing university owed a duty to plaintiff); *Doe v.*

9  *Brown Univ.* 166 F. Supp. 3d 177, 196 (D.R.I. 2016) (holding no duty because state law, unlike

10  Arizona, prohibited tort claims for contacts arising from same duty);

11       Unlike other jurisdictions, Arizona does not bar tort claims arising from a contractual

12  relationship. *See, e.g., Flagstaff Affordable Hous Ltd. P'ship. v. Design All., Inc..,* 223 Ariz. 320, 323,

13  ¶ 12, 223 P.3d 664, 667 (2010) (narrowly construing the economic loss rule). This Court has

14  already held the economic loss rule does not bar Doe's negligence claim in part because the

15  rule only prohibits tort claims unaccompanied by physical injury and Doe's tort claim is

16  rooted in emotional harms and reputational damages. [Dkt. 66 at 25-26.] Defendants also

17  deny there is even a contract, and cannot now argue there are implied terms to a contractual

18  agreement they deny exists. [Dkt. 70 ¶ 42.] If there is no contract that prohibits the

19  unreasonable conduct alleged here, Doe's only recourse for the Defendants' failure to act

20  reasonably must sound in tort under Arizona law.

21       **E.    Defendants are not entitled to absolute immunity.**

22       Defendants argue that Allen, Waldon, Lamp, and Rund are entitled to "absolute

23  immunity" from liability in tort. [Mot. at 15.] The judiciary rejected this argument long ago:

24  "There is no absolute privilege in Arizona for public officers and employees of the state and

25  its political subdivisions." *Carlson v. Pima Cty.*, 141 Ariz. 487, 492, 687 P.2d 1242, 1247 (1984)

26  (*citing Portonova v. Wilkinson*, 128 Ariz. 501, 503, 627 P.2d 232, 234 (1981)). In *Grimm v.*

27  *Arizona Bd. of Pardons & Paroles*, the Arizona Supreme Court examined whether government

28  officials in quasi-judicial proceedings should be given the same absolutely immunity afforded

1
2
3
4
5

judges. 115 Ariz. at 564 P.2d at 1231. After a "thorough re-evaluation" of the rule extending immunity "enjoyed by judges for their judicial acts to other public officials performing a judicial function while acting in a quasi-judicial capacity" the Supreme Court "abolish[ed] the absolute immunity previously granted to public officials in their discretionary functions." *Id.* at 266, 1233.

6
7
8
9
10
11
12
13

Defendants misconstrue *Grimm*. The question is not whether the student disciplinary proceedings are quasi-judicial, they almost certainly are. The question is whether the proceedings are "true judicial proceedings," a phrase applying only to proceedings within the court system. *Grimm*, 115 Ariz. at 263-64, 564 P.2d at 1229-30. True judicial proceedings receive absolute immunity, quasi-judicial proceedings do not. *Id.* at 265-66. 1232-22. Because *Grimm* rejects the need for absolute immunity for officials "acting in a quasi-judicial capacity," which is precisely what occurred here, there is no absolute immunity for Defendants. *Id.*

14
15
16
17
18
19
20
21
22
23
24
25

Defendants rely on *Chamberlain v. Mathis,* but it found that "government executive employees are presumptively entitled to some immunity," but declined to extend absolute immunity to the ADHS director. 151 Ariz. 551, 558, 729 P.2d 905, 912 (1986). *Chamberlain* Defendants other authorities do not examine whether tort immunity should be extended to public officials in disciplinary proceedings, they address whether officials and witnesses are immune from liability for defamatory statements made or published during a quasi-judicial proceeding. *Burns v. Davis*, 196 Ariz. 155, 158, 993 P.2d 1119, 1122 (App. 1999) (examining whether a witness should be given qualified or absolute immunity for statements made in a quasi-judicial proceeding, and affording only qualified immunity to witness); *Yeung v. Maric*, 224 Ariz. 499, 501, 232 P.3d 1281, 1283 (App. 2010) (same)[7]; *Goldman v. Sahl*, 248 Ariz. 512, 526, 462 P.3d 1017, 1031 (App. 2020), review denied (Aug. 25, 2020) (extending the "litigation privilege," not absolute immunity, to statements made in contemplation of

26

27
28

_____

[7] *Craviolini v. Scholer & Fuller Associated Architects*, 89 Ariz. 24, 357 P.2d 611 (1961) which is cited in *Yeung* and by Defendants in their Motion, was decided more than a decade before *Grimm* overruled all cases holding to the contrary.

1   litigation). The only case cited by Defendants that actually affords absolute immunity, only

2   extends immunity to "to officers serving the judiciary[,]" not public officials serving in a

3   quasi-judicial capacity. *Burk v. State*, 215 Ariz. 6, 9 (App. 2007). Defendants Allen, Waldron,

4   Lamp, and Rund are not entitled to absolute immunity from tort liability.

5   **III.    Conclusion**

6   For the foregoing reasons, Defendants' Motion should be denied.

7

8   RESPECTFULLY SUBMITTED this 15th day of March, 2021.

9                                           **HAGENS BERMAN SOBOL SHAPIRO LLP**

10

11                                          By  s/ Leonard W. Aragon
                                               Robert B. Carey (011186)
12                                             Leonard W. Aragon (020977)
                                               11 West Jefferson Street, Suite 1000
13                                             Phoenix, Arizona 85003
                                               Telephone: (602) 840-5900
14                                             rob@hbsslaw.com
                                               leonard@hbsslaw.com
15
                                               Attorneys for Plaintiff John Doe
16

17

18

19

20

21

22

23

24

25

26

27

28