1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Unknown Party,                          No. CV-18-01623-PHX-DWL

10                 Plaintiff,                 **ORDER**

11   v.

12   Arizona Board of Regents, et al.,

13                 Defendants.

14

15                              **INTRODUCTION**

16          In February 2021, Plaintiff John Doe ("Doe") served a Rule 30(b)(6) deposition

17   notice on Defendant Arizona Board of Regents ("ABOR").  (Doc. 141-2 at 65-69.)  The

18   notice lists 19 examination topics.  (*Id.*)  Since then, the parties have engaged in extensive

19   meet-and-confer efforts concerning ABOR's objections to some of the noticed topics.

20   After those meet-and-confer efforts proved unsuccessful, the parties sought judicial

21   intervention by filing a joint notice of discovery dispute (Doc. 133), which resulted in a

22   telephonic hearing on May 6, 2021.  (Doc. 137.)  At the conclusion of that hearing, the

23   Court ordered the parties to continue meeting and conferring and authorized the submission

24   of additional briefing if the parties remained at an impasse.  (*Id.*)  Unfortunately, the parties

25   were unable to resolve their differences during the post-hearing conferral process.  ABOR

26   has now formalized its objections in a motion for protective order (Doc. 141) and Doe has

27   filed a response (Doc. 142).

28          For the following reasons, ABOR's motion is granted in part and denied in part.

1

**LEGAL STANDARD**

2  Rule 26(c)(1) of the Federal Rules of Civil Procedure provides that "[a] party or any

3  person from whom discovery is sought may move for a protective order in the court where

4  the action is pending."  *Id.*  Such protective orders may be sought for a host of different

5  reasons, including "protect[ing] a party or person from annoyance, embarrassment,

6  oppression, or undue burden or expense."  *Id.*  "With respect to undue burden and expense,

7  Rule 26(c) operates parallel to, and in tandem with, the proportionality limits now set forth

8  in Rule 26(b)(1)."  *See* 1 Gensler, Federal Rules of Civil Procedure, Rules and

9  Commentary, Rule 26, at 865 (2021).

10  Rule 26(c)(1) specifies that a protective order may be issued only "for good cause."

11  The burden of establishing "good cause" falls onto the party seeking the protective order.

12  *In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011)

13  ("Under Rule 26, . . . . [t]he party opposing disclosure has the burden of proving 'good

14  cause,' which requires a showing 'that specific prejudice or harm will result' if the

15  protective order is not granted.") (citation omitted).

16  If the requisite showing is made, the court "has broad power" and "can choose from

17  a wide range of protective measures."  *See* 1 Gensler, *supra*, Rule 26, at 866.  Those

18  protective measures include, but are not limited to, "forbidding the discovery," "specifying

19  terms . . . for the disclosure or discovery," "prescribing a discovery method other than the

20  one selected by the party seeking discovery," and "forbidding inquiry into certain matters,

21  or limiting the scope of disclosure or discovery to certain matters."  *See* Fed. R. Civ. P.

22  26(c)(1)(A)-(H).

23

**DISCUSSION**

24  ABOR's motion explains that "the parties are at an impasse with respect to Topics

25  5, 8, 10, 11, 12, 13, and 14" and also disagree as to the time limit for the Rule 30(b)(6)

26  deposition.  (Doc. 141 at 1.)  The disputed issues are addressed below.

27  …

28  …

I.      Topic 5

Topic 5 of the deposition notice seeks to require ABOR's Rule 30(b)(6) designee to testify about the following topic: "ASU's response to the Department of Education's 2014 investigation into possible Title IX violations at ASU." (Doc. 141-2 at 67.)

ABOR raises several objections to this topic. (Doc. 141 at 6-9.) First, ABOR contends the topic is vague because ASU has, in fact, been the subject of six different investigations in the last 10 years. (*Id.* at 6.) Second, ABOR contends the topic is overbroad and disproportionate because, even assuming the subject matter is limited to "two investigations that OCR [Office of Civil Rights] consolidated into a systematic review of ASU's Title IX processes," that review spanned six years, involved a large number of communications and document exchanges, and thus "it is not reasonable or proportionate to require ASU to prepare a witness with respect to the 'specifics' of any OCR investigation, which would require numerous interviews and the review of hundreds of documents." (*Id.* at 6-7.) Third, ABOR contends that, because the OCR investigations were managed by ASU's Office of General Counsel ("OGC"), the process of preparing a Rule 30(b)(6) witness would require either a review of OGC-prepared summaries of interviews and phone calls (which could waive the attorney-client privilege or work-product protection as to those documents) or "the arduous task of re-interviewing each person OCR interviewed to gain what would certainly be less accurate information about those discussions given the passage of time." (*Id.* at 7-8.) Fourth, ABOR argues that the requested information is irrelevant because Doe can't prevail on his Title IX claim based solely on evidence of outside pressure and none of the individual decisionmakers in this case indicated, during their respective depositions, any awareness of (let alone influence by) the OCR investigations. (*Id.* at 8-9.)

Doe disagrees. (Doc. 142 at 4-8.) As for relevance, Doe contends that the pressure exerted by the OCR investigations forms "the crux of the case," acknowledges that outside pressure alone can't support his Title IX claim but argues it can form part of his claim, and asserts that at least one individual decisionmaker, Dr. Rund, conceded he "knew there were

ongoing investigations regarding ASU's Title IX policies." (*Id.* at 4, 7-8.)  Doe also disputes ABOR's claim that it would be overly burdensome to prepare a witness to testify on this topic, arguing that the deponent "need only conduct a reasonable investigation into the topic" and need not be prepared "to talk about all communications" or "interview everyone who ever touched the investigation." (*Id.* at 5-6.)  As for ABOR's claims of privilege, Doe argues there is no automatic waiver when a Rule 30(b)(6) designee uses privileged documents to prepare and raises various other reasons why such testimony should be required. (*Id.* at 6-7.)  Finally, Doe notes that, during the meet-and-confer process, ABOR agreed to prepare a witness to address a modified version of Topic 5. (*Id.* at 4-5 & 5 n.2; Doc. 141-3 at 33-34.)

ABOR's motion for a protective order as to Topic 5 is granted in part and denied in part.  On the one hand, the Court disagrees with ABOR's contention that the subject matter implicated by Topic 5 is irrelevant.  One reason why the Court denied ABOR's motion to dismiss Doe's Title IX claim was the presence of allegations that "ASU [w]as one of the universities whose Title IX processes were under investigation" by OCR. (Doc. 66 at 21.)  Such "school-specific allegations," the Court concluded, "may render a Title IX claim more plausible than a claim premised solely on the 'Dear Colleague' letter." (*Id.* at 21-22.)  Given this backdrop, and in light of the fact that "[r]elevancy in civil litigation is a relatively low bar," *Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020),[1] the Court has no trouble concluding that the information sought by Topic 5 is relevant.

On the other hand, the Court is sympathetic to ABOR's concerns over the vagueness and overbreadth of Topic 5.  Rule 30(b)(6) requires the deposing party to "describe with reasonable particularity the matters for examination."  This means that "the requesting party must take care to designate, with painstaking specificity, the particular subject areas

---

[1]   *See also* 1 Gensler, *supra*, Rule 26, at 801-02 ("For discovery purposes, courts define relevance broadly, stating that information is relevant if it bears on or might reasonably lead to information that bears on any material fact or issue in the action. . . . [C]ourts are quick to point out that discovery is concerned with relevant information—not relevant evidence—and that as a result the scope of relevance for discovery purposes is necessarily broader than trial relevance.") (internal quotation marks omitted).

that are intended to be questioned." *Vantage Mobility Int'l, LLC v. Kersey Mobility, LLC*, 2021 WL 148651, *2 (D. Ariz. 2021) (internal quotation marks omitted).  As written, it is difficult to see how Topic 5 could satisfy these standards—it calls for an ABOR designee to testify about "ASU's response" to an investigation (which, accepting ABOR's account, could pertain to several different investigations), without clarifying which aspects of that "response" are at issue.

Fortunately, during the meet-and-confer process, the parties were able to identify ways to narrow Topic 5 and sharpen its focus.  In an email written on May 10, 2021—less than two weeks before ABOR filed its motion for protective order—ABOR's counsel agreed that "ABOR is willing . . . to prepare a witness to respond to questions about the OCR investigations generally, including whether the OCR ever found that ASU had violated Title IX, whether ASU made any procedure or policy changes in response to either the investigations or any determination by the OCR, and any discussions or communications ASU had with the OCR as to those procedure or policy changes."  (Doc. 141-3 at 12.)  In the Court's view, this seems like a reasonable narrowing formulation that supplies the necessary particularity required by Rule 30(b)(6) (and thus addresses ABOR's concerns about vagueness and overbreadth) while still providing Doe with the core information he needs to pursue his Title IX claim (albeit while not supplying quite as much information as he originally hoped to obtain on this topic through his deposition notice).

As for ABOR's concerns about burdensomeness and proportionality, the Court appreciates that it may be fairly burdensome for an ABOR designee to become knowledgeable about this topic, even in its narrowed form, due to the volume of underlying information at issue.  Nevertheless, this is not a disproportionate burden "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *See* Fed. R. Civ. P. 26(b)(1).

Finally, as for ABOR's concerns regarding the attorney-client privilege, the Court

is unwilling to prevent Doe from inquiring into a relevant, unprivileged subject area—conversations between representatives of ASU and OCR—simply because ASU may have chosen to memorialize those conversations in attorney-drafted memoranda. *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) ("The [attorney-client privilege] only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."). *Cf. Matter of Fischel*, 557 F.2d 209, 212 (9th Cir. 1977) ("[F]acts which an attorney receives from a third party about a client are not privileged. . . . A client has no expectation of confidentiality with respect to these facts. An attorney's subsequent use of this information in advising his client does not automatically make the information privileged."); *Dolby Labs. Licensing Corp. v. Adobe Inc.*, 402 F. Supp. 3d 855, 870 (N.D. Cal. 2019) (email chain was not privileged where email did "not convey any analysis or opinion and relate[d] purely to underlying facts, which are not protected by attorney-client privilege"). At any rate, ABOR acknowledges there are other ways, apart from reviewing such memoranda, for a witness to become reasonably knowledgeable on this topic. Additionally, the designee will not be expected to have a verbatim recollection of every underlying conversation. *See, e.g.*, *QBE Ins. Corp. v. Jorda Enters., Inc.*, 277 F.R.D. 676, 691 (S.D. Fla. 2012) ("Absolute perfection is not required of a 30(b)(6) witness."); *Wilson v. Lakner*, 228 F.R.D. 524, 529 n.7 (D. Md. 2005) ("Obviously a rule of reason applies. There is no obligation to produce [Rule 30(b)(6)] witnesses who know every single fact, only those that are relevant and material to the incident or incidents that underlie the suit.").

Accordingly, ABOR's Rule 30(b)(6) designee must be prepared to address the following topic, in lieu of the version of Topic 5 that appeared in the original deposition notice: "Whether the OCR ever found that ASU had violated Title IX, whether ASU made any procedure or policy changes in response to either the investigations or any determination by the OCR, and any discussions or communications ASU had with the OCR as to those procedure or policy changes."

…

- 6 -

II.     Topics 8, 12, 13, and 14

        Both sides agree that Topics 8, 12, 13 and 14 should be addressed together because they implicate the same issues.  (Doc. 141 at 9; Doc. 142 at 8.)  As background, the disputed topics provide as follows:

- Topic 8:   "For each case listed in Exhibits 1 and 2 to ABOR's Responses to Doe's Non-Uniform Interrogatories, the details of the charges, the facts supporting those charges, the UHB findings and recommendations, and the Senior VP's decision."

- Topic 12:  "Disciplinary actions where there was a finding of responsibility based on a violation of F-23 of the Student Code of Conduct that was not articulated in the factual basis for the F-23 charge contained in the initial notice of charges (or thereafter in any subsequent notice preceding the UHB hearing)."

- Topic 13:  "Disciplinary actions where the student was accused of violating F-23 of the Student Code of Conduct because he or she engaged in sex with someone who was incapacitated and therefore could not consent, but was later found to have engaged in sex by force."

- Topic 14:  "Disciplinary action where a female was accused of sexual misconduct under the Student Code of Conduct, to include details of the charges levied, the facts supporting the charges, the finding and recommendations by the UHB, and the final decision by the University."

(Doc. 141-2 at 67-68.)

        ABOR argues these topics are overbroad and unduly burdensome because they would require its designee to become knowledgeable about the details of hundreds, if not thousands, of individual discipline proceedings involving ASU students over a period of many years.  (Doc. 141 at 9-13.)  For example, with respect to Topic 8 (which calls for the designee to become familiar with "each case" listed in two different exhibits), ABOR notes

that the first exhibit lists 543 different cases in which an ASU student was charged with sexual misconduct and the second exhibit lists 8,337 different cases in which an ASU student was charged with an alcohol violation, all over a five-year period.  (*Id.* at 9-10.)  In ABOR's view, it would "be difficult, if not impossible, for a witness to prepare to competently or accurately discuss the details of even five student disciplinary cases," let alone hundreds or thousands of such cases.  (*Id.* at 11.)  In a similar vein, ABOR contends that Topic 14 is objectionable because it encompasses 20 different cases over a five-year period.  (*Id.* at 10.)  And as for Topics 12 and 13 (which call for information about cases in which the original charge deviated from ultimate charge), ABOR contends they are unduly burdensome because "ASU does not track the requested information" so a designee could only become knowledgeable by "reviewing the individual case files of every disciplinary matter in which a student was found responsible for sexual misconduct, and comparing the original complaint or notice of charges to the final decision."  (*Id.*)  Finally, ABOR notes that, during the meet-and-confer process, Doe offered a compromise approach under which ABOR would produce the complete files for 81 discipline cases, Doe would select up to five of those cases, and the designee's testimony would be limited to the five selected cases, but ABOR argues this approach would be problematic for a host of reasons—it would result in the production of documents that Doe previously attempted (without success) to obtain through normal discovery channels, would still require the review (and redaction) of huge volumes of material, would inevitably require an extension of the discovery deadline, and would not necessarily limit the questioning as to Topics 12, 13, and 14.  (*Id.* at 10-13.)

Doe frames the issues much differently.  (Doc. 142 at 8-13.)  As for Topic 8, Doe argues that, although there are 8,800 relevant investigations involving other students, he has agreed to limit his inquiry to five other cases and has agreed to, among other things, "eliminate from the discussion of 8,337 cases where the student was charged with an alcohol violation."  (*Id.* at 8-9.)  Doe further argues that ABOR has already agreed to allow its designee to testify about the five selected cases.  (*Id.* at 9.)  Thus, Doe contends the only

disputed issue is whether ABOR should produce the files pertaining to the five selected cases. (*Id.* at 9-10.) In Doe's view, the files are properly subject to discovery because redaction would not be particularly burdensome (*id.* at 9 n.5) and because, as a matter of fairness, "[i]f ASU's designees must use documents to inform [their] testimony, those documents should be produced especially when the documents arise from a small subset agreed-on by the parties to avoid a much more expansive investigation by the designee" (*id.* at 10). Finally, as for Topics 12, 13, and 14, Doe argues he is not attempting to obtain specific information about past cases and simply wants to obtain information regarding the three following topics: "(1) Are you aware of any case where a female student was suspended after being charged with sexual misconduct? (2) Are you aware of any case where a female student was expelled after being charged with sexual misconduct? (3) Are you aware of any case where a female student was charged with violating the student [code of] conduct and attended a hearing on that charge but was later found guilty of violating another section of the student code of conduct following the hearing?" (*Id.* at 11.) Doe contends that "[i]f ASU is unaware of such cases, it should so answer. If it knows such information, it should so answer. If ASU wants to defend on the basis that it is impossible to review each case, it may do so. But the topics were properly noticed, and ASU has provided no basis to prevent Doe from asking about past cases." (*Id.*)

ABOR's motion for a protective order as to Topics 8, 12, 13, and 14 is granted. The overarching problem is that, although the general subject area Doe wishes to explore via Topics 8, 12, 13, and 14—which Doe describes in his response as "how ASU has treated others in the student disciplinary system, specifically those involving claims of sexual assault" (Doc. 142 at 8, emphasis omitted)—is relevant and ought to be fair game for examination, the verbiage he chose to use when formulating the deposition topics is vague, overbroad, and would place overly burdensome and disproportionate preparation demands on ABOR. For example, Doe clarifies in his response that one issue he wishes to explore during the Rule 30(b)(6) process is whether ASU is "aware of any case where a female student was suspended [or expelled] after being charged with sexual misconduct." (*Id.* at

11.)  It is easy to understand why this issue would be useful to explore in this case, as Doe's claim is that his flawed investigative and disciplinary processes were the product of anti-male bias.  Nevertheless, Doe isn't asking for permission to propound an interrogatory to ABOR asking for a yes/no answer to this question.  Instead, he is seeking to explore this subject through the Rule 30(b)(6) deposition process[2] and his designated topics, as written, would literally require ABOR's designee to review thousands and thousands of pages of investigative files, master the details of hundreds of individual cases that occurred over a span of many years, and synthesize those details in a manner that ABOR doesn't usually track.  The Court agrees with ABOR that it would be unduly burdensome to require a designee to engage in such preparation efforts.

        To his credit, Doe appears to acknowledge that the noticed topics, as written, are overbroad and impermissible.  During the meet-and-confer process, the parties expended substantial resources in an attempt to narrow their scope.  Even now, months after the deposition notice was originally issued, Doe is still proposing new changes and new narrowing constructions.  Although the Court appreciates these efforts, this is not the way the Rule 30(b)(6) process is supposed to work.

        Moreover, although the parties were able to come up with their own narrowing formulation with respect to Topic 5 during the meet-and-confer process—a formulation the Court has now adopted—the proposals Doe is now urging with respect to Topics 8, 12, 13, and 14 are unworkable given the posture of this case.  For example, one such proposal would involve the following steps: (1) ABOR discloses certain documents from a range of

---

[2]    To be clear, the problem with Doe's approach isn't his choice to explore this topic via the Rule 30(b)(6) process.  In general, it is his prerogative to choose which discovery tools to use.  *See generally Campbell v. Facebook Inc.*, 310 F.R.D. 439, 449 (N.D. Cal. 2015) ("While Facebook may have provided detailed responses to Plaintiffs' interrogatories and submitted the declarations of Facebook employees describing how its private message processing works, Plaintiffs have a right to verify and explore the information Facebook provided through a 30(b)(6) deposition . . . ."); 1 Gensler, *supra*, Rule 30, at 971 ("[P]arties generally are not limited to using a single discovery device to obtain information.  Accordingly, a party is not precluded from seeking deposition testimony via Rule 30(b)(6) on topics about which he already has information or has learned through other discovery devices. . . .  [P]arties generally get to choose for themselves which discovery tools to use at what times and for what purposes.").  The problem lies in the particular wording of the deposition notice.

different cases involving allegations of sexual misconduct; (2) Doe's counsel then reviews those documents and, based on that review, selects five cases that Doe is most interested in exploring further; (3) ABOR then arranges for its designee to become knowledgeable about the details of those five cases; and (4) after that preparation process is complete, the Rule 30(b)(6) deposition occurs.  An obvious difficulty with this approach is that it would result in substantial delay and place new document production demands on ABOR, in contravention of the scheduling order (whose discovery deadlines, which were extended on multiple occasions due to the COVID-19 pandemic, have largely expired).  This would be an unreasonable outcome in a case that is already more than three years old.  Additionally, Doe is effectively asking this Court to rewrite his noticed deposition topics in an effort to salvage them from ABOR's legitimate concerns about overbreadth and burdensomeness.  In general, the Court is not inclined to accept such redrafting invitations when resolving discovery disputes.  *See generally Excel Fortress Ltd. v. Wilhelm*, 2018 WL 6067255, *2 (D. Ariz. 2018) (citing various cases for the proposition that "it is not the province of the Court to rewrite discovery requests that seek irrelevant information, are overbroad, or are otherwise improper").

III.   Topic 10

Topic 10 of the deposition notice seeks to require ABOR's Rule 30(b)(6) designee to testify about the following topic: "The factual bases (and when those bases arose) and legal support for the affirmative defenses."  (Doc. 141-2 at 67.)

ABOR contends this topic is objectionable because it has already provided detailed information concerning its affirmative defenses to Doe, in the form of MIDP disclosures, and Doe has never objected to the sufficiency of those disclosures.  (Doc. 141 at 13-14.)  ABOR further contends that, because its affirmative defenses are based on legal research and analysis, requiring a Rule 30(b)(6) designee to testify on this topic would run the risk of "revealing both the legal advice given by ABOR's counsel and information protected by the work product doctrine."  (*Id.*)  Finally, ABOR notes that many courts have recognized that other discovery tools, such as contention interrogatories, are a more

1   efficient vehicle for obtaining information about affirmative defenses than Rule 30(b)(6)

2   depositions.  (*Id.*)

3          In response, Doe argues that ABOR didn't update its MIDP disclosures to disclose

4   the bases for its affirmative defenses until March 2021, which was after the deadline for

5   written discovery, so it would have been impossible for him to use contention

6   interrogatories (or other discovery tools) to seek more information on this topic.  (Doc. 142

7   at 13-14.)  At a minimum, Doe argues that even "if the Court believes [a Rule 30(b)(6)

8   deposition] is too burdensome, [he] should be permitted to serve contention interrogatories

9   to obtain the same information, as permitted by ASU's own [cited] authorities."  (*Id.*)

10         ABOR's motion for a protective order as to Topic 10 is granted in part and denied

11   in part.  Although the Court agrees with ABOR that it would unnecessarily open a can of

12   worms to allow Doe to explore this topic via a Rule 30(b)(6) deposition, the Court also

13   concludes that, in light of the timing of ABOR's MIDP disclosures, Doe should be afforded

14   some mechanism for obtaining more information about ABOR's affirmative defenses.

15   Accordingly, in lieu of allowing this topic to be explored during ABOR's Rule 30(b)(6)

16   deposition, the Court will authorize Doe to propound one additional interrogatory to ABOR

17   seeking more information about ABOR's affirmative defenses.  *United States v. HVI Cat*

18   *Canyon, Inc.*, 2016 WL 11683593, *10-11 (C.D. Cal. 2016) (granting defendant's motion

19   for protective order as to Rule 30(b)(6) deposition notice that sought information about

20   affirmative defenses, due to the fact that "many courts discourage the use of 30(b)(6)

21   depositions to obtain testimony concerning a party's affirmative defenses," but authorizing

22   plaintiff to issue "additional interrogatories" on the same topic).  *See generally Clauss*

23   *Constr. v. UChicago Argonne LLC*, 2015 WL 191138, *4 (N.D. Ill. 2015) ("There is a

24   difference of opinion among courts as to whether a Rule 30(b)(6) topic that asks an entity

25   to designate a witness to testify about facts underlying legal claims or defenses is

26   appropriate.  The issue usually comes down to whether contention interrogatories are a

27   better discovery vehicle for that kind of information than a Rule 30(b)(6) deposition.").

28         …

IV.   Topic 11

Topic 11 of the deposition notice seeks to require ABOR's Rule 30(b)(6) designee to testify about the following topic: "The use of the barrier between claimants and respondents at a UHB hearing on a violation of F23 under the Student Code of Conduct, including the first time a barrier was used."  (Doc. 141-2 at 67.)

In its motion, ABOR states that it is willing "to designate a witness to testify regarding the purpose for using a barrier at a disciplinary hearing, and the circumstances under which a barrier will be used." (Doc. 141 at 14-15.)  However, ABOR argues that its designee shouldn't be required to answer additional questions concerning barrier usage, such as "the first time a barrier was used, whether a requested barrier has ever been denied, and whether a barrier has ever been used with a male complainant or a female respondent," because it does not track those issues as a matter of course and thus "accurately answering the questions [Doe] seeks to pose would require, at a minimum, a review of all UHB hearing records."  (Id.)  ABOR further contends that, even if it conducted such a review, "the witness might still not have accurate or complete information" because a verbal request for a barrier may not have been memorialized in writing.  (Id.)  Finally, ABOR contends that the issue of barrier usage is irrelevant because it is not mentioned in the complaint or in Doe's MIDP disclosures.  (Id. at 15-16.)

Doe argues that the issue of barrier usage is relevant because a barrier was used in his case to separate him from the female complainant, and if ASU doesn't use barriers in cases involving male complainants, this may support his theory that "ASU considers males paradigmatic predators and females as victims deserving protection." (Doc. 142 at 15-16.)  As for ABOR's arguments about the burden of conducting a factual investigation, Doe contends those arguments are exaggerated because "there are only 11 cases where the male is the accuser" and ABOR's designee need not review every scrap of paper from those 11 cases to become reasonably knowledgeable—the universe of participants in those cases is relatively small and the designee can simply conduct interviews, send email inquiries, and conduct other limited inquiries.  (Id.)

- 13 -

ABOR's motion for a protective order as to Topic 11 is granted in part and denied in part.  Once again, the overarching problem is that the subject matter Doe appears to actually care about, as clarified in his motion papers (*i.e.*, the use of barriers during sexual misconduct-related disciplinary proceedings involving male complainants), is much narrower than the subject matter sought by Topic 11 in its as-written form (*i.e.*, all information about the use of barriers during sexual misconduct-related disciplinary proceedings, without regard to the gender of the participants).  The Court agrees with Doe that both of these subject areas are relevant, given the expansive definition of relevance under Rule 26 and the nature of Doe's claims in this case.  The issue is burdensomeness. If the topic were limited to the use of barriers in the 11 cases involving male complainants, it would be reasonable to expect an ABOR designee to become knowledgeable.  But if the topic were not so limited, it would be unreasonable to expect an ABOR designee to become knowledgeable (due to the sheer number of underlying cases).

Even though, as stated in Part II above, the Court is generally disinclined to re-write discovery requests in an effort to salvage them, it appears that Doe had already proposed a limitation to cases involving male complainants during the meet-and-confer process and that ABOR had already agreed during the meet-and-confer process that Topic 11 could be narrowed in an acceptable manner (albeit without agreeing to Doe's proposed narrowing construction).  Accordingly, ABOR's Rule 30(b)(6) designee must be prepared to address the following topic, in lieu of the version of Topic 11 that appeared in the original deposition notice: "The purpose for using a barrier at a disciplinary hearing, the circumstances under which a barrier will be used, and whether a barrier was used during the 11 sexual misconduct-related disciplinary proceedings involving a male complainant."

V.     Length of Deposition

The parties' final dispute concerns the length of the Rule 30(b)(6) deposition. ABOR argues the deposition may not exceed seven hours in the aggregate, irrespective of how many designees it chooses to utilize (Doc. 141 at 16-17), whereas Doe argues he should be allowed to depose each designee for up to seven hours (Doc. 142 at 16-17).

This dispute raises an interesting question of law that appears to be unsettled in the Ninth Circuit. Rule 30(d)(1) provides that, "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to 1 day of 7 hours." Additionally, the Ninth Circuit has held—albeit in a case not specifically addressing the issue of durational limits—that "[a] Rule 30(b)(6) deposition is 'treated as a single deposition even though more than one person may be designated to testify.'" *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 679 n.13 (9th Cir. 2018) (quoting Fed. R. Civ. P. 30, advisory committee's note to 1993 amendment). Taken together, these authorities tend to support ABOR's position—after all, Rule 30(d)(1) states that "a deposition" may not, as a presumptive matter, exceed seven hours and the Ninth Circuit has held that a Rule 30(b)(6) deposition counts as "a single deposition" regardless of the number of designees.

On the other hand, the advisory committee's note to the 2000 amendment to Rule 30 specifically states that "[f]or purposes of this durational limit, the deposition of each person designated under Rule 30(b)(6) should be considered a separate deposition." This language supports Doe's position, albeit not conclusively. *United States v. Bainbridge*, 746 F.3d 943, 947 (9th Cir. 2014) ("[W]hile an advisory committee's note is given 'weight' . . . [it] is not part of the Rule itself. As a result, an advisory committee's note does not have the force of law.") (citation and emphasis omitted).

No consensus has emerged as to whether the approach set forth in the advisory committee's note should be followed. *Compare Buie v. District of Columbia*, 327 F.R.D. 1, 15 (D.D.C. 2018) (following the note), *with In re Rembrandt Techs.*, 2009 WL 1258761, *14 (D. Colo. 2009) (not following the note). Here, the Court finds it unnecessary to wade into the debate. Whatever the presumptive durational limit may be, the Court has discretion under Rule 30(d)(1) to adjust it. Given the number of topics to be covered in this case, the Court concludes that it would be reasonable to allocate a total of 14 hours to complete ABOR's Rule 30(b)(6) deposition, regardless of how many designees are utilized. Each deposition day may not exceed seven hours.

…

1        Accordingly,

2        **IT IS ORDERED** that ABOR's motion for protective order (Doc. 141) is **granted**

3  **in part and denied in part**, as discussed above.

4        Dated this 4th day of June, 2021.

Dominic W. Lanza
United States District Judge