COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone 602•252•8400

Daniel G. Dowd (012115)
Email:  ddowd@CDQLaw.com
Betsy J. Lamm (025587)
Email:  blamm@CDQLaw.com
Rebecca van Doren (019379)
Email:  rvandoren@CDQLaw.com
  Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe,<br><br>                    Plaintiff,<br><br>vs.<br><br>The Arizona Board of Regents; James Rund; Craig Allen; Tara Davis; Kendra Hunter; Kathleen Lamp; and Andrew Waldron,<br><br>                    Defendants. | Case No.:  2:18-cv-01623-DWL<br><br>**ARIZONA BOARD OF REGENTS' MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF CURTIS OWEN**<br><br>(Assigned to the Honorable Dominic W. Lanza)<br><br>**Oral Argument Requested** |

Pursuant to Federal Rule of Evidence ("Rule") 702 and the Court's December 27, 2019 Case Management Order (Doc. 67) (as amended), ¶ 6(j), the Arizona Board of Regents ("ABOR") respectfully moves the Court for an order excluding from trial, and for all other purposes, the opinions, reports and testimony of Plaintiff John Doe's proposed wrestling/vocational expert, Curtis Owen.  Mr. Owen is not qualified to offer expert testimony concerning Doe's career prospects and, in particular, Doe's ability or inability to obtain a position as a collegiate, national or international level wrestling coach.  Mr. Owen's proposed opinions are also unreliable – Mr. Owen admittedly did not review a single document or deposition transcript in connection with the preparation of his July 2, 2021 Expert Report – and irrelevant to Doe's Title IX claim.  They lack "a valid connection to the

pertinent inquiry," *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010), and do not "logically advance a material aspect of [Doe's] case." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("*Daubert II*"). Mr. Owen's proposed testimony does not satisfy Rule 702 and must be excluded.

1. **The Court Must Exclude Mr. Owen's Opinions Where, As Here, Doe Cannot Establish Mr. Owen's Qualifications Or The Reliability Or Relevance Of His Proffered Expert Testimony.**

As the proponent of the expert, Doe "has the burden of proving admissibility." *Cooper*, 510 F.3d at 942 (quoting *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)); *accord Daubert II*, 43 F.3d at 1316; *Udd v. City of Phoenix*, 2021 WL 1783192, at *2 (D. Ariz. May 5, 2021). The trial court, in turn, acts as a "gatekeeper" to exclude experts that do not satisfy Rule 702's qualification, relevancy, and reliability requirements. *See, e.g.*, *Cooper* 510 F.3d at 942; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 597 (1993) ("*Daubert I*"). While the Court has discretion in performing this critical gatekeeping function, "it is not discretion to perform the function inadequately. Rather, it is discretion to choose among *reasonable* means of excluding expertise that is *fausse* and science that is junky." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 158-59 (1999) (Scalia, J., concurring) (emphasis in original). This duty is important, as testimony "cloaked with the mantle of an expert" may "carry special weight with the jury." *Jinro Am. Inc. v. Secure Inv., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001); *accord Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1263 (D. Ariz. 2020) ("That 'gatekeeping' obligation to admit only expert testimony that is both reliable and relevant is critical 'considering the aura of authority experts often exude, which can lead juries to give more weight to their testimony.'" (citations omitted)).

Admissibility requires experts to be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Krause*, 459 F. Supp. 3d at 1263-64. Beyond qualifications, expert testimony must further be reliable and relevant. *See, e.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014) ("It is well

2

settled that bare qualifications alone cannot establish the admissibility of… expert testimony. Rather, we have interpreted Rule 702 to require that "[e]xpert testimony… be both relevant and reliable."' (citations omitted)). Proposed expert testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano*, 598 F.3d at 565. Reliability aims to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152; *see also, e.g.*, *Cooper*, 510 F.3d at 942. Proposed expert testimony is relevant "if the knowledge underlying it has a valid connection to the pertinent inquiry" and the testimony "logically advance[s] a material aspect of [Doe's] case." *Primiano*, 598 F.3d at 565; *Cooper*, 510 F.3d at 942.

As set forth below, Doe cannot demonstrate that Mr. Owen is qualified to offer his proposed "expert" opinions or that the opinions are reliable or relevant. Thus, Mr. Owen's testimony must be excluded. *E.g.*, *Cooper*, 510 F.3d at 943 ("If evidence lacks either reliability or relevance, it must be excluded.").

## 2.   Mr. Owen Is Not Qualified To Offer The Proposed Expert Opinions.

As expressed in the "July 2, 2021 Expert Report of Curtis Owen" (the "Report"), Doe offers Mr. Owen as a general wrestling expert to testify on six subjects:

> I was asked to (1) explain what qualifications are needed to become a high school, college, Olympic level coach, (2) the impact of Doe missing the final two years of NCAA eligibility on Doe's wrestling career, (3) the training opportunities, if any, that are lost by not being able to train at the Regional Training Center ("RTC") at ASU, (4) the alternatives to training at the RTC, (5) the impact of injuries on a wrestling career, including the injuries suffered by Doe, and (6) opine on Doe's skill as a wrestler.

[*See* Report, attached as Ex. 1, at 1.] Mr. Owen then proceeds to offer generalized statements regarding how one obtains a position as a wrestling coach at the high school, collegiate and national/international levels, provide his view of the impact of Doe being unable to train or compete at Arizona State University ("ASU") for two years, and comment on his assessment of Doe's skill, potential, and the impact of Doe's injuries. [*Id.* at pp. 1-3;

COHEN DOWD QUIGLEY

3

*see also* September 10, 2021 Expert Rebuttal Report of Curtis Owen ("Rebuttal Report"), attached as Ex. 2, at 1-3.]

Aside from perhaps opinions regarding qualifications to coach high school wrestling (which, as set forth below, are irrelevant) or general information regarding wrestling opportunities, Mr. Owen does not have the expertise to offer opinions regarding the other disclosed subjects.  Mr. Owen is an assistant high school wrestling coach at Chandler High School in Arizona.  [Ex. 1 at 1; *see also* Chandler High School Coaching Roster, attached as Ex. 3; *see also* Ex. 6, ¶ 6.]  As described in the Report, Doe offers Mr. Owen as an expert witness based on his experiences as a competitive wrestler for 19 years, including throughout high school, junior college, and college at ASU, followed by his experience as a wrestling coach for 20 years.[1]  [Ex. 1 at 1.]  Mr. Owen further suggests that his father's experience as a wrestler at the University of Montana and his uncle's experience as a coach at North Idaho College somehow enhance his qualifications to offer expert testimony in this case.  [*Id.*] They do not.

Although Mr. Owen has experience as an assistant high school wrestling coach, which may provide him with the expertise necessary to opine on the skills and qualifications needed to become a high school wrestling coach, he has not disclosed any experience coaching at the collegiate or national/international level and all of his opinions appear to be based upon anecdotal information.  [*See, e.g.*, Ex. 2 at 1-2 (describing certain accolades achieved by past and present wrestling coaches at ASU).]  Mr. Owen has never been a collegiate coach, let alone the head coach for a NCAA Division I school.  He has never made hiring decisions at that level, and he has not evaluated the criteria and qualifications for applicants seeking a position as an assistant or head coaching position at the collegiate level or higher.  Indeed, it is unclear whether Mr. Owen has even participated in hiring decisions at the high school level.  [*See* Ex. 1 at 2.]  While Mr. Owen appears to have applied for a

---

[1]     Mr. Owen's stated experience does not align with the work experience identified on his resume, which indicates that he has coached wrestling at the high school level or lower since July 2003.  [*See* Curriculum Vita, attached as Ex. 4.]  Earlier in 2003, Mr. Owen was a Member and Co-Captain of ASU's wrestling Team.  [*Id.*]

COHEN DOWD QUIGLEY

COHEN DOWD QUIGLEY

1  Head Wrestling Coach position at a junior college, he does not appear to have been offered

2  the position.  [*See* Ex. 4, Objective; *see also* Ex. 6, ¶ 5.]  Moreover, that limited application

3  experience does not supply Mr. Owen with the "knowledge, skill, experience, or education"

4  necessary to opine on the qualifications for becoming a college or Olympic level wrestling

5  coach.  *See, e.g.*, *Krause*, 459 F. Supp. 3d at 1265-67 (excluding a police practices expert,

6  former law enforcement officer, firearms instructor and gunsmith from offering testimony

7  regarding the trajectory of bullets, explaining that decades of "*general* firearms and law

8  enforcement experience … simply does not bear on his expertise to assess ballistic evidence

9  or judge bullet trajectories"); *Manion v. Ameri-Can Freight Sys. Inc.*, 2019 WL 3858415, at *3-4

10  (D. Ariz. Aug. 16, 2019) (excluding opinion regarding vehicle lights where accident

11  reconstruction expert, "who admitted he had no experience with vehicle electronic systems,

12  is not qualified to testify to vehicle electrical systems"); *In re GFI Comm'l Mortg. LLP*, 2013

13  WL 4647330, at *6 (N.D. Cal. Aug. 29, 2013) (explaining that experienced investors lacked

14  qualifications to serve as experts regarding a bankruptcy trustee's investment decision, where

15  the proposed experts had not served as bankruptcy trustees; stating that "the Ninth Circuit

16  has routinely upheld the disqualification of proposed experts who lack specific expertise,

17  notwithstanding their general expertise" (*citing Ralston–Purina Co. v. Bertie*, 541 F.2d 1363,

18  1364 (9th Cir.1976))).

19       Mr. Owen similarly does not have the "knowledge, skill, experience, or education" to

20  offer expert opinions concerning the impact of Doe's injuries on his wrestling career.  The

21  sum total of Mr. Owen's discussion of Doe's injuries is located on page 3 of his Report, in

22  which he states:  "Even though he suffered some injuries, based on my experience as a

23  wrestler and coach, they were not something that would keep an athlete from reaching his

24  potential.  There are several NCAA Champions and Olympians that have had very serious

25  injuries and came back just as strong and effective."  [*See* Ex. 1 at 3.]  Mr. Owen is not a

26  trained medical professional and has no disclosed medical expertise in evaluating the types of

27  injuries Doe has suffered – including high ankle sprains, partial tears of his MCL in both

28  knees, an LCL tear, and a herniated disc in his neck [*see* Ex. 5 at 272-78] – or the effect of

5

such injuries on Doe's wrestling career.  *See, e.g.*, *Krause*, 459 F. Supp. 3d at 1266 (excluding police practices expert from opining on the injuries in police-involved shooting, reasoning: "Lauck is not a trained medical professional and has no medical training in gunshot wound treatment.  [He] obviously cannot testify as to the severity of Krause's injuries or opine on whether any medical care would have assisted Krause, much less *when* administering such care would assist.").  As in *Krause*, Mr. Owen is not a trained medical professional and obviously cannot testify as to the severity of Doe's injuries or their impact on his wrestling career.  Moreover, his anecdotal personal observations do not provide a sufficiently comprehensive factual basis for Mr. Owen's assertions.  *See, e.g.*, *Jinro Am. Inc.*, 266 F.3d at 1006 (proposed expert who offered "impressionistic generalizations" without empirical evidence or studies, other than anecdotal examples, lacked foundation to testify).

Finally, Mr. Owen is not qualified to opine under the mantle of an expert regarding the skills required "to be competitive at the international level" or that (1) Doe "had the skill and athleticism to be one of the best wrestlers in the country at the college level and beyond"; (2) as a collegiate wrestler, Doe "would likely have been an All-American the following two seasons"; (3) Doe's "future was bright beyond the collegiate level"; and (4) "the two years that Doe lost cost him many achievements and accolades that would have allowed him to increase his marketability (sponsorships and employment) and earning power down the road[.]"  [*See* Ex. 1 at 3; *see also* Ex. 2 at 2-3 (opining that Doe "would likely have achieved All-American status in college had his competitive wrestling career not been cut short").]  Mr. Owen has not disclosed any experience competing or coaching at the international level.  [*See* Ex. 4 (disclosing only high-school level coaching experience).]  Nor has he explained how his experience coaching high school students provides a suitable foundation to testify regarding the skills and resources required to excel at an international level (a level at which he has <u>no</u> disclosed experience).  The two are not interchangeable. Mr. Owen is not qualified to offer "expert" opinions regarding what is required to compete at the international level.

. . .

Doe also has not identified any "knowledge, skill, experience, or education" that would qualify Mr. Owen to offer sweeping and non-specific "expert" opinions regarding Doe's wrestling prowess and potential. Mr. Owen's experience as an assistant high school wrestling coach, even when accompanied by his personal experience as a collegiate wrestler from 1997 to 2003, do not standing alone qualify Mr. Owen to opine on Doe's potential collegiate and post-collegiate accolades, including whether Doe would have achieved "All-American" status. Mr. Owen offers no data, besides his own unexplained subjective beliefs, to support his opinion. His report does not include evidence that he sought to educate himself on the subject sufficient to support sweeping opinions regarding Doe. *E.g.*, Fed. R. Evid. 702, advisory committee's note to 2000 amend. ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."); *Neal-Lomax v. Las Vegas Metro. Police Dept.*, 574 F. Supp. 2d 1193, 1203-04 (D. Nev. 2008), *aff'd*, 371 Fed. Appx. 752 (9th Cir. 2010) (excluding proposed expert as unqualified to testify on the effects of Taser devices on humans, where expert did not educate himself other than through review of anecdotal articles).

Mr. Owen has never previously served as an expert witness on the topics set forth in his Report and Rebuttal Report. He is not qualified to offer such opinions here. Mr. Owen's personal opinions and speculation are inadmissible under Rule 702 and Doe's effort to cloak them "with the mantle of an expert" must be rejected. *See Jinro Am. Inc.*, 266 F.3d at 1004); *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) ("Rule 702 demands that expert testimony relate to scientific, technical, or other specialized knowledge, which does not include unsubstantiated speculation and subjective beliefs.").

**3.**   <u>**Mr. Owen's Proposed Testimony Is Not Reliable.**</u>

"The more subjective and controversial the expert's inquiry, the more likely that testimony should be excluded as unreliable." Fed. R. Evid. 702, advisory committee's note to 2000 amend. Mr. Owen's proposed testimony is, at its core, merely a compilation of Mr. Owen's subjective opinions based on his personal relationship with Doe, as supplemented

by anecdotal information.  On the very first page of his Report, Mr. Owen admits:  "I did not review documents to prepare this report."  [Ex. 1 at 1.]   Mr. Owen's failure to review relevant records – **any** relevant records – renders his opinions unreliable.  *See, e.g.*, Fed. R. Evid. 702(b); *Smith v. Pacific Bell Tel. Co.*, 662 F. Supp. 2d 1199, 1225-26 (E.D. Cal. 2009) ("Relevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion.  Opinions derived from erroneous data are appropriately excluded."  (citations omitted)); *Ollier*, 768 F.3d at 860-61 (affirming district court's exclusion of expert testimony, as experts' cursory inspection of site at issue rendered proposed expert opinions unreliable; holding "[t]he district court properly exercised its 'gatekeeping role' under *Daubert I*, 509 U.S. at 597"); *cf. Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) ("An opinion based on such unsubstantiated **and undocumented information** is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702."  (emphasis added)).

As his Report states, Mr. Owen did not consider evidence in connection with forming his opinions.  Yet relevant documents and other evidence were available to him.  By way of example, Doe produced medical records reflecting his injuries.[2]  [*See* Ex. 6, ¶ 2.]  Yet, Mr. Owen opines on the severity and effect of Doe's injuries without review of those records.   Mr. Owen also offers opinions regarding Doe's potential to achieve certain accolades at ASU, including All-American status, without considering data relating to, *inter alia*, the weight class at which Doe would have competed, the other ASU wrestlers in that weight class during the relevant years, the wrestlers in that weight class at other Division I schools during the relevant years and their skill level, Doe's past wrestling performance (including his failure to achieve All-American status in the prior three years), or Doe's record competing against the specific wrestlers against whom he would have been matched during the relevant years.

.  .  .

---

[2]    Mr. Owen's Report is so vague, it is impossible to determine the injuries he is addressing or whether he is addressing all of Doe's disclosed injuries.

Similarly, Mr. Owen's opinions regarding the qualifications necessary to become a collegiate coach are supported only by anecdotal information – not research, data, personal experience, any comprehensive study of the qualifications of collegiate wrestling coaches, or the number of open positions available during the relevant time frame.  [*See* Ex. 2 at 1-2.] Reliance on anecdotal observations or unfounded subjective beliefs does not satisfy Rule 702 or *Daubert I*.  *Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1133-34 (D. Ariz. 2001) (reliance on compilations of occurrences do not satisfy Rule 702 or *Daubert I* (citing *Jones v. United States*, 933 F. Supp. 894, 899–900 (N.D. Cal. 1996), *affirmed* 127 F.3d 1154 (9th Cir.1997), *cert. denied* 524 U.S. 946 (1998))).  As Mr. Owen's proposed opinions are not based on a review of available relevant evidence, his opinions are inherently unreliable and must be excluded.  *See* Fed. R. Evid. 702, advisory committee's note to 2000 amend. (requiring expert testimony to be "properly grounded, well-reasoned, and not-speculative"); *see also, e.g.*, *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) ("An expert's opinion must be supported to provide substantial evidence… 'A claim cannot stand or fall on the mere *ipse dixit* of a credentialed witness.'" (citation omitted)); *Viterbo v. Dow Chem. Co.,* 826 F.2d 420, 422 (5th Cir.1987) ("If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury.").

Not only are Mr. Owen's opinions unsupported by testimony or documentary evidence, they also are contradicted by evidence in the record – evidence not mentioned in Mr. Owen's Reports.  For example, Mr. Owen opines, without looking at a single medical record or other document, that Doe's injuries "were not something that would keep an athlete from reaching his potential."  [Ex. 1 at 3.]  Doe, in contrast, testified the opposite. [*See* Ex. 5 at 273 (testifying that he suffered "double high ankle sprains and my MCLs were going, and that's why my seasons were ….  I could barely be in shape for the season without me running or practicing much"), 276-77 (testifying regarding the effect of his injuries, including that "I'm getting older and my body just can't keep up.  I was already kind of having a little bit of injuries, you know, from weight-cutting and then taking all this time… I hurt my neck, and it was a whole year; ACL, then a whole year.  I can't train during that time… and then, you know, the wear and tear…").]  Mr. Owen's failure to account for this

9

COHEN DOWD QUIGLEY

contradictory evidence coming from Doe himself underscores the inherent unreliability of his "expert" opinions. *Krause*, 459 F. Supp. 3d at 1267 ("Experts must base their opinions on specific facts…. 'When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict.'" (quoting *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995); *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993)). "[T]here is simply too great an analytical gap between the data and the opinion proffered," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), and Mr. Owen's opinions must be excluded.

Finally, Mr. Owen does not disclose a methodology employed in reaching his proffered opinions. This failure to disclose how he arrived at the proffered opinions highlights the unreliability of Mr. Owen's testimony. *See, e.g.*, *In re Canvas Specialty, Inc.*, 261 B.R. 12, 21–22 (Bankr. C.D. Cal. 2001) ("Rule 702 requires an expert to articulate the principles and methods that the expert has used. If the expert does not disclose the principles and methods used, the court is unable to determine whether the expert has utilized the correct principles and methods, or whether they have been reliably applied in the particular case…. Because the court in this case cannot determine what principles and methods LeClere applied, it is also not able to determine whether he applied the appropriate principles and methods reliably.").

Mr. Owen's subjective beliefs, untethered to the evidence in this case or an actual methodology, "do not rise to the level of expert opinions" under Rule 702. *Great W. Air, LLC v. Cirrus Design Corp.*, 2019 WL 6529046, at *10 (D. Nev. Dec. 4, 2019) (strongly held personal beliefs based on experience "do not rise to the level of expert opinions"). As Doe has not satisfied his burden of demonstrating the reliability of Mr. Owen's proposed opinions, they must be excluded under Rule 702. *E.g.*, *Erhart v. BofI Holding, Inc.*, 445 F. Supp. 4d 831, 842 (S.D. Cal. 2020) (excluding proposed opinions as expert failed to provide "sufficient information" to evaluate reliability); *cf. DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) ("[T]he whole point of *Daubert* is that experts can't 'speculate.' They need

COHEN DOWD QUIGLEY

1    analytically sound bases for their opinions. District courts must be careful to keep experts

2    within their proper scope, lest apparently scientific testimony carry more weight with the jury

3    than it deserves.").

4    **4.   <u>Mr. Owen's Proposed Testimony Is Irrelevant.</u>**

5            In addition to satisfying the relevancy requirement under Rule 401, a proposed expert

6    opinion offered under Rule 702 must have "a valid connection to the pertinent inquiry" and

7    "logically advance a material aspect of [Doe's] case." *Primiano*, 598 F.3d at 565; *Cooper*, 510

8    F.3d at 942; *accord Daubert II*, 43 F.3d at 1321, n. 17 (expert testimony must be excluded

9    unless it "speaks clearly and directly to an issue in dispute in the case").   Further, if the

10   factfinder is independently capable of understanding the evidence and deciding the issues

11   through common knowledge and common sense, the proposed expert testimony is

12   unhelpful and inadmissible. *Liberty Life Ins. Co. v. Myers*, 2013 WL 524587, at *4 (D. Ariz.

13   Feb. 11, 2013).

14           In the Report and Rebuttal Report, Mr. Owen offers several "opinions" that are not

15   connected to Doe's claims or ABOR's defenses in this case.   In particular, Mr. Owen

16   proposes to testify that:  (1) "To get a job as a high school coach, especially a head-coaching

17   job at a competitive high school requires strong wrestling credentials.   National-level high

18   school programs are almost always staffed by former nationally competitive college

19   wrestlers."; (2) "To get a National/International level coaching position such as a Regional

20   Training Center Coach or Olympic Training Center Coach you would have to have

21   successfully competed at the Olympics, World Championships, World Cup, or other well

22   recognized events."  [Ex. 1 at 2.]  These opinions, beyond their lack of foundation, do not

23   advance any material issue in dispute in this case.

24           First, Mr. Owen's testimony about qualifications to obtain a high school wrestling

25   coaching position and, by extension, Doe's qualifications to obtain that position, are

26   irrelevant and not in dispute.  *Daubert I*, 509 U.S. at 591 ("Expert testimony which does not

27   relate to any issue in the case is not relevant and, ergo, non-helpful." (quoting 3 Weinstein &

28   Berger ¶ 702[02], p. 702–18)); *Johnson v. Am. Honda Motor Co.*, 923 F. Supp. 2d 1269, 1278 (D.

COHEN DOWD QUIGLEY

1    Mont. 2013) (excluding proposed expert testimony as irrelevant, as it "did not fit the facts as

2    they were presented at trial" and "could have been of no help to the jury in deciding" the

3    issues in dispute).

4         Second, Doe's position, although wavering, is now that he "was always planning to be

5    a Division I coach." [*See* Ex. 5 at 260-261.] Doe did **not** testify that he was seeking to coach

6    at the national or international level.  In turn, Doe's proposed damages expert, Lance

7    Kaufman, offers opinions regarding Doe's alleged earnings losses based on various career

8    paths. [*See* Excerpt of Kaufman Report, attached as Ex. 7 at 17.] But, Dr. Kaufman does

9    **not** calculate damages based on a career path involving coaching at the

10   national/international level. [*Id.*] Mr. Owen's opinions regarding what it takes to coach at

11   that level are irrelevant. *See, e.g.*, *Daubert I*, 509 U.S. at 591; *Johnson*, 923 F. Supp. 2d at 1278,

12   *supra.*; *see also O'Neill v. Sherwin-Williams Co.*, 2009 WL 2997026, at *2 (C.D. Cal. Sept. 9, 2009)

13   (excluding expert opinions regarding particular chemical as a cause of plaintiff's cancer,

14   where plaintiff had disavowed the chemical as a cause).

15        Next, Mr. Owen's Report concludes that "the two years that Doe lost cost him many

16   achievements and accolades that would have allowed him to increase his marketability

17   (sponsorships and employment) and earning power down the road, should he choose to

18   make a living as an athlete and then as a coach at the collegiate and/or National level." [Ex.

19   1 at 3.] This opinion is conclusory and irrelevant.  As set forth above, Doe's disclosed career

20   path is now that he intended to be a wrestling coach at the collegiate level.  Doe has never

21   disclosed that he intended to "make a living as an athlete" or coach at the "National level."

22   Mr. Owen's proffered opinions are irrelevant to Doe's claimed damage theories and should

23   be excluded. *See, e.g.*, *Daubert I*, 509 U.S. at 591; *Johnson*, 923 F. Supp. 2d at 1278.  Finally, the

24   assertion that a two-year absence from wrestling at ASU could have cost Doe "achievements

25   and accolades that would have allowed him to increase his marketability… and earning

26   power down the road" is the type of assertion that a jury is independently capable of

27   understanding and deciding through common knowledge and common sense.  As such, Mr.

28   Owen's unsubstantiated opinion will not assist the factfinder in understanding the evidence

COHEN DOWD QUIGLEY

1  or determining a fact at issue.  *See, e.g., Myers*, 2013 WL 524587, at *4; *In re Fosamax Products*
2  *Liab. Litig.*, 645 F. Supp. 2d 164, 173 (S.D.N.Y. 2009) ("[E]xpert testimony is not helpful if it
3  simply addresses 'lay matters which the jury is capable of understanding and deciding
4  without the expert's help.'" (quoting *United States v. Lumpkin,* 192 F.3d 280, 289 (2d Cir.
5  1999)).

6  **5.    Conclusion.**

7       Plaintiff John Doe's effort to shroud Mr. Owen's personal beliefs and anecdotes with
8  the authority of "expert" testimony must be rejected.  Mr. Owen does not possess the
9  "knowledge, skill, experience, training, or education" to satisfy Rule 702 and offer the
10  proposed "expert" opinions.  The proposed opinions are not based on sufficient facts or
11  data – indeed Mr. Owen's opinions are not based upon review of the testimony or
12  documentary evidence in this case – nor are they the product of reliable application of
13  reliable principles and methods to the facts of this case.  Finally, Mr. Owen's opinions are
14  largely irrelevant.  Doe has not met **his burden** of establishing the reliability, relevance and
15  admissibility of Mr. Owen's opinions.  ABOR respectfully requests that the Court enter an
16  order excluding from evidence at trial, and for all other purposes, the opinions, testimony
17  and reports of Mr. Owen.

18       RESPECTFULLY SUBMITTED this 22nd day of October, 2021.

19                                    COHEN DOWD QUIGLEY
20                                    The Camelback Esplanade One
21                                    2425 East Camelback Road, Suite 1100
                                      Phoenix, Arizona 85016
21                                         Attorneys for Defendants

22                                    By:    */s/ Betsy J. Lamm*
23                                            Daniel G. Dowd
                                              Betsy J. Lamm
24                                            Rebecca van Doren

25

26

27

28

COHEN DOWD QUIGLEY

13