COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone 602•252•8400

Daniel G. Dowd (012115)
Email:  ddowd@CDQLaw.com
Betsy J. Lamm (025587)
Email:  blamm@CDQLaw.com
Rebecca van Doren (019379)
Email:  rvandoren@CDQLaw.com
  Attorneys for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe,<br><br>            Plaintiff,<br><br>vs.<br><br>The Arizona Board of Regents; James Rund; Craig Allen; Tara Davis; Kendra Hunter; Kathleen Lamp; and Andrew Waldron,<br><br>            Defendants. | Case No:  2:18-cv-01623-DWL<br><br>**ARIZONA BOARD OF REGENTS' MOTION TO EXCLUDE TESTIMONY AND OPINIONS OF CINDI NANNETTI**<br><br>(Assigned to the Honorable Dominic W. Lanza)<br><br>**Oral Argument Requested** |

COHEN DOWD QUIGLEY

Pursuant to Federal Rule of Evidence ("Rule") 702 and the Court's December 27, 2019 Case Management Order (Doc. 67) (as amended), ¶ 6(j), the Arizona Board of Regents ("ABOR") respectfully moves the Court for an order excluding from trial, and for all other purposes, the opinions, testimony and reports of Plaintiff John Doe's proposed Title IX expert, Cindi Nannetti.  While Ms. Nannetti may be qualified as an expert on criminal prosecution of sex crimes, she is not qualified as an expert regarding the fundamentally different Title IX investigative process in student disciplinary settings, let alone to opine on whether student disciplinary processes comply with Title IX.  Compounding her lack of qualification, Ms. Nannetti's proffered opinions are founded upon a profound misunderstanding of the underlying facts and evidence adduced through discovery in this case, rendering her opinions unfounded and unreliable.  Further, through her opinions, Ms. Nannetti impermissibly takes on the role of Doe's advocate, revealing disqualifying partiality and confirming the unreliability of her opinions.  Finally, Ms. Nannetti's proposed testimony includes irrelevant conclusions, including opinions regarding victim (not gender) bias, which have no bearing on the relevant inquiry for Doe's Title IX claim, but pose clear risk of confusing the issues and misleading the jury.  Ms. Nannetti's proposed testimony violates Rule 702 and must be excluded.

1.  **Introduction To Ms. Nannetti And Her Proposed Expert Opinions**.

Ms. Nannetti is a former prosecutor, whose career focused on prosecuting sex crimes.  [Expert Report of Cindi Nannetti, dated July 2, 2021 ("Report"), attached as Ex. 1, at 1; Rebuttal Expert Report of Cindi Nannetti, dated September 10, 2021 ("Rebuttal Report"), attached as Ex. 3 at 4.]  During Doe's student disciplinary proceedings at Arizona State University ("ASU"), Ms. Nannetti served as an expert witness for Doe, testifying before the University Hearing Board ("UHB") regarding "[h]er evaluation of the investigation conducted by Tara Davis and the Tempe Police Department ('TPD') that led to Student Code of Conduct charges" against Doe.  [*See* Ex. 8 to ABOR's October 12, 2021 Motion for Summary Judgment ("MSJ") (Doc. 155-4 at 12); *see also* Ex. 7 to ABOR's MSJ (Doc. 155-3 at 6).]  In this action, Doe disclosed Ms. Nannetti as an individual likely to have

1

discoverable information "regarding Ms. [Roe's] SANE report, as more fully described in her expert testimony offered during Mr. Doe's administrative hearing[,]" and relating to her opinion that the SANE report for Ms. [Roe] is consistent with consensual sex." [*See* Ex. 16-J to ABOR's MSJ at 7 (Doc. 155-5 at 92).]

On July 2, 2021, Doe disclosed Ms. Nannetti as a proposed expert witness charged with opining <u>not</u> regarding the SANE report (her disclosed area of knowledge), but instead regarding whether: (1) "the investigation into the sexual misconduct allegations levied against Doe was fair and impartial"; (2) "there were any errors or flaws in the investigation"; and (3) "the investigation appears to be impacted by the Start by Believing campaign at ASU." [Ex. 1 at 1.] Ms. Nannetti dedicates the majority of her Report to discussing the "Start by Believing" ("SBB") campaign, which she <u>incorrectly</u> assumes provided the framework for ASU's Office of Student Rights and Responsibilities' ("SRR") investigation of sexual misconduct allegations against Doe. [*Id.* at 3-10.] Ms. Nannetti devotes the remainder of her Report to identifying purported errors in the SRR investigation of the allegations against Doe, which Ms. Nannetti opines demonstrate SRR investigator Tara Davis' bias in favor of the "victim," Roe. [*E.g.*, *id.* at 16 ("Throughout the process, Ms. Davis was focused on believing the victim, ignoring any contrary evidence and the speed in which she could suspend and eventually expelled Doe.").] The Report attaches 22 exhibits focusing, like her Report, on SBB, along with an assortment of irrelevant articles.

On July 23, 2021, Doe disclosed a "Supplemental Expert Report of Cindi Nannetti." [*See* Supplemental Report, attached as Ex. 2.] The Supplemental Report contains two paragraphs in which Ms. Nannetti attempts to refute sworn testimony from ASU's Title IX Coordinator, Jodi Preudhomme, regarding SRR's refusal to follow SBB, disclosing for the first time: "I know this to be incorrect. In my personal experience, I have spoken with Ms. Preudhomme regarding her belief that use of the campaign is appropriate." [*Id.*] Ms. Nannetti then offers her personal beliefs regarding ASU's conduct regarding SBB, unconnected to this case. [*Id.*]

. . .

1    Finally, on September 10, 2021, Ms. Nannetti prepared a third "Expert Report," in

2  which she attempts to respond to the expert report of ABOR's Title IX expert, Peter Lake.

3  [*See generally* Ex. 3.]   The Rebuttal Report reiterates Ms. Nannetti's opinions that the SRR

4  investigation was flawed and that Ms. Davis acted with confirmation bias against Doe.  [*Id.* at

5  1-4.]  The Rebuttal Report conspicuously retreats from the foundation for her initial Report,

6  *i.e.*, that ASU employed SBB principles in conducting the underlying investigation.  [*See id.*]

7  Finally, in the Rebuttal Report, Ms. Nannetti attempts to rehabilitate her qualifications to

8  serve as an expert witness in this action by arguing that she is qualified as an expert on the

9  issue of confirmation bias – **not** Title IX or the adequacy of ASU's investigation into the

10  allegations against Doe and the resulting student disciplinary process.  [*Id.* at 4.]

11  **2.**    **The Relevant Legal Standards.**

12    Expert opinions must assist the trier of fact in resolving disputed issues in the case.

13  *See Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1321 (9th Cir. 1995) (explaining

14  "[f]ederal judges must therefore exclude proffered scientific evidence under Rules 702 and

15  403 unless they are convinced it speaks clearly and directly to an issue in dispute in the case"

16  and the testimony will not mislead the factfinder) ("*Daubert II*").  Admissible evidence must

17  "logically advance[ ] a material aspect of the proposing party's case." *See id.* at 1315.  This

18  inquiry must be applied within the context of the "applicable substantive standard." *See*

19  *Schudel v. Gen. Elec. Co.*, 120 F.3d 991, 996 (9th Cir. 1997) (citing *Daubert II*, 43 F.3d at 1320),

20  *abrogated on other grounds by Weisgram v. Marley Co.*, 528 U.S. 440 (2000); *see also Atencio v. Arpaio*,

21  2015 WL 11117187, at *22 (D. Ariz. Jan. 15, 2015) (precluding expert testimony and opinion

22  reflecting a "fundamental misunderstanding of the law").  Here, the admissibility of Ms.

23  Nannetti's opinions must be evaluated in the context of Doe's sole remaining Title IX claim.

24  **A.    Title IX Requires Doe To Prove The Outcome Of His Student
25         Disciplinary Proceeding Was Infected By Anti-Male Gender Bias.**

26    Title IX provides that "[n]o person in the United States shall, on the basis of sex, be

27  excluded from participation in, be denied the benefits of, or be subjected to discrimination

28  under any education program or activity receiving Federal financial assistance."  *See* 20

3

COHEN DOWD QUIGLEY

U.S.C. § 1681(a).  Where sex-based discrimination is intentional, Title IX is enforceable through a cause of action for which money damages are available.  *See Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946-47 (9th Cir. 2020).  The pertinent inquiry here is whether ASU's expulsion of Doe was motivated by anti-male bias.  *E.g., id.* (Title IX requires plaintiff to show exclusion "on the basis of sex"); *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994) ("Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." (citation omitted)).

To determine whether gender was a motivating factor in a decision to discipline a student, courts have relied on doctrinal tests, including "erroneous outcome" and "selective enforcement."   *See, e.g., Yusuf*, 35 F.3d at 715 (recognizing "erroneous outcome" and selective enforcement" theories of liability); *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) (same); *Klocke v. Univ. of Texas at Arlington*, 938 F.3d 204, 210 (5th Cir. 2019) (same).  Under "erroneous outcome," a plaintiff must demonstrate actual innocence or articulable doubt as to the outcome of the disciplinary proceedings <u>and</u> that the outcome was the result of gender bias.  *See Austin v. Univ. of Oregon*, 925 F.3d 1133, 1138 (9th Cir. 2019) (articulable doubt); *Yusuf*, 35 F.3d at 715 (actual innocence).  To establish "selective enforcement," a plaintiff must demonstrate that "a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender."  *See Doe v. Univ. of Dayton*, 766 F. Appx. 275, 284 (6th Cir. 2019).  Whichever framework or doctrinal test Doe seeks to use here, Doe must establish that the disciplinary action was driven by gender bias.  *See, e.g., Schwake*, 967 F.3d at 947; *Doe v. Univ. of Dev.*, 1 F.4th 822, 830 (10th Cir. 2021) ("[E]vidence of an erroneous outcome or selective enforcement are means by which a plaintiff might show that sex was a motivating factor in a university's disciplinary decision.").   Thus, opinions that do not bear on whether Doe's expulsion was motivated by anti-male gender bias are irrelevant and inadmissible.  As detailed below, Ms. Nannetti's proposed expert opinions are untethered to the relevant legal inquiry and do not bear on the solitary issue in this Title IX action.

. . .

4

**B.    Doe Also Bears The Burden Of Proving The Reliability, Relevance And Admissibility Of Ms. Nannetti's Proposed Expert Testimony.**

The law is well established that Doe bears the "burden of proving admissibility" of his proposed expert's testimony and opinions.  *See, e.g.*, *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (quoting *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996)); *accord Cloud v. Pfizer Inc.*, 198 F. Supp. 2d 1118, 1129 (D. Ariz. 2001); *Manion v. Ameri-Can Freight Systems Inc.*, 2019 WL 385815, at *1 (D. Ariz. Aug. 16, 2019).  If Doe "fails to carry this burden," his "expert's opinions are not admissible." *See Krause v. Cnty. of Mohave*, 459 F. Supp. 3d 1258, 1263-64 (D. Ariz. 2020).  The trial court acts as a "gatekeeper," responsible to exclude experts that do not satisfy Rule 702's qualification, relevancy, and reliability requirements.  *See, e.g.*, *Cooper* 510 F.3d at 942; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 144, 159 (1999).  "The judge's role is to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *See also Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1311-25 (11th Cir. 1999).

An expert must be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *see also Krause*, 459 F. Supp. 3d at 1263-64.  Beyond qualifications, expert testimony must be reliable and relevant.  *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 860 (9th Cir. 2014).  Proposed expert testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010).  Reliability aims to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152.  Proposed expert testimony is relevant "if the knowledge underlying it has a valid connection to the pertinent inquiry." *See Primiano*, 598 F.3d at 565; *see also Cloud*, 198 F. Supp. 2d at 1130 ("The trial court must ensure that the proposed expert testimony is relevant to the task at hand, … i.e., that it logically advances a material aspect of the proposing party's case. [T]he standard

COHEN DOWD QUIGLEY

1   for fit is higher than bare relevance." (quotations omitted) (citing *Daubert v. Merrell Dow*

2   *Pharms., Inc.*, 509 U.S. 579, 595 (1993) ("*Daubert I*"); *Daubert II*, 43 F.3d at 1315)).

3       Doe cannot demonstrate that Ms. Nannetti is qualified to offer her proposed

4   "expert" opinions or that Ms. Nannetti's opinions are reliable or relevant. Accordingly, Ms.

5   Nannetti's opinions and testimony should be excluded. *See Ollier*, 768 F.3d at 860.

6   **3.    Ms. Nannetti Is Not Qualified To Opine On The Standards Applied To, Or**

7   **Adequacy Of, ASU's Student Disciplinary Process Under Title IX.**

8       As stated above, Doe offers Ms. Nannetti as an expert to opine on three topics:

9   "whether: (1) the investigation into the sexual misconduct allegations levied against Doe was

10  fair and impartial, (2) whether there were any errors or flaws in the investigation, and (3)

11  whether the investigation appears to be impacted by the Start by Believing campaign at

12  ASU." [*See* Ex. 1 at 1.]   Ms. Nannetti, however, is not qualified to offer opinions on these

13  topics, and certainly does not have the necessary expertise to opine on the presence of

14  gender-bias in a Title IX investigation.

15      Ms. Nannetti's expertise is as a <u>criminal</u> prosecutor and as a consultant on <u>criminal</u>

16  sexual assault investigations. [*Id.* at 1 ("I spent 32 years as a prosecutor focusing primarily on

17  the prosecution of crimes involving sexual misconduct."), 1 ("I have worked to prevent

18  sexual crimes, advocate for the victims of sexual crimes, and put offenders of sexual crimes

19  in prison."), Appendix A (further outlining Ms. Nannetti's criminal investigative experience);

20  Ex. 3 at 4 (referencing 33 years of experience as a sex crimes prosecutor).] This experience

21  does not provide Ms. Nannetti with the "knowledge, skill, experience, or education"

22  necessary to opine on the standards governing, or the adequacy of, ASU's distinct student

23  disciplinary process under Title IX. *See, e.g., Bazile v. Cty. of N.Y.*, 215 F. Supp. 2d 354, 365

24  (S.D.N.Y. 2002) (excluding expert testimony in a Title VII case where the expert lacked the

25  necessary experience, reasoning: "Although he does have experience in drug enforcement

26  and in supervision of law enforcement personnel, he has none in conducting internal

27  disciplinary investigations…. He also has no particular expertise that would qualify to assess

28  whether a discriminatory animus motivated the NYPD in this case." (citation omitted)); *Doe*

COHEN DOWD QUIGLEY

6

*v. Colgate Univ.*, 2017 WL 4990629, at * 11 ("Although Gruber teaches a criminal procedure course that discusses investigative bias, her knowledge of bias in criminal investigations is not a sufficient experiential foundation for her exacting scrutiny of Brogan's conduct during a qualitatively distinct Title IX investigation." (quotations omitted)); *see also Allen v. Am. Cap. Ltd.*, 287 F. Supp. 3d 763, 787-88 (D. Ariz. 2017) (excluding expert who lacked experience relating to the central issue of the case); *In re GFI Comm'l Mortg. LLP*, 2013 WL 4647330, at *6 (N.D. Cal. Aug. 29, 2013) (explaining that experienced investors lacked qualifications to serve as experts regarding a bankruptcy trustee's investment decision, where the proposed experts had not served as bankruptcy trustees; "the Ninth Circuit has routinely upheld the disqualification of proposed experts who lack specific expertise, notwithstanding their general expertise" (citing *Ralston–Purina Co. v. Bertie*, 541 F.2d 1363, 1364 (9th Cir.1976))).[1]

While the Report misleadingly suggests Ms. Nannetti has "served as **an expert witness in cases involving Title IX claims**," Ms. Nannetti provides no information showing she actually has Title IX expert experience or qualifications. [*See* Ex. 1 at 1 (emphasis added).] She does not disclose information that she has training or qualifications relating to Title IX investigations or university student disciplinary processes, conducted a Title IX investigation, or even interviewed a Title IX coordinator, investigator or decision maker. *See Colgate Univ.*, 2017 WL 4990629, at *8. Rather, the sole document cited as support for Ms. Nannetti's alleged Title IX experience does not even mention Title IX or student disciplinary processes in any capacity. [Ex. 1 at 1, Exhibit 16 (indicating Ms. Nannetti served as a member of the "Governor's Commission to Prevent Violence Against Women Start by Believing Work Group").] She is not qualified.

Additionally, when ABOR's Title IX Expert Peter Lake raised Ms. Nannetti's lack of relevant experience or qualifications (Ex. 4 at 5 ("Although Ms. Nannetti has extensive criminal court and prosecutorial experience, she does not offer sufficient information in either the Nannetti Report or Nannetti Supplemental Report that indicates that she has

---

[1]   Courts often look to "Title VII interpretations of discrimination in illuminating Title IX." *See, e.g., Emeldi v. Univ. of Oregon*, 698 F.3d 715, 725 (9th Cir. 2012).

COHEN DOWD QUIGLEY

substantial familiarity with Title IX grievance systems and investigative processes conducted at institutions of higher education so as to offer opinions as an expert in this matter."), Ms. Nannetti chose not to respond.  [*See* Ex. 3 at 4 (attempting to articulate qualifications regarding "confirmation bias," not Title IX or Title IX investigations).]  *See Cnty. of Maricopa v. Office Depot Inc.*, 2019 WL 5066808, at * 21 (D. Ariz. Oct 9, 2021) ("If an expert witness "is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." (citation omitted)).  Ms. Nannetti's silence confirms she is unqualified to offer expert opinions here.

**4.** **Ms. Nannetti's Opinions Are Not Reliable:  They Are Not Based On Sufficient Facts And Contain Critical Errors And Omissions.**

Rule 702 demands reliable expert testimony, which must be "based on sufficient facts or data" and must be the product of the expert's reliable application of "reliable principles and methods" to the facts of the case.  Fed. R. Evid. 702.  To determine reliability, a trial court must "undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Colgate Univ.*, 2017 WL 4990629, at * 7 (citation and quotations omitted).  Reliability requirements are not lessened if an expert testimony falls "outside the realm of science," as "opinion[s] from an expert who is not a scientist should receive the same degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist."  Fed. R. Evid. 702, cmt. to advisory committee's notes to 2000 amend. (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 (5th Cir. 1997)).  When relying on experience, experts "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  *See id.* ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" (quoting *Daubert II*, 43 F.3d at 1319)).  Ms. Nannetti's opinions fall far short of these standards and must be excluded.

. . .

COHEN DOWD QUIGLEY

As an overarching matter, Ms. Nannetti's Report is based on a false foundation.  As detailed above, Ms. Nannetti does not have the actual experience or qualifications sufficient to offer expert testimony concerning ASU's student disciplinary process.  Her experience focuses on criminal prosecutions involving sex crimes, **not** student disciplinary matters.  [*See, e.g.*, Ex. 1 at 1; Ex. 3 at 4.]  There are substantial differences between a judicial criminal prosecution and an administrative proceeding in an educational setting.  Ms. Nannetti's inapplicable experience base reveals itself throughout her Reports, where she interjects irrelevant and inflammatory criminal law concepts into her review of Doe's student disciplinary matter.  [*E.g.*, Ex. 1 at 2, 5, 7-8, 13-15 (referring to respondents/Doe as "male accused," "sexual assault" instead of "sexual misconduct" and using terms "accused," "rape" and "sex offender"); Ex. 3 at 1 (referring to respondent as the "accused"), 4 (relying on her "33 years as a prosecutor whose focus was on sex crimes" to support her "real life understanding of how confirmation bias taints an investigation").]  Ms. Nannetti's reliance on criminal concepts throughout her Reports confirms that she viewed the evidence through the wrong prism and, as a result, her opinions are inherently unreliable.  *See Bazile*, 215 F. Supp. 2d at 365 (excluding expert testimony, where experience in law enforcement investigations "does not fit the facts" of case involving an internal disciplinary investigation); *Colgate Univ.*, 2017 WL 4990629, at *11 (excluding proposed expert because "knowledge of bias in criminal investigations is not a sufficient experiential foundation" for evaluation of a "qualitatively distinct Title IX investigation").  Ms. Nannetti's proposed testimony, including her use of criminal phraseology, poses a significant risk of confusing and misleading the jury and prejudicing ABOR.  *See Cloud*, 198 F. Supp. 2d at 1130 ("Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 ... exercises more control over experts than lay witnesses." (quoting *Daubert I*, 509 U.S. at 595)).

Ms. Nannetti's Report is also based on the erroneous assumption that SRR and Ms. Davis followed the SBB campaign in investigating student disciplinary matters, including the allegations of sexual misconduct against Doe.  Without a shred of evidence supporting this

COHEN DOWD QUIGLEY

assumption, Ms. Nannetti dedicates nearly half of her 16-page Report opining that the investigation was tainted by SBB principles.  [Ex. 1 at 3-10; *see also, e.g., id.* at 3 ("ASU's investigations are guided by the Start by Believing campaign."), 10 (Ms. Davis' "believing the victim mantra never wavered despite evidence to the contrary.").]  There is <u>no</u> evidence – none – that Ms. Davis followed SBB.  Indeed, Doe carefully avoided asking Ms. Davis about the role of SBB during her full-day deposition, despite it serving as the foundation for Ms. Nannetti's opinions (and one of the three topics on which Doe hired Ms. Nannetti to opine).  [*Id.* at 1.]  Even more damning, all of the evidence in this case, including witness testimony, regarding SBB establishes that SRR did <u>not</u> follow the campaign.   [*See* Rule 30(b)(6) Deposition of ABOR at 98-101, 105-07, 112, attached as Ex. 18 to ABOR's MSJ (Doc. 155-6 at 37-40) (testifying that SRR did not adopt SBB and the Associate Dean of Educational Outreach and Student Services instructed SRR not to follow SBB); *see also* Ex. 5 at 1.]  There is no evidence to the contrary and no support for Ms. Nannetti's foundational assumption and corresponding opinions.  Her opinions must be excluded.  *See Smith v. Pac. Bell Tel. Co.*, 662 F. Supp. 2d 1199, 1225-26 (E.D. Cal. 2009) ("If the basis for an expert's opinion is clearly unreliable, the district court may disregard that opinion…. Opinions derived from erroneous data are appropriately excluded." (citations omitted)); *Hanna v. Reg'l Trans. Comm'n*, 2008 WL 11450865, at * 4 (D. Nev. July 21, 2008) (excluding expert testimony that "fails to meet the threshold Rule 702 requirement of assisting the trier of fact because it is based upon a false factual assumption vital to the conclusion").[2]

In a misguided attempt to resurrect the foundation of her opinions, the Supplemental Report references Ms. Nannetti's never-before-disclosed personal belief regarding ASU's adoption of SBB.  [*See* Ex. 2 ("I know [Ms. Preudhomme's testimony] to be incorrect.  In my personal experience, I have spoken with Ms. Preudhomme regarding her belief that use of the campaign is appropriate.").]  Ms. Nannetti cannot, under the guise of "expert" testimony,

---

[2]   Ms. Nannetti's sweeping assertions that "the Start by Believing Website exclusively features women" and that the campaign "is rooted in the belief that women are victims of sexual assault and violence and thus that women need to be believed" is similarly false.  [*See* Ex. 1 at 4 (stating that 1 in 71 men are "victims of sexual assault"); Ex. 6; Ex. 8, ¶ 2.]

COHEN DOWD QUIGLEY

attack the credibility of ABOR witnesses; that assessment is reserved for the trier of fact. *See Krause*, 459 F. Supp. 3d at 1265 (quoting *Quinn v. Fresno Cty. Sheriff*, 2012 WL 2995477, at *3 (E.D. Cal. 2012) ("Weighing the credibility of witnesses and resolving factual matters is not outside the common ability and knowledge of a layperson; it is the precise role that the law assigns solely to a layperson as juror.")).  Ms. Nannetti's suggestion that ASU has acted inappropriately or even unethically in connection with SRR's decision not to implement SBB, is also irrelevant as it is impermissible. *See, e.g.*, *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 4279833, at *4 (D. Ariz. Sept. 7, 2018) (granting motion to exclude expert testimony about ethical or moral obligations, reasoning that "[p]ersonal views on corporate ethics and morality are not appropriate expert opinions").[3]

Beyond the false foundation, Ms. Nannetti's opinions are not based on sufficient facts or data and do not show the reliable application of a reliable methodology, as Rule 702 demands.  "In order for expert testimony to be reliable, 'the reasoning between steps in a theory must be based on objective, verifiable evidence[.]'" *I.V. v. Wenatchee Sch. Dist. No. 246*, 342 F. Supp. 3d 1083, 1091 (E.D. Wash. 2018) (citation omitted).  Ms. Nannetti's proposed testimony, however, is founded upon a series of overgeneralizations, unsupported speculation and her own subjective beliefs, which are undeniably framed by her personal experience as a criminal prosecutor, not a Title IX investigator.  Throughout her Report, Ms. Nannetti repeatedly speculates that Ms. Davis presumed Roe was a "victim" of sexual assault, which resulted in "confirmation bias" permeating throughout the student disciplinary investigation.  [Ex. 1 at 11 ("It is my opinion that the investigation in this case was tainted by Davis' unwarranted presumption that Roe was a victim of sexual assault, and her subsequent confirmation bias to support that narrative."), 13 ("Davis began her investigation believing the complainant and disbelieving the accused; this mindset colored her investigation."), 15 ("Davis' bias was evident from beginning of the case. Her bias to

---

[3]     Moreover, Doe cannot rely upon Ms. Nannetti's "personal" knowledge of a theory he apparently deems relevant to his Title IX claim, yet never disclosed.  [*See* Doc. 67 at 2 n.1 ("Parties that fail to timely disclose relevant information will be precluded from using it in the case and may be subject to other sanctions.").]

11

believe the victim, had already tipped the scale from a neutral fact finder, to favoring the victim."), 16 ("Throughout the process, Ms. Davis was focused on believing the victim, ignoring any contrary evidence and the speed in which she could suspend and eventually expelled Doe.").]  But, Ms. Nannetti does not offer any factual support for her sweeping assertions that Doe's disciplinary investigation "was tainted by [Ms.] Davis' unwarranted presumption that Roe was a victim of sexual assault, and her subsequent confirmation bias to support that narrative." [Ex. 1 at 11.]  And, again, Ms. Nannetti's assumption that SBB guided Ms. Davis' investigation is flatly wrong.  [Ex. 18 to ABOR's MSJ at 97-106 (Doc. 155-6 at 36-39).]

While "personal experience" can form the basis of an expert's opinion, Ms. Nannetti's criminal prosecution background does not provide a factual basis to support her far-reaching proclamation regarding the presence of bias (victim, <u>not</u> gender) in Doe's student disciplinary investigation.  *See Colgate Univ.*, 2017 WL 4990629, at * 8 ("While personal experience can be the basis for reliability, it is hard to imagine how Gruber's personal experiences could form a sufficiently comprehensive factual basis for her sweeping claim regarding prevalence of feminist bias among Title IX administrators. Furthermore, her relevant personal experience is not extensive—for instance, she has never attended a Title IX training, served on a Title IX panel, conducted a Title IX investigation, or interviewed a Title IX coordinator, investigator, or decision-maker to learn whether they presumed all complainants were traumatized.").  Ms. Nannetti confirms this reality in her Rebuttal Report. [Ex. 3 at 4 ("Lake asserts in his report that I do not have the expertise necessary to opine on confirmation bias…his assertion is incorrect. In my 33 years as a **prosecutor** whose focus was on sex crimes I reviewed thousands of investigations. In that role I gained a real life understanding of how confirmation bias taints an investigation." (emphasis added)).]  As Ms. Nannetti's opinions are not based any relevant personal experience, they are inherently unreliable, misleading and must be excluded.  *Colgate Univ.*, 2017 WL 4990629, at * 8; *cf. Ollier*, 768 F.3d at 861.

Similarly, Ms. Nannetti's opinions regarding Ms. Davis' alleged "investigatory

COHEN DOWD QUIGLEY

failures" are not supported by a systematic evaluation of the facts.  For example, Ms. Nannetti opines Ms. Davis **intentionally** failed to "gather basic information or to fully investigate" Roe's allegations of sexual assault. [Ex. 3 at 3 ("An intentional failure to gather basic information or to fully investigate reveals a bias against the accused.").]  Ms. Nannetti offers no support for this incendiary "opinion" (as there is none) and the opinion must be excluded.  *See Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) ("An opinion based on such unsubstantiated and undocumented information is the antithesis of the scientifically reliable expert opinion admissible under *Daubert* and Rule 702."); *see also Colgate Univ.*, 2017 WL 4990629, at * 9 ("Gruber points to nothing in the record to support this assertion, and her opinion is inadmissible for this basis alone.").

Beyond the lack of support, Ms. Nannetti levies several accusations that are contradicted by testimony and documents in the record.  After her erroneous SBB assertion, the primary thrust of Ms. Nannetti's Reports is her critique of Ms. Davis' investigation on the ground that Ms. Davis failed to seek or obtain available, relevant evidence.  [*See, e.g.*, Ex. 1 at 12; *see also id.* at 1-2 ("In my opinion, there were a multitude of errors and flaws in the investigation of the claims against Doe including but not limited to:  failure to make reasonable efforts to obtain relevant and available evidence[.]").]  In particular, Ms. Nannetti repeatedly opines that Ms. Davis failed to seek or obtain the Tempe Police Department's ("TPD") criminal investigative file, including the police report, SANE report, and related evidence.  [*See, e.g.*, Ex. 1 at 11 (stating Ms. Davis did not follow up on the SANE report), 13 (stating Ms. Davis did not obtain the video of the incident or follow up on criminal lab reports regarding alcohol and DNA and failed to obtain investigative materials, including one party consent call notes); Ex. 3 at 1-2 (opining that Ms. "Davis made no effort to obtain the SANE report…. so fundamental an error as to indicate a bias against Doe"); Ex. 3 at 2 (opining that Ms. Davis' failure to obtain the SANE report "led to Davis not gathering evidence that would contradict Roe's self-serving statements regarding the nature of her injuries").]  Objective review of the evidence in the record readily and dispositively disproves Ms. Nannetti's opinions.  [*See, e.g.*, Investigative Report at 15-17, attached as Ex. 3 to

COHEN DOWD QUIGLEY

ABOR's MSJ (Doc. 155-1 at 79-81) (identifying that Ms. Davis requested information from the TPD on September 19, 2016, submitted a public records request to TPD on October 13, 2016 seeking the police investigative materials, asked Roe to obtain the police report once TPD declined Ms. Davis' public records request, and requested the police report from Doe); Ex. 4 to ABOR's MSJ at 98-99 (Ms. Davis explaining her efforts to obtain materials from the TPD investigation, "any records related to this incident"), 219 (explaining that Ms. Davis tried to obtain investigative materials from TPD, but was told it would not release anything to her), 223-24 (same) (Doc. 155-2 at 14, 28, 29); Ex. 9 to ABOR's MSJ at 23-24, 32-33, 198-206 (Doe testifying, admitting Ms. Davis requested TPD investigative materials, including the TPD report from Doe) (Doc. 155-4 at 38-42).]   Disproven by the evidence, Ms. Nannetti's unreliable opinions must be excluded.  *See, e.g.*, *Smith*, 662 F. Supp. 2d at 1225-26; *Hanna*, 2008 WL 11450865, at * 4.

Ms. Nannetti's opinions are further contradicted by the opinions offered by Doe's SANE examination expert, Karyn Rasile.  Ms. Nannetti, a lawyer and not a medical professional, opines that the SANE report in this case indicates consensual sexual intercourse between Doe and Roe and that Ms. Davis' alleged failure to obtain the SANE report biased Doe.  [Ex. 1 at 12 ("To an investigator with experience reviewing SANE exams, the exam was consistent with consensual sex.").]  Yet Doe's SANE examination expert opines the opposite.  [Ex. 7 at 5 ("What is most important [about the SANE examination findings] is that absence or presence of genital injuries do not speak to force or consent").]  Ms. Nannetti's conjecture and erroneous opinions must be excluded.  *See, e.g.*, *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient facts … or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict."); *I.V.*, 342 F. Supp. 3d at 1092 (excluding expert opinions "not based on adequate information" as expert failed to "consider the full constellation of facts, as is required for the issue at hand"); *Smith*, 662 F. Supp. 2d at 1125-26 ("[E]xpert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion.

1   Opinions derived from erroneous data are properly excluded." (citations omitted)).

2       In sum, Ms. Nannetti's opinions are unreliable.  They are founded upon inapplicable

3   criminal prosecutorial standards and the false assumptions that SRR and Ms. Davis adhered

4   to the mantra of "start by believing" and intentionally ignored relevant, available evidence.

5   From this faulty base, Ms. Nannetti offers sweeping opinions premised on unsupported or

6   thoroughly refuted assertions of "fact."   Her opinions fall far short of being reliable.

7   Ultimately, Ms. Nannetti resorts to the very conduct ("confirmation bias") about which she

8   complains, acting as an advocate and offering speculation instead of reliable opinions.  Her

9   testimony must be excluded.  *See, e.g., Allen*, 287 F. Supp. at 786 (rejecting expert's "ends-

10  driving approach … which negatively affects the reliability of his opinion"); *Ollier*, 768 F.3d

11  at 861 ("[P]ersonal opinion testimony is inadmissible as a matter of law under Rule 702, …

12  and speculative testimony is inherently unreliable[.]").

13  **5.   Ms. Nannetti's Proposed Testimony Is Irrelevant, Dangerously Confuses the**
14  **Issues And Will Mislead The Jury.**

15      Proposed expert testimony must have "a valid connection to the pertinent inquiry"

16  and "logically advance a material aspect of [Doe's] case."  *Primiano*, 598 F.3d at 565; *Cooper*,

17  510 F.3d at 942; *accord Daubert II*, 43 F.3d at 1321, n.17 (expert testimony must be excluded

18  unless it "speaks clearly and directly to an issue in dispute in the case").  In the context of

19  Doe's sole remaining Title IX claim, the relevant inquiry is whether ABOR engaged in

20  "intentional sex discrimination."  *Schwake*, 967 F.3d at 946-47; *accord* 20 U.S.C.§ 1681(a);

21  *Yusuf*, 35 F.3d at 715 (explaining that in order to violate Title IX, discipline must have been

22  motivated by/on the basis of respondent's gender).  Ms. Nannetti's opinions do not bear on

23  this inquiry and must be excluded as irrelevant.

24      First, Ms. Nannetti does not opine on the existence of policies, practices, conduct or

25  actions probative of the existence of anti-male gender bias.  Rather, her opinions relate to

26  alleged pro-victim ("confirmation") bias or anti-respondent bias.  [Ex. 1 at 13 ("Davis began

27  her investigation believing the complainant and disbelieving the accused"), 15 ("[Ms. Davis's]

28  bias to believe the victim, had already tipped the scale from a neutral fact finder, to favoring

COHEN DOWD QUIGLEY

the victim."), 16 ("Throughout the process, Ms. Davis was focused on believing the victim.").]  However, court after court has held that a "pro-victim" or "anti-respondent" bias is not gender bias.  Thus, Ms. Nannetti's opinions do not bear on the critical inquiry for Doe's sole remaining Title IX claim – whether Doe's discipline resulted from anti-male gender bias.  *See, e.g., Doe v. Cummins*, 662 F. Appx. 437, 453 (6th Cir. 2016) ("[A] disciplinary system that is biased in favor of alleged victims and against those accused of misconduct … does not equate to gender bias because sexual-assault victims can be both male and female."); *Doe v. Univ. of Colo., Boulder*, 255 F. Supp. 3d 1064, 1074 (D. Colo. 2017) (same); *Doe v. Rollins Coll.*, 2020 WL 8409325, at *9 (M.D. Fla. July 13, 2020) ("[T]he inference of pro-victim bias is an obvious alternative explanation that overwhelms any potential of gender bias." (quotation omitted)).  Because Ms. Nannetti opines only on an issue <u>not</u> present in this action, her testimony is irrelevant and must be excluded.  *Daubert I*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." (quoting 3 Weinstein & Berger ¶ 702[02], p. 702-18)).  Moreover, allowing testimony on "bias," "confirmation bias" or "pro-victim bias" seriously threatens to mislead and confuse the issues with the jury, which may misleadingly equate Ms. Nannetti's reference to "bias" with "gender bias."  The severe prejudice to ABOR from such confusion of the issues outweighs any argument in favor of allowing expert testimony on a subject <u>not</u> at issue.  *See* Fed. R. Evid. 403.

Second, Ms. Nannetti's critique of Ms. Davis' investigation does not "logically advance a material aspect of [Doe's] case."  *Cooper*, 510 F.3d at 942.  As detailed in ABOR's Motion for Summary Judgment (Doc. 155), "Title IX does not require flawless investigations or perfect solutions." *Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 170 (5th Cir. 2011) (citation omitted); *Doe v. Belmont Univ.*, 367 F. Supp. 3d 732, 755 (M.D. Tenn. 2019) (Title IX does not place court in role of "advocate[ing] for best practices" in student disciplinary proceedings (quotation omitted)).  Accordingly, the alleged errors or flaws in the investigative process identified by Ms. Nannetti, even if accurate, do not equate to intentional sex discrimination under the law.  *See id.*  Nor does Ms. Nannetti provide any

COHEN DOWD QUIGLEY

16

1  rationale, methodology or reasoning as to how she bridges the gap between alleged flaws in

2  an investigative process and intentional sex discrimination.  The Court may not simply take

3  her word for it.  *See Udd v. City of Phoenix*, 2021 WL 1783192, at *5 (D. Ariz. May 5, 2021).

4  Third, Ms. Nannetti's Reports confine her criticisms to Ms. Davis' investigation into

5  allegations of sexual misconduct against Doe.  [*See generally* Ex. 1; Ex. 3.]  Yet Ms. Davis was

6  not a decision-maker – a fact Ms. Nannetti concedes in her Rebuttal Report.  [*See* Ex. 3 at 3.]

7  Ms. Nannetti asserts that, even though Ms. Davis was not a decision-maker, her alleged bias

8  remains relevant because the resulting decisions are based on the investigation. [*Id.*]  The

9  record proves this assertion is false.   Ms. Nannetti ignores the abundant evidence and

10  testimony demonstrating that the decision in this case, ultimately made by Dr. Rund, was not

11  based on a limited investigatory record.  Dr. Rund considered all evidence submitted to the

12  UHB and in connection with Doe's voluminous request for review and rehearing (including,

13  the police report, SANE exam and one-party consent calls), along with the arguments of

14  Doe's counsel regarding deficiencies in the investigative process.  [Deposition of Dr. Rund,

15  at 23, 221-23, 231-239, 242, attached as Ex. 11 to ABOR's MSJ (Doc. 155-4 at 66, 89-94).]

16  Dr. Rund (not Ms. Davis) determined Doe's discipline in this case.  Ms. Nannetti does not

17  evaluate or opine whether Dr. Rund acted with an anti-male bias.   Her opinions are

18  irrelevant, *see, e.g.*, *Mondero v. Salt River Project*, 400 F.3d 1207, 1213 (9th Cir. 2005) (affirming

19  judgment as plaintiff failed to make requisite showing that the relevant decision makers

20  "were influenced or even aware of the alleged gender bias of some of its agents"), and must

21  be excluded.

22  **6.**    **Conclusion**.

23  Ms. Nannetti's proposed testimony fails every prong of Rule 702 and must be

24  excluded.  For each of the reasons set forth above, ABOR respectfully requests that the

25  Court enter an order excluding from evidence at trial, and for all other purposes, the

26  opinions, testimony and reports of Ms. Nannetti.

27  . . .

28  . . .

17

COHEN DOWD QUIGLEY

1  RESPECTFULLY SUBMITTED this 22nd day of October, 2021.

2                                     COHEN DOWD QUIGLEY
                                      The Camelback Esplanade One
3                                     2425 East Camelback Road, Suite 1100
                                      Phoenix, Arizona 85016
4                                         Attorneys for Defendants

5                                     By:     /s/ Betsy J. Lamm
6                                             Daniel G. Dowd
                                              Betsy J. Lamm
7                                             Rebecca van Doren

COHEN DOWD QUIGLEY

18