1  Robert B. Carey (011186)
2  Leonard W. Aragon (020977)
   HAGENS BERMAN SOBOL SHAPIRO LLP
3  11 West Jefferson Street, Suite 1000
   Phoenix, Arizona 85003
4  Telephone: (602) 840-5900
   rob@hbsslaw.com
5  leonard@hbsslaw.com

6  Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| John Doe, a single man, | Case No.: 2:18-cv-01623-DWL |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY AND OPINIONS OF PETER F. LAKE** |
| The Arizona Board of Regents, et al., | |
| Defendants. | |
| | (Assigned to the Honorable Dominic W. Lanza) |

## I. INTRODUCTION

The expert opinions of Peter F. Lake ("Lake") should be excluded for five reasons. First, certain of Lake's opinions usurp the role of the Court by opining on legal issues that are reserved for the court. Second, Lake invades the Court's role as gatekeeper by opining on the admissibility and relevance of Plaintiff's expert Cindi Nannetti's ("Nannetti") expert opinions. Third, Lake invades the jury's province by opining on the credibility of Nannetti. Fourth, Lake's report purports to be a rebuttal to Nannetti's expert report, yet Lake asserts a series of new opinions that do not address, let alone contradict or challenge, anything in Nannetti's report and are improper for a rebuttal report. Last, Lake opines on matters that are not helpful to the trier of fact and should be excluded under Rule 403.

Lake's opinions should be excluded as set forth below.

## II. BACKGROUND

### A. ASU's Investigation of Doe.

After a consensual, three-way sexual encounter in which Plaintiff John Doe's ("Doe") accuser, Roe, was an active participant—supporting herself on all fours for approximately 25 minutes, instructing Doe and Witness 1 not to ejaculate so as to avoid an unwanted pregnancy, switching positions, and informing Witness 1 she did not want to be photographed—Roe later reported the incident as nonconsensual to the Tempe Police Department. Compl. ¶¶ 3, 11, 110-125.

Six months after Maricopa County declined to charge Doe based on its investigations into Roe's allegations, Roe notified ASU of the incident, claiming she knew what was going on during the incident but could not say anything. *Id.* ¶¶ 138-143, 187. ASU's investigation that followed was replete with investigative irregularities and a pursuit of only evidence that fit Roe's narrative, indicating bias. *Id.* ¶¶ 7, 16, 127, 147-49, 151-58, 168, 187.

After the botched investigation, Doe was found responsible by ASU's Dean of Students for sexually engaging Roe while she was "incapacitated," expelled, and banned from all public educational institutions in Arizona. *Id.* ¶ 160. Doe went to hearing and won on incapacitation but was found responsible for a charge not even levied or discussed (sex

by force). He appealed this decision, and the ASU senior vice president responsible for the ultimate decision reversed Doe's incapacitation win and affirmed the finding on the never-disclosed, argued, or briefed sex-by-force charge. Doe then appealed this decision all the way to the Arizona Court of Appeals, which found the sexual misconduct charge was not supported by substantial evidence.

Because of ASU's unlawful and unfair conduct, Doe filed this action for damages against ABOR for violating his educational and civil rights under 42 U.S.C. § 1983, Title IX.

### B. The Nannetti Report.

To support his case, Doe plans to offer expert testimony from Cindi Nannetti, a former county prosecutor of 32 years who has dedicated her career to advocating for victims of sexual crimes. Expert Report of Cindi Nannetti ("Nannetti Report"), Ex. 1 at 1. Nannetti has spearheaded law enforcement investigations of allegations involving sexual crimes, interacting with victims of sexual crimes, and prosecuting offenders. *Id.* This includes reviewing, analyzing, and reviewing with investigators hundreds of investigations regarding sex crimes. *Id.* Given her expertise in sex crimes investigations, Doe's counsel retained Nannetti to opine on ASU's investigation of the allegations levied against Doe. The Nannetti Report is limited in scope to investigation conducted by ASU. Specifically, whether the investigation against Doe (1) was fair and impartial, (2) had errors or flaws, and (3) was affected by the Start by Believing campaign at ASU. Nannetti Report at 1.

### C. The Lake Report.

To rebut the Nannetti Report, ABOR presented the Expert Response of Peter F. Lake. Ex. 2, Expert Response of Peter F. Lake ("Lake Report"). Lake offers opinions that constitute legal argument, credibility determinations, and opinions on how fact disputes should be decided.

For instance, Lake provides the following opinions, which instruct the jury as to legal standards:

- Title IX does not mandate that grievance processes as whole or initial investigations, be ideal; the fact that a final decision by a recipient of

2

federal funding is reviewed and even overturned internally or by an external authority does not imply, or raise an inference, in and of itself, that an initial investigation was materially flawed or biased in any way. Moreover, I note that have reviewed an opinion of the Arizona Court of Appeals15 and I observe that the standard of review in that decision is not an objective standard to assess Title IX compliance. Lake Report at 10.

- Respondents, qua respondents, are entitled to a presumption of nonresponsibility in Title IX proceedings; complainants, qua complainants, are entitled to the presumption that they are not inherently lacking in credibility in Title IX proceedings simply by way of being a complainant… *Id.*

Lake also offers opinions as to the "objective standards for Title IX Investigations" citing caselaw he claims sets forth the "authoritative legal standards for an implied cause of actions for money damages in federal court." *Id.* Lake also offers the following opinions regarding the relevance of Nannetti's opinions and her qualifications to present them:

- (1) I have the following concerns that the proffered expert, Cindi Nannetti, may not be qualified to offer opinions in this matter and/or has not offered relevant opinions in this matter." Lake Report 5.

- Ms. Nannetti does not provide any information that indicates that she has substantial familiarity with ATIXA and its materials. *Id.* at 9.

- I am unable to detect from the Nannetti Report or Nannetti Supplemental Report substantial expertise in reviewing the work of Title IX investigators for purposes of this matter at this stage of proceedings in federal court, even under standards for which Ms. Nannetti may have expertise. *Id.*

- Ms. Nannetti's assertion that Ms. Davis' investigation "was contrary to basic investigative standards" lacks foundation (and is made without supporting citations to so-called basic investigatory standards). *Id.* at 15.

- The reliability and relevance of expert opinions are strictly the province of the Court.

Lake offers the following opinions as to Nannetti's credibility:

- (1) I am concerned that Ms. Nannetti may have an interest in this matter, may be biased in favor of a party in this matter, and/or may be biased implicitly, or otherwise, in favor of using criminal justice prosecutorial or investigative standards when respondents are accused of sexual

3

- misconduct in an educational setting on a university campus. Lake Report at 6.

- Ms. Nannetti's heavy reliance on ATIXA materials, perhaps because of aligning motivationally with those materials as opposed to having foundational knowledge of them, might indicate a pro-respondent bias in Title IX matters in the Nannetti Report and Nannetti Supplemental Report. I am also concerned that Ms. Nannetti's long career in law enforcement may also indicate bias, implicit or otherwise, against University proceedings related to Title IX that relate to matters that are potentially crimes potentially suitable for criminal investigation and prosecution. *Id.* at 21.

- I am concerned that by equating "victim" with "women" might suggest Ms. Nannetti's confirmation bias. *Id.* at 26.

Finally, Lake offers the following recitation of facts as "expert opinions":

- (2) Nothing in the materials provided to me, or in the interviews I conducted with current and former ASU operatives, indicated that Ms. Davis or any other agent of ASU was biased against Doe, including on the basis of sex. *Id.* at 9.

- (3) Even if Ms. Davis, *arguendo*, were biased in some way against Doe, Ms. Davis was an investigator, not a decision-maker, and was therefor in no position to make a disciplinary decision, including one motivated by bias or otherwise. *Id.*

- (4) My review of the materials provided to me, including my interview of Ms. Davis, lead me to conclude that Ms. Davis' investigation in this matter did not discriminate on the basis of sex.

- (8) As discussed infra, Ms. Nannetti faults Ms. Davis for not securing certain documents, such as the police report and accompanying SANE exam. However, Plaintiff Doe did not provide Ms. Davis with all relevant evidence in his possession. Doe had a copy of the police report and accompanying SANE exam in full—documents which contained information he now asserts might have exculpated him—yet did not provide these items to Ms. Davis during the investigation. Ms. Davis asked Doe for his copy of the police report, which contained the SANE exam report, numerous times.17 Ms. Davis did finally secure a copy of the police report from the complainant. The information provided to me, including the deposition transcript of Doe, suggests the possibility of an effort (potentially collaborative) to obstruct ASU disciplinary process. *Id.* at 10-11.

All the foregoing opinions should be excluded.

### III. ARGUMENT

#### A. Certain of Lake's opinions should be excluded because they seek to instruct the jury on the law, a duty belonging exclusively to the Court.

"[An] expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. Similarly, instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (cleaned up); *see also* Fed. R. Evid. 702 (requiring that expert opinion evidence "assist the trier of fact to understand the evidence or to determine a fact in issue").

Lake seeks to instruct the jury on the law as follows:

- Title IX does not mandate that grievance processes as whole or initial investigations, be ideal; the fact that a final decision by a recipient of federal funding is reviewed and even overturned internally or by an external authority does not imply, or raise an inference, in and of itself, that an initial investigation was materially flawed or biased in any way. Moreover, I note that have reviewed an opinion of the Arizona Court of Appeals15 and I observe that the standard of review in that decision is not an objective standard to assess Title IX compliance. Lake Report at 10.

- Respondents, qua respondents, are entitled to a presumption of nonresponsibility in Title IX proceedings; complainants, qua complainants, are entitled to the presumption that they are not inherently lacking in credibility in Title IX proceedings simply by way of being a complainant… *Id.*

Lake also offers opinions as to the "objective standards for Title IX Investigations citing caselaw he claims set forth the "authoritative legal standards for an implied cause of actions for money damages in federal court." *Id.* Lake's opinions as to the applicable legal standards that should be applied to Title IX cases are improper and should be excluded. *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993) (finding error where judge allowed expert witness to instruct jury on the law rather than the judge).

5

**B.    Lake's opinions as to the admissibility of Nannetti's opinions are not helpful and potentially interfere with the role of the court.**

It is well established that it is the Court's role as gatekeeper to determine the relevance and reliability of expert testimony, not a hired expert. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997). Lake's opinions regarding admissibility are likewise not helpful to the trier of fact. The judge can determine admissibility on its own based on the evidence presented. Lake's opinion on admissibility offers nothing to the court and has the potential to confuse and mislead the jury. *See* Fed. R. Evid. 403.

Here, Lake offers opinions as to whether Nannetti is qualified to offer expert testimony and the relevance of her opinions:

- "…Cindi Nannetti, may not be qualified to offer opinions in this matter and/or has not offered relevant opinions in this matter." Lake Report 5.

- Ms. Nannetti does not provide any information that indicates that she has substantial familiarity with ATIXA and its materials. *Id.* at 9.

- I am unable to detect from the Nannetti Report or Nannetti Supplemental Report substantial expertise in reviewing the work of Title IX investigators for purposes of this matter at this stage of proceedings in federal court, even under standards for which Ms. Nannetti may have expertise. *Id.*

- Ms. Nannetti's assertion that Ms. Davis' investigation "was contrary to basic investigative standards" lacks foundation (and is made without supporting citations to so-called basic investigatory standards). *Id.* at 15.

Again, these opinions are not helpful to the Court or the trier of fact. The Court can decide these issues on its own, and by leaving the issue to the Court we avoid jury confusion and eliminate the risk of misleading the jury. For these reasons, Lake's opinions as to the admissibility of Nannetti's opinions should be excluded.

**C.    Lake's opinions challenging Nannetti's credibility invade the jury's province and should be excluded.**

"The credibility of witness testimony is a matter left to the jury and generally is not an appropriate subject for expert testimony." *Wilson v. Muckala*, 303 F.3d 1207, 1218 (10th Cir.

6

2002); *see also Robles v. Agreserves, Inc.*, 158 F. Supp. 3d 952, 992 (E.D. Cal. 2016) ("The credibility of witnesses (both lay and expert) and the weight to be given the evidence are issues for the trier of fact."); *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014); *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2021 WL 1209302, at *3 (D. Ariz. Mar. 31, 2021). Yet, the Lake Report endeavors to opine on Nannetti's credibility as follows:

- I am concerned that Ms. Nannetti may have an interest in this matter, may be biased in favor of a party in this matter, and/or may be biased implicitly, or otherwise, in favor of using criminal justice prosecutorial or investigative standards when respondents are accused of sexual misconduct in an educational setting on a university campus. Lake Report at 6.

- Ms. Nannetti's heavy reliance on ATIXA materials, perhaps because of aligning motivationally with those materials as opposed to having foundational knowledge of them, might indicate a pro-respondent bias in Title IX matters in the Nannetti Report and Nannetti Supplemental Report. I am also concerned that Ms. Nannetti's long career in law enforcement may also indicate bias, implicit or otherwise, against University proceedings related to Title IX that relate to matters that are potentially crimes potentially suitable for criminal investigation and prosecution. *Id.* at 21.

- I am concerned that by equating "victim" with "women" might suggest Ms. Nannetti's confirmation bias. *Id.* at 26.

Lake offers several other opinions that go to the credibility of the Nannetti Report. There is no evidence that Lake is qualified to determine credibility or what weight is to be given to the statements of individual witnesses. Expert witness credibility is the exclusive province of the jury and Lake's "opinions" on Nannetti's credibility should be excluded.

**D. Lake's rebuttal report attempts to opine on issues outside the scope of rebuttal.**

Lake offers several opinions are not proper rebuttal in what purports to be a rebuttal report. Lake Report at 3-4 ("I have been asked by ABOR to review the Expert Report of Cindi Nannetti dated July 2, 2021 (Nannetti Report), and the one-page Supplemental Expert Report of Cindi Nannetti dated July 23, 2021, (Nannetti Supplemental Report) and offer my

7

expert opinions in response."). But a rebuttal report must contradict or rebut the same subject matter identified by another party under Rule 26(a)(2)(B) or (C). *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). The "same subject matter" requirement is interpreted narrowly. *Vu v. McNeil-PPC, Inc.*, No. CV 09-1656-ODW-RZX, 2010 WL 2179882, at *3 (C.D. Cal. May 7, 2010). "Rebuttal experts cannot put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Int'l Bus. Machines Corp. v. Fasco Indus., Inc.*, No. C-93-20326 RPA, 1995 WL 115421, at *3 (N.D. Cal. Mar. 15, 1995); *see also Armer v. CSAA Gen. Ins. Co.*, No. CV-19-04402-PHX-DWL, 2020 WL 3078353, at *5 (D. Ariz. June 10, 2020), reconsideration denied, No. CV-19-04402-PHX-DWL, 2020 WL 3574525 (D. Ariz. July 1, 2020)). And rebuttal reports are necessarily more limited than an affirmative report under Rule 26(a)(2)(B), and if the rebuttal exceeds the scope of the Rule, it is subject to exclusion. *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060-61 (9th Cir, 2005); *Peals v. Terre Haute Police Dep't*, 535 F.3d 621, 630 (7th Cir. 2008); Dkt. 67 at 3-4.

Here, Lake's opinions are not tied to the Nannetti Report, which is limited in scope to: (1) whether the investigation into the sexual misconduct allegations levied against Doe was fair and impartial, (2) whether there were any errors or flaws in the investigation, and (3) whether the investigation appears to be impacted by the Start by Believing campaign at ASU. Nannetti Report at 1-2. Nannetti does not offer any opinion on Title IX standards or protocols. Lake's opinions as to Title IX standards should be excluded as non-rebuttal expert testimony. *Wong*, 410 F.3d at 1060-61; *Vu*, 09-cv-1656, 2010 WL 2179882, at *3.

The following opinions go well beyond the scope of the Nannetti Report:

- Title IX does not mandate that grievance processes as whole or initial investigations, be ideal; the fact that a final decision by a recipient of federal funding is reviewed and even overturned internally or by an external authority does not imply, or raise an inference, in and of itself, that an initial investigation was materially flawed or biased in any way. Moreover, I note that have reviewed an opinion of the Arizona Court of Appeals15 and I observe that the standard of review in that decision is not an objective standard to assess Title IX compliance. Lake Report at 10.

- Respondents, qua respondents, are entitled to a presumption of nonresponsibility in Title IX proceedings; complainants, qua complainants, are entitled to the presumption that they are not inherently lacking in credibility in Title IX proceedings simply by way of being a complainant… *Id.*

- Lake's opinions as to the "objective standards for Title IX Investigations."

Lake's opinions as to Title IX standards and protocols should be excluded as improper rebuttal.

**E.    Certain of Lake's opinions regarding facts in the case are unhelpful to the jury and should be excluded.**

Federal Rule of Evidence 702, in pertinent part, requires expert testimony to be helpful to the jury. Fed. R. Evid. 702. Lake has offered several opinions wherein he simply interprets the facts of the case and opines on their significance. But Lake has not, and cannot, show that he has anything to offer that would be helpful to the trier of fact in interpreting these facts. Even if he did have some marginal ability to assist the trier of fact in interpreting the facts, his testimony on these matters should be excluded because the "probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403.

For example, Lake offers several opinions that are nothing more than his lay interpretation of a recitation of certain "facts":

- Nothing in the materials provided to me, or in the interviews I conducted with current and former ASU operatives, indicated that Ms. Davis or any other agent of ASU was biased against Doe, including on the basis of sex. *Id.* at 9.

- Even if Ms. Davis, *arguendo*, were biased in some way against Doe, Ms. Davis was an investigator, not a decision-maker, and was therefor in no position to make a disciplinary decision, including one motivated by bias or otherwise. *Id.*

- My review of the materials provided to me, including my interview of Ms. Davis, lead me to conclude that Ms. Davis' investigation in this matter did not discriminate on the basis of sex. *Id.*

9

- As discussed infra, Ms. Nannetti faults Ms. Davis for not securing certain documents, such as the police report and accompanying SANE exam. However, Plaintiff Doe did not provide Ms. Davis with all relevant evidence in his possession. Doe had a copy of the police report and accompanying SANE exam in full—documents which contained information he now asserts might have exculpated him—yet did not provide these items to Ms. Davis during the investigation. Ms. Davis asked Doe for his copy of the police report, which contained the SANE exam report, numerous times.17 Ms. Davis did finally secure a copy of the police report from the complainant. The information provided to me, including the deposition transcript of Doe, suggests the possibility of an effort (potentially collaborative) to obstruct ASU disciplinary process. *Id.* at 10-11.

Lake's testimony interpreting the factual record is unhelpful, is likely to mislead the jury, and should be excluded. Fed. R. Evid. 403, 702.

## IV.     CONCLUSION

For the forgoing reasons, the expert opinions and testimony of Lake should be excluded.

RESPECTFULLY SUBMITTED this 22nd day of October, 2021.

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By  s/ Leonard W. Aragon
    Robert B. Carey (011186)
    Leonard W. Aragon (020977)
    rob@hbsslaw.com
    leonard@hbsslaw.com

    Attorneys for Plaintiff John Doe