Robert B. Carey (011186)
Leonard W. Aragon (020977)
E. Tory Beardsley (031926)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
leonard@hbsslaw.com
toryb@hbsslaw.com

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Doe, a single man,<br><br>Plaintiff,<br><br>v.<br><br>The Arizona Board of Regents, et al.,<br><br>Defendants. | Case No.: 2:18-cv-01623-DWL<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**<br><br>(Assigned to the Honorable Dominic W. Lanza) |

# I.    INTRODUCTION

The fact that Defendant Arizona Board of Regents ("ABOR") disagrees with the Court's Summary Judgment Order (Dkt. 209/the "Order") is not a basis for reconsideration. In its Motion for Reconsideration ("Motion"), ABOR regurgitates arguments already rejected by the Court and offers new arguments that should have been raised long ago. The Court can and should summarily deny arguments already addressed in the Order. The Court can also dismiss ABOR's "new" arguments because they are untimely and not based in law or fact.

# II.    LEGAL STANDARD

ABOR cites the standard for reconsideration, Local Rule 7.2, but does not discuss the standard. For good reason. ABOR cannot meet the standard. First, the "…Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LR Civ. 7.2(g). If a new matter is presented, the movant must give reasons why it was not presented earlier. *Id.* And no motion for reconsideration can repeat arguments already made to the Court. *Id.* The Court may deny the motion for reconsideration for failing to fulfill these mandates. *Id.*

# III.    ARGUMENT

## A.    ABOR's argument that statistical analysis is the sole evidence of gender bias is baseless.

ABOR argues that Dr. Kaufman's statistical analysis that women were treated differently than Doe is the sole evidence of gender bias. ABOR's argument is based on two false assumptions. First, that the only evidence of gender bias is Dr. Lance Kaufman's ("Kaufman") statistical analysis. Second, that the sole purpose of Kaufman's analysis is to demonstrate gender bias by showing that ASU sanctions women differently than it sanctioned Doe. This is not the case.

Doe has shown gender bias by demonstrating an egregiously flawed investigation, hearing, and decision-making process, *and* by showing statistical evidence of gender bias, as permitted by Ninth Circuit law. Dkt. 189 at II.C-D; *Schwake v. Arizona Bd. of Regents*, 967 F.3d

1

940, 950 (9th Cir. 2020). And Kaufman's analysis extends much further than merely showing that women are sanctioned differently than Doe. Regarding disparate treatment, Kaufman opines:

1. Males are found to have violated F-15 and F-23 of the Student Code of Conduct at a higher rate than females charged with F-15 and F-23 violations. This difference is statistically significant.

2. Males receive severe sanctions of expulsion and suspension at a higher rate than females charged with the same violations. This difference is statistically significant.; and

3. F-23 incidents involving male complainants result in less severe sanctions. This difference is statistically significant. Dkt. 159, Ex. 1 at 5.

Through Kaufman, Doe demonstrates ASU's pattern of treating men and women differently: (1) **in its charging practices**—despite the statistically different gender-based outcomes, there is no evidence men commit "Sexual Misconduct" as defined by ABOR in F-23 or drink alcohol at higher rates than women. Dkt. 159-2 at 8-10; (2) **in its sanctioning practices**—ASU has a practice of sanctioning men more severely for F-23 *and* F-15 violations.[1] Kaufman Report at 5. While there is a factual dispute whether the F-23 comparators are accused of comparably serious acts, there has been no dispute as to whether alcohol violations are all comparably serious, and the Court properly left the factual dispute regarding F-23 for the jury; and (3) **in sanctioning F-23 respondents when the complainant is male.**[2] Kaufman's opinions are based on reliable data and an undisputed scientific methodology, and when combined with evidence of irregularities in the disciplinary

[1] During oral argument, the Court asked the relevance of Kaufman's opinions regarding F-15 given that Doe is not seeking damages for F-15 findings. Ex. B 98:1-101:1. These opinions are a key element of Doe's statistical evidence because they demonstrate gender-biased charging and sanctioning practices under circumstances where "severity" is controlled and where the evidence shows men and women drink at the same rate. Dkt. 159-2 at 10.

[2] ABOR claims Kaufman's findings regarding ASU's sanctions when the complainant is male are unreliable pointing to a single instance where an allegation of sexual misconduct by an allegedly male complainant resulted in expulsion. Dkt. 159 at 10. This information is not contained in the interrogatory responses from ABOR. It comes from the unreliable Title IX Spreadsheet, *see* analysis *infra.*, and the only evidence ABOR presents of the complainant's sex is the use of a gendered pronoun found in the unreliable Title IX Spreadsheets.

1  process are sufficient to show gender bias. *Schwake*, 967 F.3d at 950.

2      **1.**    **The Court's Order is not contrary to Ninth Circuit case law.**

3          ABOR argues that the Court's reliance on *Schwake* and *Doe v. Regents of the Univ. of Cal.*,

4  23 F.4th 930 (9th Cir. 2022) is manifest error because both cases arise in a motion to dismiss

5  context.[3] This argument is misguided. The Court's reliance on these cases for the

6  proposition that statistics can be relied upon in a Title IX context is not manifest error. And

7  *Schwake* sets the standard for proving a Title IX claim in the Ninth Circuit. 967 F.3d at 946-

8  47 (rejecting the erroneous outcome and selective enforcement tests in favor of a "far

9  simpler standard"—namely, whether "the alleged facts, if true, raise a plausible inference that

10  the university discriminated against the plaintiff on the basis of sex."). ABOR's argument is

11  baseless.

12      **2.**    **The Court did not err in considering Kaufman's expert opinion to reach its decision.**

13          ABOR contends that in holding that ABOR's challenges to Kaufman's testimony

14  were issues for cross examination and not exclusion, the Court "abdicated its gatekeeping

15  role." Mot. at 5-7. Wrong. Implicit in the Court's Order, is that Kaufman's proffered

16  opinions are reliable. Kaufman is a qualified statistician and economist (whose qualifications

17  were not challenged by ABOR) who relied on sound principles and data. Additionally, the

18  Order referenced in ABOR's Motion is the Court's Order denying summary judgment. The

19  Court more fully analyzed the reliability (and relevance) of Kaufman's claims in its tentative

20  ruling on the Parties' *Daubert* motions. Dkt. 210 at 15-33. To the extent ABOR argues the

21  Court should have more fully addressed the reliability of Kaufman's claims in its summary

22  judgment Order, this is improper. When addressing reliability in the Summary Judgment

23  Order, the Court need only rule on arguments asserted by ABOR in that motion and need

24  not resolve additional issues raised in the *Daubert* motion Dkt. 209 at 57-59.

25          ABOR also argues the Court erred in citing *Earl v. Nielsen Media Rsch., Inc.*, 658 F.3d

26  1108, 1113-16 (9th Cir. 2011), because *Earl* raised a triable issue of fact as to pretext, not a

---

[3] ABOR's argument that *Schwake* is a motion to dismiss case was already argued and rejected in its MSJ Reply. Dkt. 201 at 4, 11.

*prima facie* case of discrimination. Mot. at 6, n. 4. This argument is misplaced. The Court uses a "*cf.*" cite when invoking *Earl*. A "*cf.*" cite indicates the "[c]ited authority supports a proposition different from the main proposition but sufficiently analogous to lend support." *The Bluebook: A Uniform System of Citation* R. 1.2(a), at 59 (Columbia Law Review Ass'n et al eds., 20th ed. 2015). By using a "cf." cite, the Court indicated that it understands that *Earl* is a pretext case but found is sufficiently analogous to lend support to the Court's findings here. The Court's citation to *Earl* was proper.

ABOR also claims that *Earl* is inapposite because Kaufman did not identify specific comparators. Mot. at 6. This is untrue. For comparison Kaufman identified ASU students charged with F-23 "Sexual Misconduct" and F-15 alcohol violations between the years 2012-2017. Dkt. 159 at Ex. 1 (Kaufman Report) at 5-13. To the extent ABOR argues *Earl* is inapposite because these respondents are not similarly situated, its reasoning is circular, and comparability is an issue for the jury. *Rodriguez v. Chertoff*, No. CIV 05-546-TUC-CKJ, 2008 WL 11338899, at *10 (D. Ariz. Mar. 31, 2008); *Rodriguez v. Wash. Metro. Area Transit Auth*, No. CV 19-3710 (JEB), 2021 WL 3722729, at *8 (D.D.C. Aug. 23, 2021).

ABOR also contends that *Currier v. United Technologies Corp.*, 393 F.3d 246 (1st Cir. 2004), is inapposite because the trial court in *Currier* did not know the full scope of the opposing party's objection until after trial. Mot. at 6. But that comment refers only to the first of defendant's two arguments in *Currier* and the Court's Order her focused on the second argument. *See* 393 F.3d at 251-53; Dkt. 209 at 58-59. The defendant's second argument—that plaintiff's "analysis was meaningless because it failed to take into account the wide differences in circumstances among the terminated employees"—was rejected by the court. *Id.* This argument, rejected in *Currier*, is nearly identical to ABOR's argument regarding Kaufman's analysis and arises in a disparate treatment context. *Id. Currier* is on point.

ABOR cites *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1218-19 (9th Cir. 2021) and *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) to argue that the Court should assess the comparable seriousness of the acts of the respondents analyzed by Kaufman. Mot. at 7. Because these cases were published before briefing was complete and there is no explanation why they

1   were not cited earlier, this argument is not a proper ground for reconsideration. L.R.Civ. 7.2.

2   The Court, moreover, did assess comparability and found that a jury could find "female

3   students 'accused of sexual misconduct' would qualify as 'similarly situated students' who

4   had 'been accused of comparable misconduct' in a case involving a Title IX claim brought by

5   a male student." Dkt. 209 at 56 (citing *Austin v. University of Oregon*, 925 F.3d 1133, 1138 (9th

6   Cir. 2019)).

7          ABOR's interpretation of *Freyd* is misguided. The *Freyd* court did *not* hold that it is

8   required to determine whether comparators were similarly situated but rather left that

9   determination to the fact finder when the comparators were a juror could find them to be

10  similar. *Freyd*, 990 F.3d at 1220-22 (leaving decision to juror whether comparators held the

11  same job). The *Freyd* court, however, ultimately held that she produced insufficient evidence

12  to make a prima facie case of disparate treatment under the Equal Pay Act because there was

13  no evidence the similarly situated individuals outside her protected class were treated

14  differently—they were paid differently because they negotiated retention raises and plaintiff

15  did not. *Id.* at 1228-29. This holding has no application here.

16         Similarly, in *Moran* the plaintiffs did not even play in the same leagues as their

17  comparators. 447 F.3d at 755. Here, there is no quantitative difference in the similarly

18  situated comparator, all students were accused of sexual misconduct as defined by the

19  University. Plaintiff compares hundreds of ASU students, all accused of violating the same

20  sections of ASU's Code of Conduct—F-23 and F-15.[4] A reasonable juror could conclude the

21  F-23 and F-15 comparators are similarly situated *and* that there is evidence of discriminatory

22  intent—this factual issue must go to the jury.

23         ABOR contends Kaufman should have considered the Title IX spreadsheets ("TIX

24  Spreadsheets") to determine whether all F-23 recipients were accused of acts of comparable

25  seriousness relying on *Pottenger v. Potlatch Corp.* to support this contention. *Pottenger* was

26

27  [4] Notably, ABOR ignores that the F-15 analysis shows discriminatory practices in charging
    and sanctioning practices in undisputedly comparable violations of the student Code. Indeed,
28  the only evidence is that the men and women drink at the same rates. Dkt. 159-2 at 10.

1   published in 2003 and was available to ABOR at the time of briefing. This argument is not

2   proper grounds for reconsideration. L.R.Civ. 7.2(g)(1). Additionally, *Pottenger* is inapposite. In

3   *Pottenger*, the statistical expert had multiple data points available to him and only endeavored

4   to consider two. 329 F.3d 740, 748 (9th Cir. 2003). Also, the data in *Pottenger* provided a clear

5   ranking system for assessing the performance of all employees. *Id.* at 743-44.

6        Here, Doe's statistical expert considered the TIX Spreadsheets and concluded the

7   data was unreliable for three reasons. Dkt. 188-2 ¶ 4. First, the TIX Spreadsheets do not

8   rank allegations of sexual misconduct according to severity or otherwise indicate any

9   distinction in severity between various acts of sexual misconduct. Dkt. 188-2 ¶ 5; *see also* Dkt.

10  227-1 at Ex. 4. Second, the TIX Spreadsheets are incomplete—they are missing 56 unique

11  IR numbers.[5] Ex. A (list of missing IR numbers). Thirty-one of those entries may be missing

12  because ABOR did not produce TIX Spreadsheets for the 2012-2013 school year, Ex. B at

13  73:12-18, but 25 of those entries are from the years 2015 and beyond, without any

14  explanation as to why. Ex. A.[6] Extrapolating from the incomplete TIX Spreadsheet data to

15  all incidents on the F-23 Spreadsheets is only reliable if the Title IX Case Tracking cases

16  were randomly sampled from the full incidents reflected on the F-23 Spreadsheets; where, as

17  here, the cases were not randomly sampled there is no reliable method of drawing

18  conclusions about the population from the data. Dkt. 182-1 ¶ 6. Third, the descriptions

19  provided in the TIX Spreadsheets were inconsistent, with some being lengthy and detailed

20  and others being short and non-descript, and any information drawn from the descriptions is

21  subjective, biased, and inherently unreliable. *Id.* ¶ 5. Fourth, gender is not reliably reported in

22  the TIX spreadsheets. To determine the missing genders from the TIX Spreadsheets, one

23

24  [5] ABOR claimed at oral argument that Kaufman's statements regarding the completeness
    were untrue because his declaration stated they were limited to one year. Ex. B at 73:12-18.
25  By ABOR's own admission, the TIX Spreadsheets are still missing a full school year of data.
    *Id.* Despite any errors in Kaufman's declaration, the issues with reliability stated therein
26  persist; 10% of the F-23 incidents are not in the TIX Spreadsheets.
27  [6] When ASU prepared the F-23 spreadsheets for production in response to its sworn
    interrogatories, it included an incident description but ABOR's counsel removed this column
28  without explanation. Dkt. 181-1, Ex. A (Sablan Dep.) at 14:22-17:17; 18:4-21:21.

would have to infer the gender by combing for gendered pronouns in the incident

descriptions which are used inconsistently and unreliably therein. Dkt. 210 at 23.

The data in the TIX Spreadsheets is a far cry from the reliable, complete, ranked, and

usable data of *Pottenger*. *Pottenger* noted that if the plaintiff had had access to only two

[ostensibly reliable] variables "that would be a different case." 329 F.3d at 748. This is that

different case. Kaufman cannot be required to rely on unreliable data. Cf. *Ollier v. Sweetwater*

*Union High Sch. Dist.*, 267 F.R.D. 339, 341 (S.D. Cal. 2010), aff'd, 768 F.3d 843 (9th Cir.

2014) ("Opinions derived from erroneous data are appropriately excluded."). In rejecting the

use of the TIX Spreadsheets in favor of the complete set of data sworn by ABOR to be

accurate in its interrogatory responses, Kaufman preserved the reliability to his analysis.

Dkts. 188 at 12; 188-2 at 1.

Finally, ABOR argues the Court manifestly erred by "fail[ing] to consider" evidence

demonstrating that Kaufman failed to consider prior violations. Mot. at 7-8. Untrue. ABOR

raised this for the first time at oral argument claiming the information was available to

Kaufman. Mot. Ex. 1, 58:12-16. But no evidence of prior violations has been produced in

this case. As ABOR's own case law suggests, a statistician can only be required to rely on the

evidence in front of him or her. *Pottenger*, 329 F.3d at 748.

### 3. The Court did not overstep its role by considering how ASU drafted its own student code to reach its decision.

ABOR contends that in finding that ASU's "definition of 'sexual misconduct' is a

definition both created and used by ASU, which suggests that that ASU has already decided

it unifies a population of similarly situated respondents in some respect" that the Court

made an erroneous conclusion. Mot. at 7. ABOR claims the Court's conclusion is based on

an argument Doe did not make and, that it is a manifest error because the "Court does not

cite evidence supporting its supposition." *Id.* Both these claims are false.

First, that ASU grouped all F-23 conduct together by definition in its own student

handbook is a fact established by evidence presented by ABOR. Dkt 155-2 (University

Handbook) at 57 ¶ 23; Dkt. 188 at 2-3 (citing Dkt. 141 Ex. 5 at Response 6, 9). Doe

unambiguously argued in his opposition to ABOR's motion to exclude Kaufman that "[t]he

data produced by ABOR categorizes all F-23 charges into a single category of sexual misconduct." Dkt. 188 at 7. As the Court correctly noted, Kaufman identified sexual misconduct cases *as defined by ASU*. The entire premise of Kaufman's analysis and Doe's argument is that by definition all students charged with F-23 violations under ASU's Code *are* similarly situated. *Id.* There is no requirement a Court recite a party's argument verbatim.

The cases cited by ABOR on this point are inapposite. *Independent Towers of Wash. v. Wash.* has to do with the forfeiture of issues on appeal where the appellant submitted "bullet points of statutes" without legal analysis. 350 F.3d 925, 929-30 (9th Cir. 2003). Similarly, the *Bias v. Moynihan* appellant "failed to present *any* evidence to support her opposition. 508 F.3d 1212 (9th Cir. 2007)) (emphasis added). Both cases stand for unremarkable proposition that a court is not required to manufacture arguments on behalf of litigants. Neither addresses the present circumstances where the evidence is properly submitted to the Court. *See Hiken v. Dep't of Def.*, 836 F.3d 1037, 1046 (9th Cir. 2016) (declining to extend *Indep. Towers*).

ABOR also claims the Court's finding regarding ASU's definition is untrue. Mot. at 8-9. While it is undisputed that ASU drafted the Code, ABOR claims that types of conduct are grouped by severity *Id.* This is belied by the record, which shows that all sexual misconduct allegations against Doe were grouped together under a single section of the Code. Dkt 155-2 at 57 ¶ 23; Dkt. 189-2 at 16 (grouping all F-23 charges in the initial letter to Doe); Dkt. 155-2 at 72 (Hightower decision letter grouping together all violations of F-23). ABOR argues for the first time that Kaufman should have limited his analysis to "only those students alleged to have violated [F-23(a)]." First, this argument has been waived. *See Rinestone v. Enter. Bank & Tr.*, No. CV 11-02381-PHX-NVW, 2012 WL 12874293, at *1 (D. Ariz. May 30, 2012) (reconsideration will not be granted for the error of counsel). Second, ABOR does not present any evidence supporting its conclusory argument that these subsections are grouped by severity.[7] And to the extent that ABOR implies that it differentiates between these

---

[7] ABOR argues the Order will incentivize universities to "endure the unnecessary expense of redrafting their codes of conduct." Mot. at 9, n. 9. Revisions to the code that clarify the alleged differences in severity of conduct and, as ABOR contends, range of sanctions available would benefit students and Title IX investigators alike.

"subsections" in its charging practices, ASU made no such differentiation when it notified Doe of the charges against him, Dkt. 189-2 at 16, or when it notified Doe of the SRR decision. Dkt. 155-2 at 72.

As to ASU's later indications to Doe that subsections B and C were not at play, this does not amount to evidence that students accused of sexual misconduct were not similarly situated to Doe. Notably, ABOR still does not endeavor to rank the seriousness of acts of sexual misconduct along these lines. Nor can it. Each subsection includes a range of behavior. For example, subsection A includes allegations of touching a clothed person's derriere and sex by force.[8] Mot. Ex. 4 line 86; Dkt. 155-2 at 53 ¶ 17(a). And these subsections cannot be quantified as more or less severe than each other. For instance, persistent sexual harassment that creates a hostile environment (subsection B) could certainly rise to or past the level of seriousness of non-consensual sexual touch in subsection A. ABOR's contention that ASU grouped sexual misconduct by acts of comparable seriousness is not supported by the evidence.

Viewing the facts presented in the light most favorable to Doe, as the Court must, supports a conclusion that a jury can find that ASU chose to unify all acts of sexual misconduct when it decided to define them as a single F-23 offense. The Court did not err.

### 4.        The Court did not improperly shift the burden of proof.

ABOR claims the Court improperly shifted the burden of proof to ABOR by finding that there is "no evidence that the distribution of violations is actually skewed along gender lines" in the manner suggested by ABOR. Mot. at 8-9. Not so. Plaintiff met its burden by presenting opinions of a qualified expert who used reliable methods and data to present opinions that will help the trier of fact. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). In pertinent part, ABOR attacked the reliability of Kaufman's analysis by claiming the analysis is incomplete because he did not review the TIX Spreadsheets to group the

---

[8] At oral argument, the Court classified subsection A as referring to "penetration and the type of allegations at issue in this case." Ex. B at 97:1-2. But subsection A encompasses all manner of non-consensual touching including brushing up against another's sex organs. *E.g.,* Mot. Ex. 4 l. 86.

comparators by allegations of "comparable seriousness." Dkt. 159 at 5-6. After finding that comparable seriousness is a question for the jury, the Court construed the facts available in the light most favorable to Doe, noted there was no evidence the allegations were not comparable, and left the factual dispute for the jury. Dkt. 209 at 56-60. There has been no improper burden shifting here.

     **5.**    **ABOR's new "evidence" does not demonstrate error in the Court's finding that Kaufman's opinions are reliable.**

For the very first time, ABOR presents what it contends is evidence that the relevant acts of sexual misconduct committed by female students are not comparable. Mot at 9-10, Ex. 3. This information has always been available to ABOR, ABOR has not provided any reason why it could not have presented these materials in its briefing, and Plaintiff's response to ABOR's motion to exclude Kaufman unambiguously addressed this point. Dkt. 188 at 7-8. As such, this "evidence" is not a proper ground for reconsideration. L.R. Civ. 7.2(g)(1).

The chart created by ABOR's counsel includes summaries of incident descriptions that are over-simplified and ostensibly intended to demonstrate a factual dispute—that the acts of sexual misconduct committed by female comparators are less serious in nature than the acts committed by Doe. But Kaufman demonstrates unfair treatment of men across all F-23 incidents, not any single incident. Whether Kaufman used comparable comparators is an issue for the jury, and the chart from ABOR's counsel showing alleged differences in individual cases is irrelevant or, at best, an issue to raise at cross. *See* analysis Section III.A.2. ABOR still does not quantify the severity of this behavior. The chart also demonstrates a pattern of unfair treatment. ABOR cites two instances of female respondents touching another's secondary sex organs who were charged with "sexual harassment" while a male respondent who engaged in the same behavior was charged with sexual violence/non-consensual sexual contact. *Compare* Mot. Ex. 3 ll. 7, 8 *with* Ex. 4 l. 86. It also demonstrates the incompleteness of the TIX Spreadsheets as the first incident listed in the exhibit predates the TIX Spreadsheets and thus contains no incident description and the second incident contains no details regarding the allegations at all. Mot. Ex. 3 ll. 1-2. At best, ABOR demonstrates issues it can raise on its cross-examination of Kaufman; it does not prove his

methodology, analysis, or data to be unreliable.

**B.      Relying on the egregious procedural irregularities by ABOR was not error.**

ABOR alleges the Court committed "manifest error" by identifying three procedural irregularities that "…are either not irregularities at all, or they are harmless and, by definition, cannot create a genuine issue regarding gender bias." Mot. at 9. This argument fails for three reasons: (1) the procedural irregularities identified by the Court are irregular and harmed Doe, (2) the Court identified three additional procedural irregularities in its tentative but found that the Court need not consider the additional irregularities because there was already sufficient evidence to deny the Motion for Summary Judgment. The additional irregularities contained in the tentative support the Court's decision and is an independent reason to deny the Motion for Reconsideration; and (3) ABOR is attempting to re-argue issues that were already rejected by the Court and there is no reason ABOR could not have raised its "new" arguments earlier.

**1.      Additional evidence of procedural irregularities.**

ABOR claims the Court found only three procedural irregularities to support its findings and attacks those findings in its Motion. Mot. at 10. Wrong. Putting aside ABOR's baseless argument that the three irregularities were not irregular or, if irregular, harmless, *see* analysis at III(B)(2-4), *infra*, the Court also recognized: "Doe's summary judgment brief identifies three additional alleged procedural irregularities that were not addressed at the motion to dismiss stage…." Dkt. 209 at 47. The parties dispute whether the additional irregularities were properly disclosed—they were—but the Court found it did not need to consider the irregularities because it already found that "Doe has validated the existence of several properly disclosed irregularities." The Court did not reject the additional procedural irregularities, it simply determined it need not consider them.

The Court's tentative order (Dkt. 206), however, found that three additional procedural irregularities were supported by the evidence: (1) ASU's failure to interview Art Martori and other witnesses in the athletic department as requested by Doe; (2) ASU interviewing Roe's witnesses, including a non-percipient witness, early in the investigation

without ever interviewing Doe's witnesses; and (3) the failure to address Roe's inconsistent testimony. Dkt. 206 at 44-51. These inconsistencies were known to Defendants and support Doe's claims. *See, e.g.,* Dkts. 155-1 at 115-23; 155-10 at 88; 155-1 at 65-126; 118-1 at 270-72; 37 at ¶¶ 157, 175, 196. As such, there are additional procedural irregularities supporting the Court's decision—an independent basis to deny the Motion.

**2.      The December 21, 2022, review of the investigative report.**

ABOR makes four arguments to support its claim the Court committed manifest error regarding Doe's December 21, 2022 review of the investigative report: (1) there was no new information provided by Roe when she met with the University's investigator; (2) even if the information was new, ASU let Doe respond when he requested to do so as required by the procedures; (3) Doe was not harmed because he was given an opportunity to respond; and (4) the Court improperly assumed Doe's role. Each argument is easily dismissed.

First, ABOR mischaracterizes and ignores the Court's holding. The Court held it was a procedural irregularity that Roe met with the University's investigator, gave new, substantive information, and Doe was not given an opportunity to respond. Mot. at 37-38. The Court's holding is based on *all* substantive information provided at the meeting. ABOR points to *examples* the Court identifies and claims that is the only new information provided by Roe. This is incorrect based on the plain language of the Court's holding. The Court found that when the University's investigator met with Roe on December 11, 2016, to review and respond to a letter written by Doe's counsel, "Roe made a *variety of statements about the underlying incident*." Dkt. 209 at 37 (emphasis added). The Court then held: "The Court agrees with Doe's contention that a reasonable juror could construe *these statements as new, substantive information*." *Id.* at 37 (emphasis added). The Court by using the plural and citing to the entire letter was referencing all new, substantive information provided by Roe about the underlying incident during her meeting with Davis.

The Court then went on to give *examples*: "For example, Roe repeatedly stated in her December 11, 2016, comments that she was "too intoxicated" during the sexual encounter to be 'aware of what was going on" and did "not remember what happened.'" *Id.* at 37-38

(citing Dkt. 155-1 at 94, 104). The Court did not say these are the only substantive statements made by Roe when she met with Davis to counter the statements in Doe's letter with new information. The Court merely gave examples to support its findings.

Second, ABOR argues that the information identified by the Court was already known to Doe based on statements given at previous interviews. This is incorrect. With respect to Roe's claim that she did "not remember what happened," she also claimed she never admitted to knowing what was happening during the encounter, she denied being the one to call a friend to pick her up, claimed she was unable to speak after the incident, she was even more drunk after she left the room, and that her "hand is empty" in the screenshot in which she is depicted grasping Doe's penis. Dkt. 155-1 at 99-114. This is new and substantive information. In past interviews she may have claimed she could not remember certain details, but then regaled interviewers with details, including details that contradict her statements to the ABOR in December 2016. *See* Dkts. 209 at 38; 155-1 at 66; 189-2 at 32-34.

With respect to her statement that she "did not say 'stop' because she was too intoxicated," that statement contradicts previous statements she made to the police where she "told them to stop because it was hurting" *and* previous statements to ASU that she told them to stop but they did not. *Id.* at 38 (citing Dkts. 189-2 at 49 (inconsistent statement to police) and 155-1 at 68 (inconsistent statement to the University). This new narrative, that she was too drunk to stop the sex and never said anything, is a new, contradictory statement that is inconsistent with her previous statements to the police and ASU.

With respect to Roe's claim "she was not aware that a photo was taken," ABOR claims it is not new information and that there was uncertainty that a photo was taken. But there was no uncertainty. Roe told police that pictures were taken the morning after the incident. Mot. at 13 (citing 4/3/16 Interview Transcript (Ex. 6) ("They took pictures.")). In contrast, the investigate report discussing the meeting with Roe states, "Jane Roe also stated that she was *not aware that a photo was taken*, but remembers seeing a flash and being told…to not worry about it." The statement that she did not know that a photo was taken is new, substantive information even if she had previously made similar inconsistent statements in

the past. And to the extent there is ambiguity as to whether the statement is new and substantive—and there is none—the facts must be construed in favor of the non-movant.

Third, ABOR claims Davis did not violate any Procedure when she lied to Doe and said that Roe did not provide new, substantive information and did not give Doe an opportunity to respond to the information. As a threshold matter, there is no reason ABOR could not have raised this argument earlier and it should be summarily denied.[9] And while ABOR does not need to use any specific language when conveying to a party that no new information was received from the complainant, ASU cannot lie and say no new evidence was offered. Dkts. 164-1 at 4; 155-2 at 41; 155-4 at 71 at 55:13-19. Doe, moreover, asked to respond to any new information provided by Roe *before* she met with the investigator in December, but the request was ignored, a clear violation of the Procedures. Dkts. 155-1 at 115, 155-2 at 64 at C.5. Doe was also not allowed to review the information until his attorney intervened, another violation of the procedures. *Id.*

Fourth, ABOR claims that Roe's new statements were harmless. This is false. The *first* irregularity is that Doe was not given an opportunity to respond to new, substantive information and the *second* irregularity is that when Doe was given an opportunity to respond, his response was ignored by ABOR. The first irregularity is not harmless because Doe was forced to use an attorney to secure the procedural right to respond. Again, Doe had already asked to respond to all new information and was told that he would be permitted to do so. Dkt. 155-1 at 115. This was false as his prior request went unfulfilled until his attorney intervened and requested to review the new information a second time. *Id.* It is also an irregularity that did not "favor" Doe as ABOR argues. The second irregularity is that ABOR ignored Doe's response to the new information as illustrated by ABOR finding that Doe engaged in sex with a person who was incapacitated, a finding no reasonable mind can make based on the evidence. *Doe v. ABOR*, 2019 WL 7174525, at *6 ¶¶ 19-31. This is not harmless.

---

[9] ABOR misrepresents the record by stating the Court "originated" this argument. Doe argues this in his Response to the Motion for Summary Judgment. Dkt. 189 at 3, 15-16.

ABOR's caselaw is inapposite. In *Doe v. Univ. of S. Ind.*,[10] the respondent alleged procedural irregularities because he was not given an opportunity to respond to the complainant's response to his appeal. But the university did not consider the untimely response on appeal. The court held it is not a procedural irregularity to not let the respondent address something that was not considered. Here, Roe's statements were considered and incorporated into the investigator's findings. The other "irregularities" in *Doe v. Univ. of S. Ind.* were evidentiary based testimony and documents that the complainant offered to support his case. The court held it is not procedurally irregular to allow testimony offered by the plaintiff. *Id.* (describing the testimony as invited errors). Here, there are no invited errors. The other cases cited by Defendant are equally inapposite.[11]

Last, ABOR argues the Court improperly assumed Doe's burdens. Nonsense. The Court's holding was that Roe gave new, substantive information at the meeting and it was procedurally irregular to not let him respond. Doe made this argument in his briefing and at oral argument. Dkt. 189 at 15-16; Ex. C at 73:23-75:3. And Defendant refuted these points ad nauseum at the oral argument. Ex. C at 19:1-39:12. As such, there was no error.

### 3.    ABOR's failure to disclose that Doe was being accused of sex by force.

ABOR argues that the Court committed an "error of law" by "concluding ASU did not provide Doe notice that he was being charged with 'sex by force' and that his failure was a procedural irregularity." Mot. at 13. This claim is easily dismissed. First, the argument that ABOR properly disclosed the force charge and Doe knew there was a force charge was explicitly raised in the summary judgment briefing and rejected. Dkt. 209 at 41.

Second, the Court did not "conclude" that ASU did not provide Doe notice that he was being charged, that is the role of a jury. The Court instead (appropriately) held: "A

---

[10] 43 F.4th, 784, 795-96 (7th Cir. 2022).

[11] *Doe v. Case W. Reserve Univ.*, 1:17 CV 414, 2019 WL 1982266, at *11 (N.D. Ohio May 2, 2019), aff'd, 809 Fed. Appx. 276 (6th Cir. 2020) (complainant's alleged harm was based on mere speculation or clear compliance with the procedures without being forced into compliance by an attorney); *Doe v. Washington & Lee Univ.*, 6:19-CV-00023, 2021 WL 1520001, at *12 (W.D. Va. Apr. 17, 2021) (no discussion of harmless error).

reasonable juror could conclude that UHB's decision to find Doe responsible under a sex-by-force theory constituted a procedural irregularity." Dkt. 209 at 42. This is true because the Student Disciplinary Procedures ("Procedures"), require the Dean of Students to "notify the student in writing of the alleged violation and initiate the investigation." *Id.* (citing Dkt. 155-2 at 64). The Dean is also required to provide all parties "an explanation of the charges which have been made." *Id.*

Here, Doe presented evidence that he was charged with Sexual Misconduct under F-23, and that the *explanation*, required by the Procedure, for the charge was that he had sex with Roe while she was incapacitated and therefore could not provide consent. There was no explanation that his sexual assault charge was also premised on Doe engaging Roe in sex by force. The Court properly found that the UHB's determination that Doe engaged in sex by force, without ever being told this was an alleged basis for the charge, is a procedural irregularity that can go to the jury. Dkt. 209 at 42.

ABOR conflates the charges, a violation of F-23, with the failure to explain how Doe violated F-23, as required by the Procedures. Dkt. 209 at 42 (explaining that "a reasonable juror could conclude that a passing citation to a broadly defined category of offenses does not qualify as an "explanation of the charges which have been made," as required by the procedures.") (citing Dkt. 155-2 at 64). The parties agree that Doe was "charged" with "Sexual Misconduct" under F-23. But the Dean of Students was required to explain those charges, and she did: by explaining that Doe was being accused of engaging in sex with a person who incapacitated. *See* Dkt. 209 at 42 (citing Dkt. 189-2 at 16-17).[12]

The letter from Doe's counsel sent on December 9, 2016, merely confirmed that sex by force was not at issue. Dkt. 189-2 at 68. It states, "No force was used. [Roe] confirmed

---

[12] ABOR argues that charges "refers to the provision of the Code being investigated" and no more explanation is needed. Mot. at 14-15. This is repugnant to the Procedures' plain language which requires an "explanation of the charges which have been made." Dkt. 155-2 at 64, C (1) and (C)(4)(a). ABOR also claims there is no requirement for a detailed description of each sexual misconduct theory. What is required is an explanation of the charges, which necessarily requires an explanation of how F-23 was violated. *Id.*

this in the one-party consent call." *Id.* The Dean of Students never contested this statement and never stated that force was an issue. The next 13 pages of the letter, other than the tiny paragraph confirming that force was not at issue, explains why there was insufficient evidence to find that Roe was incapacitated or that Doe knowingly engaged in sex without consent—the only disputed issues. *Id.* at 68-81. The Court properly found there is sufficient evidence for a jury to find that the decision to find Doe responsible for sex by force without notice constituted a procedural irregularity.

Third, ABOR argues the "Court's analysis is…inconsistent with its conclusion regarding Doe's 'statistical anomalies' argument." Mot. at 14. This is incorrect; the Court's analysis supports the argument. ASU, as confirmed in its Motion for Reconsideration, treats all F-23 violations the same. *See id.* ("…all evidence indicates that notification of the charge means notification of the code violation at issue."); *see also* Section III.A.3 *supra*. The mere fact that the University should explain to students how they violated F-23—and did not do so here with respect to allegations of force—does not change the fact that they all engaged in Sexual Misconduct, as defined by the University, and a reasonable juror can find the comparators are similarly situated.

Fourth, ABOR argues that the failure to inform Doe he was being charged with rape by force was harmless. This frivolous argument illustrates ABOR's egregious conduct. Doe never had an opportunity to refute the charges because he was not given notice that he was being accused of sex by force and ASU did not present a sex by force charge at the hearing. Dkt. 189 at 13-14; Ex. C at 75:19-76:1 Yet, Doe was found guilty of sex by force, expelled, and branded a rapist without evidence. Based on the University's actions, Doe lost his right to continue wrestling at the University and was completely banned from campus, which means he was unable to train at the State's only elite wrestling facility and lost his job teaching kids at the training center. Dkt. 188-1 at 273-74 ABOR argues, without a citation to authority, that this is harmless because he was also found guilty (without evidence) of sex with someone who was incapacitated. This argument is absurd. The harm from the two findings cannot be separated, and a reasonable juror can find that labeling Doe a rapist,

17

1   without evidence, was not harmless.

2          Last, ABOR argues it moved for summary judgment on causation. It did not. ABOR

3   conflates causation—that the sex bias caused Doe's harm—with the argument that there is

4   evidence of sex bias. Mot. at 14 (citing Dkt. 155 at 18) (ABOR admitting that the only issue is

5   whether "Doe can 'come forward with actual evidence of gender bias.'"). The Court already

6   rejected ABOR's argument that Doe must show that a specific irregularity was the cause of

7   an erroneous outcome, and ABOR has presented no reason to reconsider that issue now.

8   Dkt. 209 at 43 (relying on the Ninth Circuit's decisions in *Schwake* and *UCLA Doe*, *supra*).

9          **4.       The Arizona Court of Appeals' findings.**

10          ABOR argues the Court committed manifest error by finding the ACOA's decision is

11   evidence of a procedural irregularity because (1) the argument was never disclosed; (2) Doe

12   did not raise this argument and waived the argument by claiming the ACOA's decision is

13   substantive violation of Title IX; and (3) the Court improperly advanced an argument Doe

14   never made. Mot. at 15. These are frivolous arguments. First, the Court already rejected the

15   argument that the ACOA's decision was not disclosed, Dkt. 209 at 46, and ABOR has

16   offered nothing new for the Court to reconsider.

17          Second, Doe plainly disclosed that ABOR supported his legal theory that ABOR

18   violated Title IX. *Id.* ("Doe expressly identified the appellate decision in the portion of his

19   MIDP disclosures calling for disclosure of the "facts and legal theories relevant to claims.")

20   (citing Dkt. 155-5 at 100-01). ABOR claims you must precisely and expressly tie specific

21   facts to specific theories of the case but cites nothing to support its argument and the MIDP

22   guidelines say the opposite.[13] Doe properly claimed ABOR violated Title IX and that the

23   ACOA's decision supported that claim. Dkt. 118-1 at 272-74.

24          Third, Doe did not waive any argument that the ACOA decision supported a finding

25   a sex bias, by characterizing it as a "substantive problem with the Title IX process." Doe

26   first argued that the ACOA findings were "procedurally irregular," but then went on to

27

28   [13] *See* https://www.azd.uscourts.gov/sites/default/files/documents/
     Arizona%20MIDP%20Users%20Manual.pdf at 8.

clarify that they are also "egregious findings with no basis in fact *or* reason." Dkt. 189 at 5. In other words, the flaw was not only a procedural irregularity, it was an egregious irregularity that supported a finding of sex bias. *Id.* The Court apparently agreed by characterizing the ACOA's finding as an "irregularity" as opposed to a procedural irregularity until the final paragraph of the section on the topic. Dkt. 209 at 44-46. And even though the Court rejected the argument that the ACOA findings can be evidence of sex bias by itself, it does not mean that it cannot also be evidence of an irregularity in the process that a reasonable jury can find is a procedural irregularity or a more egregious substantive irregularity, as argued by Doe. *Id.*; *see also* Dkt. 189 at 5.

Fourth, ABOR argues that the ACOA's reversal did not violate a procedure. This is incorrect. The Procedures, including the appeal and hearing, "represent the student's right to due process." Dkt. 155-2 at 41. "…The University must present a case that demonstrates that violations of the Student Code of Conduct…occurred and that the disciplinary action taken was appropriate." The University must also act fairly and reasonably to both parties. Dkt. 164-1 at 4. The University did not fulfill this mandate when it found Doe guilty without evidence. And it does not matter that the ACOA ultimately reversed ABOR, the process of finding someone guilty without evidence is still irregular. *See, e.g.*, *Doe v. Purdue Univ.*, 928 F.3d at 669 (a "perplexing" basis for a decision can support an inference of sex bias).

Further, the issue ABOR raises is the issue Doe's counsel tried to make at oral argument and in its briefing: finding Doe was guilty without evidence is not merely (only) a procedural defect, it is a substantive defect. And a substantive defect (guilt without evidence) is an irregularity a juror can rely on to find sex bias if a mere procedural irregularity—failing to interview someone, for example—is sufficient. ABOR demands a formulaic approach to a Title IX violation that the Ninth Circuit already rejected. *Schwake*, 967 F.3d at 947. The substance of the irregularity is what matters, and here we have the most substantive irregularity of any case in the country—guilt without evidence according to the ACOA. This is clearly actionable. *Id.*

For the foregoing reasons, the Motion should be denied.

1    RESPECTFULLY SUBMITTED this 12th day of October 2022.

2                                    HAGENS BERMAN SOBOL SHAPIRO LLP

3
     By  s/ Leonard W. Aragon
4         Robert B. Carey (011186)
          Leonard W. Aragon (020977)
5         E. Tory Beardsley (031926)
          rob@hbsslaw.com
6         leonard@hbsslaw.com
          toryb@hbsslaw.com
7
8         Attorneys for Plaintiff John Doe